Case 3:15-cv-02069-K   Document 52-1   Filed 07/09/15   Page 1 of 11   PageID 955

    

# CONTRACT
## AMONG THE CITY OF DALLAS, THE CITY OF FORT WORTH, SOUTHWEST AIRLINES CO., AMERICAN AIRLINES, INC., AND DFW INTERNATIONAL AIRPORT BOARD INCORPORATING THE SUBSTANCE OF THE TERMS OF THE JUNE 15, 2006 JOINT STATEMENT BETWEEN THE PARTIES TO RESOLVE THE "WRIGHT AMENDMENT" ISSUES

WHEREAS, certain Members of the United States Congress have introduced legislation to either repeal or further modify the restrictions of the Wright Amendment, as amended by the 1997 Shelby Amendment and the 2005 Amendment (herein referred to as the "Wright Amendment"), or prohibit commercial air passenger service at Dallas Love Field Airport ( "Love Field"); and

WHEREAS, certain Congressional leaders informed the Cities of Dallas and Fort Worth (collectively, the "Cities") that it would be preferable for the Cities to present a local solution for addressing airport issues in the North Central Texas region and particularly, in the Dallas/ Fort Worth metropolitan area, prior to any further action being taken by Congress that would directly impact aviation services in the region; and

WHEREAS, in response to various pending and proposed Congressional actions that would further affect, modify, or repeal the Wright Amendment, the City Councils of Dallas and Fort Worth, on March 8, 2006 and March 7, 2006, respectively, passed a Concurrent Resolution (identified as Dallas Resolution No. 06-0870 and Fort Worth Resolution No. 3319-03-2006), requesting members of the United States Congress to refrain from taking any action regarding, or making any further amendments to, the Wright Amendment in order to allow the Cities an opportunity to work towards a local solution for addressing airport issues in the North Central Texas region, and to present a mutually agreed upon plan to the Congress for its consideration; and

WHEREAS, the City of Dallas, pursuant to Resolution No. 06-0997, adopted April 6, 2006, commissioned an Impact Analysis/Master Plan Update for Love Field by DMJM Aviation, Inc., to provide updated information and analysis as to aircraft noise, air quality, traffic impact, and economic impact at Love Field if the Wright Amendment were repealed or substantially modified; and

WHEREAS, the Love Field Impact Analysis Update prepared by DMJM Aviation, Inc. and GRA, Inc. found that, in the absence of the Wright Amendment, the overall impacts of operating 20 gates at Love Field under a "No Wright Amendment scenario" are the most comparable to the environmental thresholds agreed to and established in the 2001 Master Plan/Impact Analysis 32 gate scenario with the Wright Amendment in place; and

WHEREAS, earlier this year, the Honorable Laura Miller, Mayor of Dallas, and the Honorable Mike Moncrief, Mayor of Fort Worth, held a series of meetings with interested parties in an effort to reach a local agreement regarding Love Field that would end the prolonged and divisive controversies between the two Cities and that would serve and protect the interests of all citizens of the Dallas-Fort Worth area, including

**EXHIBIT 1**

residents living in the vicinity of Love Field, as well as business, consumer, and other constituencies affected by the Love Field controversies; and

WHEREAS, after investigation and analysis of the available facts and giving due consideration to the economic, environmental, and personal welfare and interests of their respective residents, the general public, and the holders of DFW Airport Joint Revenue Bonds, the Cities of Dallas and Fort Worth conferred, deliberated, and agreed to a local solution regarding the Wright Amendment and related matters that best serves such interests given the likelihood that Congress could take action to repeal or substantially modify the Wright Amendment; and

WHEREAS, the Mayors, in consultation with other leaders in the two cities, first were able to reach a basic agreement between themselves and with representatives of the Dallas/Fort Worth International Airport Board ("DFW Board"); and

WHEREAS, the Mayors, representatives of the DFW Board, and other governmental officials then met separately with Southwest Airlines and American Airlines to advise those airlines that the local governments would announce a local solution and recommend it to Congress and that they wanted the airlines to consent to, and endorse, the local solution; and

