IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CITY OF DALLAS,<br><br>*Plaintiff*,<br><br>v.<br><br>DELTA AIR LINES, INC., SOUTHWEST AIRLINES CO., VIRGIN AMERICA INC., AMERICAN AIRLINES, INC., UNITED AIRLINES, INC., SEAPORT AIRLINES, INC., UNITED STATES DEPARTMENT OF TRANSPORTATION, AND THE FEDERAL AVIATION ADMINISTRATION<br><br>*Defendants*. | § § § § § § § § § § § § § § § § § §   CIVIL ACTION NO. 3:15-CV-02069-K |

**BRIEF IN SUPPORT OF DEFENDANT DELTA AIR LINES, INC.'S
MOTION FOR EXPEDITED DISCOVERY FROM
DEFENDANT UNITED AIRLINES, INC.**

After Delta requested accommodation at Love Field, United subleased the two gates it leases at Love Field to Southwest. Southwest's decision to pay a king's ransom for a sublease to those two gates to eliminate the space that United unquestionably had available to accommodate Delta—and United's attempt to block accommodation of Delta by subleasing the gates to Southwest—stand at the heart of this case. Most directly, the exorbitant rent that Southwest was willing to pay to United for the sublease, which vastly exceeds the market value of the two gates to any other airline, confirms the monopoly power that Southwest knew it would be able to exercise if it expanded its control of Love Field from 16 to 18 gates (out of 20). By agreeing to the sublease, United enabled Southwest to acquire an exclusive right at the airport in violation of both a federal statute and a federal grant assurance, as well as in violation of the Lease Agreements between the City, on the one hand, and United and Southwest, on the other.

United's attempts to block Delta from exercising its rights under the Lease Agreements were not limited to the sublease, however. At the exact same time as it was negotiating this sublease, United inexplicably and without justification announced an increase in its aircrafts' turn times on the ground at Love Field. That increase appears to have been designed to defeat Delta's claim that United could accommodate Delta on its gates without unduly interfering with its own operating schedule. Around the same time, United also announced a plan to increase its scheduled service out of Love Field beginning in January 2015. Here again, given that United's true intention was to enter into a sublease with Southwest under which it would cease all service out of Love Field, United's announcement suggests a calculated, strategic decision designed to block Delta's request for accommodation. Thus, United's conduct in the summer and fall of 2014—its dealings with Southwest and its response to Delta's request for accommodation—are a critically important part of the dispute that will be presented to this Court for resolution at the preliminary injunction hearing.

Despite the centrality of this evidence to the case, United has flatly refused to provide documents on a schedule that will permit use in the preliminary injunction hearing without an order from this Court. Accordingly, Delta's motion for expedited discovery seeks documents and a Rule 30(b)(6) deposition from United. Delta urgently needs discovery on these topics so that it can present a full and accurate picture of the reasons why Delta—nearly fourteen months after it first requested accommodation—still has not received the guarantee of continued long-term operations at Love Field to which it is entitled under both the Lease Agreements and federal law.

For these reasons, and as explained more fully below, Delta hereby files this brief in support of its motion for an order allowing Delta to take expedited discovery from United under

Federal Rule of Civil Procedure 26(d). There is ample good cause for expedited discovery, and Delta has narrowly crafted its discovery requests to ensure that the burden on United is as minimal as possible under the circumstances. As a defendant in this case, United has the same discovery obligations as any other litigant. Delta's only request is that the Court order United to comply with those obligations on an expedited timetable. Delta also asks the Court to order United to file any response to this motion within five days so that Delta may obtain the discovery it needs in advance of the preliminary injunction hearing.

## BACKGROUND

As the Court is aware, Delta and Southwest have reached an agreement to continue the status quo, under which Delta flies five daily flights to Atlanta, until September 30. This Court has set a hearing on September 28 and 29 to resolve the parties' competing motions for preliminary injunction. Last month, Delta, Southwest, and the City of Dallas agreed to an expedited discovery schedule detailed in this Court's Discovery and Scheduling Order issued on August 6. However, United is not a party to the Discovery and Scheduling Order, which was entered without prejudice to Delta's rights to seek discovery from any other party.