WHEREAS, the Mayors and representatives of the DFW Board thereafter conducted certain limited negotiations separately with Southwest Airlines and American Airlines; and

WHEREAS, Southwest Airlines and American Airlines concluded, separately, that the local solution reached among, and urged upon them by, the local governments would be favorably received by the Congress, and that under the circumstances presented, the airlines should support the effort of the Cities and the DFW Board and acquiesce in, and agree to support, the local solution; and

WHEREAS, the City Councils of Dallas and Fort Worth, on June 28, 2006 and July 11, 2006, respectively, passed a Concurrent Resolution (identified as Dallas Resolution No. 06-1838 and Fort Worth Resolution No. 3386-07-2006) and the DFW Board on June 29, 2006 passed Resolution No. 2006-06-210, approving the Joint Statement signed by the City of Dallas, City of Fort Worth, Southwest Airlines, American Airlines, and the DFW Board on June 15, 2006, authorizing the execution of this Contract between the Parties incorporating the substance of the Joint Statement, and requesting the United States Congress to enact legislation consistent therewith;

Therefore, the Parties agree as follows:

## ARTICLE I.

1. The City of Dallas, the City of Fort Worth, Southwest Airlines, American Airlines, and DFW Board, (herein, the "Parties,") agree to seek the enactment of legislation to allow for the full implementation of this Contract including, but not limited to, amending section 29 of the International Air Transportation Competition Act of 1979, more commonly known as the "Wright Amendment" and ultimately effect its repeal as follows:

    a. To immediately allow airlines serving Love Field to offer through ticketing between Love Field and any destinations (including international destinations) through any point in Texas, New Mexico, Oklahoma, Kansas, Arkansas, Louisiana, Mississippi, Missouri, and Alabama, and to market such services;

Final Contract Among the City of Dallas, City of Fort Worth, Southwest Airlines, American Airlines, and DFW Board to Resolve the "Wright Amendment" Issues

Page 2 of 11

  b. Except as provided herein, to eliminate all the remaining restrictions on air service from Love Field after eight years from the enactment of legislation; and

  c. To limit charter flights as set forth in Article II, Section 16 of this Contract.

2. The Parties agree that non-stop international commercial passenger service to and from the Dallas-Fort Worth area shall be limited exclusively to DFW International Airport ("DFW Airport"). The Cities shall work jointly to encourage all such flights into DFW Airport.

3. The Parties agree that consistent with a revised Love Field Master Plan, based upon the 2006 Love Field Impact Analysis Update prepared by DMJM Aviation, Inc., the number of gates available for passenger air service at Love Field will be, as soon as practicable, reduced from the 32 gates envisioned in the 2001 Love Field Master Plan to 20 gates and that Love Field will thereafter be limited permanently to a maximum of 20 gates.

  a. Airlines may not subdivide a "gate." A gate shall consist of one passenger hold room and one passenger loading jet bridge supporting one aircraft parking space, and no hardstand operations, except as allowed herein, shall be permitted. Nothing shall preclude any airline from utilizing hardstands for RON parking, maintenance, training, or for irregular operations (i.e. flights that were scheduled originally for one of the twenty available gates and cannot be accommodated thereon due to weather, maintenance or unforeseen emergencies), or other uses that do not involve passenger air service.