On August 5, Delta contacted United regarding Delta's need for limited discovery in this matter. Decl. of Russell H. Falconer in Support of Emergency Motion for Expedited Discovery ("Falconer Decl.") ¶ 2. The parties held a teleconference on August 7 in which counsel for Delta outlined the narrow categories of discovery sought by Delta. Counsel for United agreed to consult with their client regarding that discovery. *Id.* On August 12, counsel for Delta contacted United's counsel via email to request a subsequent telephone conference to discuss the results of that consultation. *Id.* ¶ 3. The parties held a second meet-and-confer teleconference on August 17, in which counsel for Delta proposed an expedited discovery schedule. *Id.* On August 19,

United's counsel indicated that United was currently unable to commit to a production schedule that would guarantee the production of documents prior to the preliminary injunction hearing. *Id.* ¶ 4. On August 27, United's counsel confirmed that United would not commit to designate documents or prepare a corporate representative to testify on an expedited basis. *Id.*

With the hearing date rapidly approaching, United must commit to an expeditious discovery timeline in order for all parties to adequately prepare for and defend their claims. The ordinary discovery schedule is inadequate for this rapid resolution. Instead of the usual schedule, Delta asks this Court to order United to (1) proceed with discovery immediately, without awaiting initial disclosures or further conferences between the parties; and (2) provide responses, objections, and produce documents within two weeks of this motion and the attached discovery requests (*i.e.*, by September 11). Delta's request is supported by good cause because it seeks expedited discovery limited to the issues presented by the competing applications for preliminary relief.

## ARGUMENT

This Court should exercise its broad discretion and grant Delta's request to "expedite the discovery process" with United. *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996); *see also* Fed. R. Civ. P. 16(b), 26(d)(1). The City, Delta, and Southwest held a discovery conference on July 27, 2015, and invited all parties to attend, in person or by phone. Although United did not choose to join the discovery conference, it was invited to do so and discovery on United is now appropriate. Moreover, this Court may order discovery even *before* the Rule 26(f) conference is held. Fed. R. Civ. P. 26(d)(1), 30(a)(2)(A)(iii); *see also id.* 31(a)(2), 33(b)(2), 34(b)(2)(a), 36(a)(3). Discovery is thus timely.

Where there is "good cause" to do so, federal courts should expedite discovery.[1] *See, e.g.*, *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239–40 (S.D. Tex. 2011) (collecting cases); *see also Paul v. Aviva Life & Annuity Co.*, 2009 U.S. Dist. LEXIS 106483, *2 (N.D. Tex. Nov. 12, 2009) (applying good cause standard on motion for expedited discovery). Courts determine whether good cause exists by weighing "the *reasonableness* of the request in light of all the surrounding circumstances" and whether the "need for expedited discovery . . . outweighs the prejudice to the responding party." *St. Louis Grp.*, 275 F.R.D. at 239 (internal quotations omitted).

The "narrowly tailored" evidence that Delta seeks from United is "necessary to prove the probability of prevailing on the merits" of Delta's request to preserve the status quo.[2] *See Kremen v. Cohen*, No. 5:11-cv-05411-LHK, 2011 WL 6113198, at *10 (N.D. Cal. Dec. 7, 2011) (granting request for expedited discovery because scope of request was properly limited); *Wheeler v. HXI, LLC*, No. 10-cv-145-JD, 2010 WL 3023518, at *2 (D.N.H. July 28, 2010) (granting motion for expedited discovery because requests were "limited in scope and form" to seek evidence of the plaintiff's likelihood of success on the merits and claims of irreparable harm). The Advisory Committee's notes to Rule 26(d) specifically identify cases "involving requests for a preliminary injunction" as examples of cases where expedited discovery "will be

---

[1] A minority of district courts apply the preliminary injunction-style analysis to determine whether to expedite the discovery process examining whether parties will suffer "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery is greater than the injury the party will suffer if the expedited relief is granted." *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 259 F.R.D. 385, 386 (E.D. Wis. 2009). While the Fifth Circuit does not appear to have adopted one standard, district courts within the Circuit apply the less "rigid" good cause standard. *See St. Louis Grp.*, 275 F.R.D. at 239–40. However, the facts and arguments discussed above establish that Delta's need for expedited discovery also clearly meet this "more rigid" standard. *Id*.

[2] Courts consider the following factors to determine the reasonableness of a request for expedited discovery: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the responding party in complying with the request; and (5) how far in advance of the typical discovery process the request was made." *Oglala Sioux Tribe v. Van Hunnik*, 298 F.R.D. 453, 455–56 (D.S.D. 2014) (internal quotations omitted); *see also St. Louis Grp.*, 275 F.R.D. at 239 n.4; *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006).

appropriate." *See Oglala*, 298 F.R.D. at 457 (internal quotations omitted) ("[E]xpedited discovery . . . will better enable the court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing.") (quoting *Edudata Corp. v. Scientific Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984)).