  b. American Airlines and Southwest Airlines agree to voluntarily surrender gate rights under existing leases in order to reduce the number of gates as necessary to implement this agreement. During the four year period from the date the legislation as provided herein is signed into law: Southwest Airlines shall have the preferential use of 15 gates under its existing lease to be used for passenger operations; American Airlines shall have the preferential use of 3 gates under its existing lease to be used for passenger operations; and ExpressJet Airlines, Inc., shall have the preferential use of 2 gates under its existing lease to be used for passenger operations. Thereafter, Southwest Airlines shall have the preferential use of 16 gates under its existing lease to be used for passenger operations; American Airlines shall have the preferential use of 2 gates under its existing lease to be used for passenger operations; and ExpressJet Airlines, Inc., shall have the preferential use of 2 gates under its existing lease to be used for passenger operations. In consideration of Southwest Airlines' substantial divestment of gates at Love Field and the need to renovate or reconstruct significant portions of the concourses, Southwest Airlines shall have the sole discretion (after consultation with the City) to determine which of its gates it uses within its existing leasehold at Love Field during all phases of reconstruction. Upon the earlier of (i) the completion of the concourse renovation, or (ii) 4 years from the date the legislation as provided herein is signed into law, all Parties agree that facilities will be modified as necessary, up to and including demolition, to ensure that Love Field can accommodate only 20 gates for passenger service. To the extent a new entrant carrier seeks to enter Love Field, the City of Dallas will seek voluntary accommodation from its existing carriers to accommodate the new entrant service. If the existing carriers are not able or are not willing to accommodate the new entrant service, then the City of Dallas agrees to require the sharing of preferential lease gates, pursuant to Dallas' existing lease agreements. To the extent that any existing airline gates leased at Love Field revert to the City of Dallas, these gates shall be converted to common use during the existing term of the lease.

Final Contract Among the City of Dallas, City of Fort Worth, Southwest Airlines, American Airlines, and DFW Board to Resolve the "Wright Amendment" Issues

Page 3 of 11

4. The City of Dallas agrees that it will negotiate a voluntary noise curfew at Love Field precluding scheduling passenger airline flights between 11 p.m. and 6 a.m. Southwest Airlines and American Airlines shall enter into agreements with respect thereto with the City of Dallas.

5. The City of Dallas agrees that it will significantly redevelop portions of Love Field, including the modernization of the main terminal, consistent with a revised Love Field Master Plan based upon the Love Field Impact Analysis Update prepared by DMJM Aviation, Inc. (the "Love Field Modernization Program" or "LFMP"). In addition, the City agrees that it will acquire all or a portion of the lease on the Lemmon Avenue facility, up to and including condemnation, necessary to fulfill its obligations under this Contract. The City of Dallas further agrees to the demolition of the gates at the Lemmon Avenue facility immediately upon acquisition of the current lease to ensure that that facility can never again be used for passenger service.

The Parties agree that a minimum investment of $150 million and up to a maximum of $200 million in 2006 dollars (the "Spending Cap"), as adjusted for inflation, will be made by the City of Dallas for the LFMP, and that the capital and operating costs for the LFMP may be recovered through increased landing fees, space rental charges, or Passenger Facility Charges ("PFCs"). The Parties contemplate that financing the LFMP will include both the retirement of existing debt and the issuance of new debt for the LFMP.

The Spending Cap shall be exclusive of the costs connected with the acquisition and demolition of the Lemmon Avenue gates and of the capital costs associated with the development and construction of a "people mover" connector to the DART mass transit system ("the Connector"). The costs for the acquisition and demolition of the Lemmon Avenue gates will be recovered from airport users, but the capital costs for the Connector may not be included in airline terminal rents or landing fees, except as expressly provided for herein below. The City of Dallas may seek approval to use PFC revenues for the Connector, and Southwest Airlines agrees to support such application. The City of Dallas shall, in addition, seek state, federal, DART, and any other available public funds to supplement such PFC funds; provided, however, that nothing herein shall obligate the City of Dallas to undertake the Connector project. Notwithstanding the preceding, in the event PFC funds are not approved for the Connector, the City of Dallas may use airport funds for the Connector; provided, however, if airport funds are used for the Connector, the City of Dallas shall be obligated to apply for, and use, PFCs to pay for PFC eligible portions of the LFMP. In any event, the combined total spending for both the LFMP and the Connector, exclusive of PFCs, shall not exceed the Spending Cap, except as provided immediately below.

In the event that PFCs are not approved for either the Connector or the LFMP, as provided herein, terminal rents and landing fees may be used for such improvements, thus exceeding the Spending Cap; provided, however, that the City shall use its best efforts to seek and use PFCs, state, federal, DART, and any other available public funds (other than City of Dallas general funds) as the only sources of funding for the Connector and to avoid impacting terminal rents and landing fees.