Courts have followed the Advisory Committee's comments in this regard. For example, "[e]xpedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996); *El Pollo Loco S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986, 991 (S.D. Tex. 2004) (similar). Here, the discovery is "relevant to the upcoming preliminary injunction hearing," and without expedited discovery, the Court will not have the benefit of that evidence. *Exclusive Supplements, Inc. v. Abdelgawad*, No. 12-1652, 2013 WL 160275, at *1 (W.D. Pa. Jan. 15, 2013) (ordering "expedited discovery of information relevant to the upcoming preliminary injunction hearing"). "Further development of the record before the preliminary injunction hearing will better enable the court to judge the parties' interests and respective chances for success on the merits." *Edudata Corp.*, 599 F. Supp. at 1088. Moreover, Delta "is entitled to prompt discovery and a prompt hearing on the preliminary injunction motion, since the harm it alleges, if that harm is in fact happening, is of the type courts frequently hold to be irreparable by money damages." *Dayco Prods., Inc. v. Walker*, 142 F.R.D. 450, 453 n.2 (S.D. Ohio 1992).

Finally, the fact that the preliminary injunction hearing is a mere month away underscores Delta's need to forgo normal discovery procedures. United will not be unduly burdened if this Court grants Delta's request for expedited discovery because each request seeks only evidence regarding Delta's right to maintain the status quo. *See id.*; *Am. LegalNet, Inc. v.*

*Davis*, 673 F. Supp. 2d 1063, 1068 (C.D. Cal. 2009) (noting that when based upon need for injunctive relief, the expedited discovery requests must seek evidence related "to preserv[ation of] the status quo"). United has already been on notice of the categories of documents Delta seeks for three weeks, and should have begun gathering those documents. Accordingly, it is reasonable to order United to provide the very limited discovery of the most critical information needed to prepare for the upcoming hearing, as well as a corporate representative to speak to the topics at issue.

The discovery sought from United by Delta is included in exhibits to the Falconer Declaration. Falconer Decl. Exs. A & B. Delta provided four targeted requests for production of documents and communications from United relating to (1) Delta's requests for accommodation at Love Field; (2) United's sublease with Southwest; (3) United's evaluation of turn times in 2014; and (4) United's schedule at Love Field. Ex. A, at 5. Each request is narrowly tailored to result in the production of documents necessary for Delta to adequately prepare for the hearing and establish that Delta is entitled to injunctive relief. *See id.* Delta's Rule 30(b)(6) deposition notice asks United to designate a corporate representative to testify on substantially the same four topics. Ex. B.

These issues are relevant to each party's application for temporary injunctive relief. Attempts by United and/or Southwest to interfere with Delta's right of accommodation pertain to the likelihood of success on the merits. Those attempts reflect the gamesmanship that led the DOT to reject any construction of the Lease Agreements and federal law under which a carrier's subsequently announced plans can limit a new entrant's rights to be accommodated. Moreover, the requested documents will likely confirm that United was aware of the high value that Southwest would place on the gates it subleased as a direct result of the increased market power

those gates would give it. Proof of the value of the gates to Southwest due to the near monopoly it would hold is likewise proof of the harm to consumers and to competition of Southwest's unlawful sublease. Accordingly, "good cause . . . warrants expedited discovery." *Oglala*, 298 F.R.D. at 459.

## CONCLUSION

In light of the importance of the discovery sought in this time-sensitive proceeding and the limited nature of the discovery requests, good cause exists for expedited discovery. Delta respectfully requests that the Court enter an order (1) authorizing immediate discovery, including that served by Delta on July 22, 2015; (2) directing that responses to discovery requests, including document production, be completed within two weeks (by September 11, 2015); and (3) ordering that United make a corporate representative available pursuant to Fed. R. Civ. P. 30(b)(6) by September 18, 2015.

DATED:  August 28, 2015  Respectfully submitted,

    */s/ Ashley E. Johnson*

William B. Dawson
    SBN 05606300
Karl G. Nelson
    SBN 14900425
Ashley E. Johnson
    SBN 24067689
Russell H. Falconer
    SBN 24069695

GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas  75201-6911
Telephone:  (214) 698-3100
Facsimile:  (214) 698-3400
rwalters@gibsondunn.com
knelson@gibsondunn.com
ajohnson@gibsondunn.com
rfalconer@gibsondunn.com

Kenneth P. Quinn
  DC Bar No. 495423
  Admitted *pro hac vice*
Jennifer E. Trock
  DC Bar No. 486098
  Admitted *pro hac vice*

PILLSBURY WINTHROP SHAW PITTMAN
1200 Seventeenth Street NW
Washington, DC 20036
(202) 663-8898
kenneth.quinn@pillsburylaw.com

   ATTORNEYS FOR DELTA AIR LINES, INC.

**CERTIFICATE OF SERVICE**

    I hereby certify that on August 28, 2015, the foregoing document was served via electronic filing on all counsel of record in this case.

                                                 _/s/ Ashley E. Johnson_
                                             Counsel for Delta Air Lines, Inc.