Except as otherwise provided herein, capital costs in excess of the aforementioned Spending Cap that impact terminal rents and landing fees shall be subject to agreement between Southwest Airlines and the City of Dallas, except that, following consultation with Southwest Airlines, the City of Dallas may proceed with necessary projects required for reasons of safety, security, normal maintenance and repair, or federal mandate, and such costs may be included in terminal rents and

Final Contract Among the City of Dallas, City of Fort Worth, Southwest Airlines, American Airlines, and DFW Board to Resolve the "Wright Amendment" Issues

Page 4 of 11

landing fees. The operating reserve of Love Field shall never exceed one year's operating costs (operating and maintenance plus debt service) during the term of Southwest Airlines' lease.

To recover the costs of the LFMP, the City of Dallas shall negotiate amendments of the Leases of Terminal Building Premises previously entered into with Southwest Airlines, American Airlines, and ExpressJet Airlines, Inc., and will also adopt City ordinances modifying the terminal rents and landing fees to be paid by airline users of Love Field.

Southwest Airlines and the City of Dallas shall agree on a phase-in of the LFMP and will decide which party will fund and manage the construction of the LFMP. Southwest Airlines' expenditures for its share of the LFMP's capital costs shall be credited toward the minimum and maximum requirements. To the extent possible, the LFMP shall be completed by the expiration of the 8-year period.

6. The Cities agree that they will both oppose efforts to initiate commercial passenger air service at any area airport other than DFW Airport (and Love Field, subject to the provisions contained herein) during the eight-year period. "Commercial passenger air service" does not include a spaceport or air taxi service as defined by Part 135 of the Federal Aviation Regulations. The Cities agree to jointly oppose any attempts to repeal or further modify the Wright Amendment earlier than the eight-year period. To the extent any other airport within an eighty-mile radius of Love Field seeks to initiate scheduled commercial passenger service within this eight-year period, both the Cities agree to work diligently to bring that service to DFW Airport, or if that effort fails, then to airports owned by the Cities of Dallas and/or Fort Worth.

7. The continuation of this Contract beyond December 31, 2006, is conditioned on Congress having enacted legislation prior thereto, allowing the Parties to implement the terms and spirit of this Contract. It is the position of the Parties that Congress should not exempt additional states from the Wright Amendment during the eight-year period before it is eliminated.

8. This Contract shall not be modified except upon mutual agreement of all of the Parties.

9. The Cities acknowledge their outstanding DFW Airport bond covenants, to the extent such covenants are legally enforceable, and nothing in this Contract is intended to nor shall contravene such covenants. By the execution of this Contract, Southwest Airlines does not surrender any of its rights to operate at Love Field except as explicitly outlined in this Contract.

10. If Southwest Airlines or its affiliate or code share partner (except for published/scheduled code share service from DFW Airport to Midway Airport as of June 14, 2006) chooses to operate passenger service from another airport within an 80-mile radius of Love Field in addition to its operations at Love Field, then for every such gate which Southwest Airlines, its affiliate or code share partner, operates or uses at another airport within this radius, Southwest Airlines will voluntarily relinquish control of an equivalent number of gates at Love Field, up to 8 gates and such gates shall be made available to other carriers. If other carriers are not interested in these gates, then they can be made available to Southwest Airlines for its use on a common use basis. This requirement to relinquish gates shall expire in 2025. This provision shall not apply to a code share partner not operating under Southwest Airlines' or its affiliates' code at an airport within this 80-mile radius.

Final Contract Among the City of Dallas, City of Fort Worth, Southwest Airlines, American Airlines, and
DFW Board to Resolve the "Wright Amendment" Issues

Page 5 of 11

11. If American Airlines or its affiliate or code share partner chooses to operate passenger service from another airport within an 80-mile radius of Love Field in addition to its operations at DFW Airport and Love Field, then for every such gate which American Airlines, its affiliate or code share partner, operates or uses at another airport within this radius except for DFW Airport and Love Field, American Airlines will voluntarily relinquish control of an equivalent number of gates at Love Field, up to one and one-half gates and such gates shall be made available to other carriers. If other carriers are not interested in these gates, then they can be made available to American Airlines for its use on a common use basis. This requirement to relinquish gates shall expire in 2025. This provision shall not apply to a code share partner not operating under American Airlines' or its affiliates' code at an airport within this 80-mile radius.

12. Each carrier shall enter into separate agreements and take such actions, as necessary or appropriate, to implement its obligations under this Contract. Similarly, the Cities shall enter into such agreements and take such actions, as necessary or appropriate, to implement the Contract. All such agreements and actions are subject to the requirements of law. Such agreements shall include amendments to: (i) American Airlines' Love Field terminal lease; and (ii) Southwest Airlines' Love Field terminal lease. The City of Dallas shall develop a revised Love Field Master Plan consistent with this Contract.

13. In the event that Congress at any time, enacts legislation that repeals the Wright Amendment sooner than the eight years identified in paragraph 1.b. of Article I. herein, or authorizes service (except for through ticketing service as contemplated by paragraph 1.a. of Article I. herein) between Love Field and one or more domestic or international destinations other than those currently allowed under the Wright Amendment during the eight year period, and if Southwest Airlines or its affiliate or code share partner commences non-stop service to or from Love Field to a destination not currently allowed under the Wright Amendment, then Southwest Airlines will voluntarily relinquish control of 8 gates and such gates will be made available to other carriers. If other carriers are not interested in these gates, then they can be made available to Southwest Airlines for their use on a common use basis. This provision shall not apply to a code share partner not operating under Southwest Airlines' or its affiliates' code. Likewise, in the event that Congress, at any time, enacts legislation that repeals the Wright Amendment sooner than the eight years identified in paragraph 1.b. of Article I. herein, or authorizes service (except for through ticketing service as contemplated by paragraph 1.a. of Article I. herein) between Love Field and one or more domestic or international destinations other than those currently allowed under the Wright Amendment during the eight year period, and if American Airlines or its affiliate or code share partner commences non-stop service to or from Love Field to a destination not currently allowed under the Wright Amendment, then American Airlines will voluntarily relinquish control of half of its gates and such gates will be made available to other carriers. If other carriers are not interested in these gates, then they can be made available to American Airlines for its use on a common use basis. This provision shall not apply to a code share partner not operating under American Airlines' or its affiliates' code.

14. The Parties hereby represent to the Congress of the United States, and to the Citizens of the Dallas-Fort Worth area that they approve of and support the local solution as set forth in this Contract. The Parties each separately covenant that they will support, encourage and seek the passage of legislation necessary and appropriate to implement the terms and spirit of this Contract. The Parties each separately covenant that they will oppose any legislative effort that is inconsistent with the terms of this Contract.

Final Contract Among the City of Dallas, City of Fort Worth, Southwest Airlines, American Airlines, and
DFW Board to Resolve the "Wright Amendment" Issues

Page 6 of 11

15. The Parties agree that the final documentation to implement this local solution shall be consistent with all federal rules, regulations and laws. The Parties agree that for this Contract to be binding, it must be executed by all parties no later than July 15th, 2006.

16. If the U.S. Congress does not enact legislation by December 31, 2006, that would allow the Parties to implement the terms and spirit of this Contract, including, but not limited to, the 20 gate restriction at Love Field, then this Contract is null and void unless all parties agree to extend this Contract.

17. As part of this Contract, the City of Dallas agrees to grant American Airlines and Southwest Airlines options to extend their existing terminal leases until 2028.

### ARTICLE II. ADDITIONAL PROVISIONS

1. SUBJECT TO FEDERAL GRANT ASSURANCES, ETC. Nothing in this Contract shall require the City of Dallas, the City of Fort Worth or the DFW Airport Board to take any action that would result in (i) the loss of eligibility for future Federal airport grants for either city or the DFW Airport Board or (ii) FAA disapproval of any Passenger Facility Charge (PFC) application for either city or the DFW Airport Board, or (iii) either city or the DFW Airport Board being found to be in non-compliance with its existing obligations under Federal aviation law.

2. FUNDING. Any capital spending obligations of the City of Dallas under this Contract for airport projects that require the expenditure of public funds or the creation of any monetary obligation shall be limited obligations, payable solely from airport revenues or the proceeds of airport revenue bonds issued by or on behalf of the City of Dallas, such revenue bonds being payable and secured by the revenues derived from the ownership and operation of Love Field. In order to satisfy its obligations hereunder, the City of Dallas agrees to use best efforts to issue and sell revenue bonds in such amounts and on terms that are commercially reasonable in the credit markets. Southwest Airlines and American Airlines hereby each agree to enter into such additional agreements that are necessary to facilitate the issuance of such revenue bonds, provided, however, nothing herein shall obligate either airline to be an obligor or guarantor of such bonds. Neither the obligations under this Contract nor the obligations with respect to such revenue bonds shall constitute a debt of the City of Dallas payable from, or require the payment or expenditure of funds of the City of Dallas from, ad valorem or other taxes imposed by the City of Dallas.

3. VENUE. The Parties agree that in the event of any litigation in connection with this Contract, or should any legal action be necessary to enforce the terms of this Contract, exclusive venue shall lie in either Dallas County, Texas or Tarrant County, Texas.

4. NON-LIABILITY FOR OTHER PARTIES' OBLIGATIONS, COSTS, AND ATTORNEYS FEES. Each Party hereunder shall only be responsible and liable for its own obligations, costs, and attorneys fees in connection with the performance of this Contract, or any dispute or litigation that may arise in connection with this Contract.

5. APPLICABLE LAWS AND REPRESENTATIONS. This Contract is made subject to the provisions of the Charter and ordinances of the cities of Dallas and Fort Worth, in existence as of the date hereof, and all applicable State and federal laws. Each City, as to itself only, represents and warrants that its existing Charter and ordinances do not preclude such City from executing this

Final Contract Among the City of Dallas, City of Fort Worth, Southwest Airlines, American Airlines, and DFW Board to Resolve the "Wright Amendment" Issues

Page 7 of 11

Contract or performing its obligations under this Contract in accordance with its terms. American Airlines, Southwest Airlines and the DFW Board, each as to itself only, represent and warrant that it has the full power and authority to enter into this Contract and perform its obligations under this Contract in accordance with its terms.

6. EFFECTIVE DATE. Notwithstanding anything to the contrary herein, the Parties agree that (i) Sections 1, 7, 8, 9, 14, 15, and 16 of Article I. and all Sections of Article II. shall take effect as of the last date of execution of this Contract by any of the Parties and (ii) the remaining Sections of Article I. shall take effect on the date that legislation that would allow the Parties to implement the terms and spirit of this Contract is signed into law.

7. NON-SEVERABILITY.
(a)     The terms of this Contract are not severable. Therefore, in the event any one or more of the provisions contained in this Contract shall for any reason be held to be invalid, illegal, or unenforceable in any respect, then this Contract shall be considered null and void and unenforceable, except as otherwise may be agreed to by all Parties.
(b)     Notwithstanding paragraph (a) hereof, each Party shall use its best efforts to restore or replace the affected provisions so as to effectuate the original intent of the Parties.

8. COUNTERPARTS. This Contract may be executed in any number of counterparts, each of which shall be deemed an original and constitute one and the same instrument.

9. CAPTIONS. The captions to the various clauses of this Contract are for informational purposes only and shall not alter the substance of the terms and conditions of this Contract.

10. SUCCESSORS AND ASSIGNS; SUBLESSEES. This Contract shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns. Further, the Parties agree that any sublessee or other entity who subleases or uses either American Airlines' or Southwest Airlines' gates at Love Field is subject to and bound by the terms of this Contract, including, but not limited to, paragraph 13 of Article I.

11. NO THIRD PARTY BENEFICIARIES. The provisions of this Contract are solely for the benefit of the Parties hereto; and nothing in this Contract, express or implied, shall create or grant any benefit, or any legal or equitable right, remedy, or claim hereunder, contractual or otherwise, to any other person or entity.

12. NOTICES. All notices required or permitted under this Contract shall be personally delivered or mailed to the respective Parties by depositing same in the United States mail, postage prepaid, at the addresses shown below, unless and until the Parties are otherwise notified in writing of a new address by any Party. Mailed notices shall be deemed communicated as of five days after mailing.

| If intended for the City of Dallas: | With a copy to: |
|---|---|
| City Manager, City of Dallas<br>City Hall, Room 4EN<br>1500 Marilla Street<br>Dallas, Texas 75201 | City Attorney, City of Dallas<br>Dallas City Hall, Rm. 7CN<br>1500 Marilla Street<br>Dallas, Texas 75201 |

Final Contract Among the City of Dallas, City of Fort Worth, Southwest Airlines, American Airlines, and DFW Board to Resolve the "Wright Amendment" Issues

Page 8 of 11

| | |
|---|---|
| If intended for the City of Fort Worth: | With a copy to: |
| City Manager, City of Fort Worth<br>1000 Throckmorton<br>Fort Worth, Texas 76102 | City Attorney, City of Fort Worth<br>1000 Throckmorton<br>Fort Worth, Texas 76102 |
| If intended for the DFW International Airport Board: | With copy to: |
| Chief Executive Officer<br>DFW International Airport Board<br>P.O. Drawer 619428<br>3200 E. Airfield Drive<br>DFW Airport, TX 75261-9428 | Legal Counsel<br>DFW International Airport Board<br>P.O. Drawer 619428<br>3200 E. Airfield Drive<br>DFW Airport, TX 75261-9428 |
| If intended for American Airlines, Inc.: | With copy to: |
| Chief Executive Officer<br>American Airlines, Inc.<br>4333 Amon Carter Blvd., MD 5621<br>Fort Worth, Texas 76155 | General Counsel<br>American Airlines, Inc.<br>4333 Amon Carter Blvd., MD 5618<br>Fort Worth, Texas 76155 |
| If intended for Southwest Airlines Co.: | With copy to: |
| Chief Executive Officer<br>Southwest Airlines Co.<br>2702 Love Field Drive<br>Dallas, Texas 75235 | General Counsel<br>Southwest Airlines Co.<br>2702 Love Field Drive<br>Dallas, Texas 75235 |

13. <u>PARTIAL WAIVER OF GOVERNMENTAL IMMUNITY</u>.  The Cities and the DFW Board, by signing this Contract and to the extent permitted by law, waive their respective immunity from suit by the Parties, but only with respect to a suit to enforce this Contract by a Party seeking a restraining order, preliminary or permanent injunctive relief, specific performance, mandamus, or declaratory relief.  The Cities and the DFW Board do not waive any other defense or bar against suit available to the Cities or the DFW Board.

14. <u>NO INDIVIDUAL LIABILITY</u>.  To the extent allowed by law, no officer, agent, employee, or representative of any of the Parties shall be liable in his or her individual capacity, nor shall such person be subject to personal liability arising under this Contract.

15. <u>LIMITATION OF REMEDIES</u>.  UNDER NO CIRCUMSTANCES SHALL ANY PARTY BE LIABLE TO ANY OTHER PARTY HEREUNDER, IN CONTRACT OR IN TORT, FOR MONETARY DAMAGES RESULTING IN WHOLE OR IN PART FOR ANY BREACH BY SUCH PARTY, WHETHER NEGLIGENT OR WITH OR WITHOUT FAULT ON ITS PART, OF ANY

Final Contract Among the City of Dallas, City of Fort Worth, Southwest Airlines, American Airlines, and DFW Board to Resolve the "Wright Amendment" Issues

Page 9 of 11

PROVISION OF THIS CONTRACT. PROVIDED, HOWEVER, (AND IN EXCHANGE FOR THE FOREGOING SENTENCE), IN THE EVENT OF ANY SUCH BREACH OR THREATENED BREACH BY ANY PARTY, ALL PARTIES AGREE THAT EACH NON-BREACHING PARTY WILL BE ENTITLED TO SEEK ALL EQUITABLE REMEDIES INCLUDING, WITHOUT LIMITATION, DECREES OF SPECIFIC PERFORMANCE, RESTRAINING ORDERS, WRITS OF PRELIMINARY AND PERMANENT INJUNCTION AND MANDAMUS, AS WELL AS DECLARATORY RELIEF, TO ENFORCE THIS CONTRACT. PROVIDED, FURTHER, AS A PREREQUISITE TO THE FILING OF ANY LAWSUIT BY ANY PARTY, ALL PARTIES SHALL IN GOOD FAITH SUBMIT ANY DISPUTE TO NON-BINDING MEDIATION, WHICH MUST BE COMPLETED WITHIN 60 DAYS FROM THE DATE NOTICE REQUESTING MEDIATION IS COMMUNICATED PURSUANT TO SECTION 12. OF ARTICLE II. OF THIS CONTRACT.

16. <u>LOVE FIELD GENERAL AVIATION, U.S. GOVERNMENT FLIGHTS AND CHARTER FLIGHTS</u>. Nothing in this Contract is intended to affect general aviation service at Love Field, including, but not limited to, flights to or from Love Field by general aviation aircraft for air taxi service, private or sport flying, aerial photography, crop dusting, business flying, medical evacuation, flight training, police or fire fighting, and similar general aviation purposes, or by aircraft operated by any agency of the U.S. Government or by any airline under contract to any agency of the U.S. Government. Charter flights at Love Field shall be limited to destinations within the 50 United States and the District of Columbia and shall be limited to no more than ten per month per air carrier except as otherwise permitted by Section 29(c) of the Wright Amendment. All flights operated by air carriers that lease terminal gate space shall depart from and arrive at one of those leased gates. Charter flights operated by air carriers that do not lease terminal space may operate from non-terminal facilities or one of the 20 terminal gates. For the purposes of this Contract, "charter flight" shall have the meaning currently given in 14 C.F.R. 212.2 (2006). This limitation shall remain in effect permanently.

17. <u>ENTIRE AGREEMENT</u>. This Contract embodies the complete agreement of the Parties hereto relating to the matters in this Contract; and except as otherwise provided herein, cannot be modified without written agreement of all the Parties, to be attached to and made a part of this Contract.

EXECUTED as of this the 11th day of July, 2006.

CITY OF DALLAS, TEXAS

_[signature]_
Mary K. Suhm, City Manager

APPROVED AS TO FORM:

_[signature]_
Thomas P. Perkins, Jr., City Attorney

Final Contract Among the City of Dallas, City of Fort Worth, Southwest Airlines, American Airlines, and DFW Board to Resolve the "Wright Amendment" Issues

Page 10 of 11

| | |
|---|---|
| CITY OF FORT WORTH, TEXAS | APPROVED AS TO FORM AND LEGALITY: |
| *(signed)* Charles R. Boswell, City Manager | *(signed)* David L. Yett, City Attorney |
| DALLAS/FORT WORTH INTERNATIONAL AIRPORT BOARD | APPROVED AS TO FORM: |
| *(signed)* Jeffrey P. Fegan, Chief Executive Officer | *(signed)* Gary Keane, D/FW Legal Counsel |
| AMERICAN AIRLINES, INC. | SOUTHWEST AIRLINES CO. |
| *(signed)* Gerard J. Arpey, Chairman and Chief Executive Officer | *(signed)* Herbert D. Kelleher, Executive Chairman |

Final Contract Among the City of Dallas, City of Fort Worth, Southwest Airlines, American Airlines, and DFW Board to Resolve the "Wright Amendment" Issues

Page 11 of 11