IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CITY OF DALLAS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-cv-02069-K |
| | § | |
| DELTA AIR LINES, INC., *et al.,* | § | |
| Defendants. | § | |

## PLAINTIFF CITY OF DALLAS' BRIEF IN SUPPORT OF ITS MOTION TO DISMISS DELTA AIR LINES, INC.'S AMENDED COUNTERCLAIMS FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM

WARREN M.S. ERNST
Dallas City Attorney

Charles Estee
Senior Assistant City Attorney
State Bar of Texas No. 06673600
charles.estee@dallascityhall.com

Peter B. Haskel
Executive Assistant City Attorney
State Bar of Texas No. 09198900
peter.haskel@dallascityhall.com

City Attorney's Office
7BN  Dallas City Hall
1500 Marilla Street
Dallas, Texas  75201
Telephone – 214/670-3519
Telecopier – 214/670-0622

Attorneys for Plaintiff City of Dallas

## TABLE OF CONTENTS

I.  INTRODUCTION..................................................................................................... 1

II.  STANDARDS OF REVIEW ................................................................................... 2

    A.  Standards under Rule 12(b)(1). ..................................................................... 2

    B.  The standards under Fed. R. Civ. P. 12(b)(6). .............................................. 4

III. THE REQUESTED DECLARATORY RELIEF SHOULD BE DISMISSED ................. 4

    A.  Delta's amended counterclaims are redundant. ........................................... 4

        1.  Delta's request for declaratory relief to be accommodated is redundant. ........... 6
        2.  Delta's request for declaratory relief regarding reclaiming gates is redundant... 6
        3.  Delta' breach of contract claim is redundant.................................................. 7

    B.  Delta lacks standing to complain about United's sublease to Southwest..................... 7

    C.  Delta has failed to state a claim about United's sublease to Southwest ....................... 8

IV. THE COURT LACKS JURISDICTION OVER ANY CONTRACT CLAIM ................. 9

    A.  The City's governmental immunity bars Delta's breach of contract claim. .............. 9

        1.  Filing this action did not waive governmental immunity as to Delta's breach of contract claim. ...................................................................................... 11
        2.  Chapter 271's waiver is limited to actions filed in Texas state courts. ................. 11
        3.  There is no contract for the provision of "goods and services" to the City and, therefore, there is no waiver of immunity. .............................................. 12
        4.  Delta does not seek sums "due and owed" under the contract, and therefore, there is no waiver of immunity. .............................................. 12
        5.  Chapter 271 does not waive governmental immunity for claims of specific performance.......................................................................................... 13
        6.  There was no written and properly executed contract between the City and Delta. .................................................................................................. 13
        7.  A valid breach of contract claim is not stated. ................................................ 14

    B.  Delta lacks standing for any breach of contract claim. ............................................. 14

    C.  Dismissal should be with prejudice. ....................................................................... 15

V.  DELTA HAS FAILED TO STATE A BREACH OF CONTRACT CLAIM ................. 15

    A.  Elements for a breach of contract claim. ................................................................. 15

**B. Delta has failed to allege a unilateral contract.** ............................................................ **16**

**C. Delta is not a third-party beneficiary.** ............................................................................ **19**

**D. There has been no possible breach.** ................................................................................ **22**

**E. There have been no damages.** ........................................................................................ **22**

**F. Delta has not stated a claim for specific performance.** ................................................ **23**

**G. Delta's pleadings admit no claim is stated regarding any other accommodation request.** .................................................................................................................................... **23**

**VI. DELTA HAS FAILED TO STATE A CLAIM FOR ATTORNEY FEES** ...................... **24**

**CONCLUSION AND PRAYER** ............................................................................................ **24**

**CERTIFICATE OF SERVICE** ............................................................................................ **25**

TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright,*
  468 U.S. 737 (1984) ............................................................................................ 3

*Ash Grove Texas, L.P. v. City of Dallas,*
  No. 3:08–CV–2114–O. 2009 WL
  3270821 (N.D. Tex. Oct. 09, 2009) ...................................................................... 9

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................ 4

*Bexar Metro. Water Dist. v. Educ. & Econ. Dev. Joint Venture,*
  220 S.W.3d 25 (Tex. App.—
  San Antonio 2006, pet.
  dism'd w.o.j.) ...................................................................................................... 12

*Blake Box v. Dallas Mexican Consulate General,*
  No. 3:08-CV-1010-O, 2014
  WL 3952932 (N.D. Tex. Aug. 8, 2014) .............................................................. 24

*Bowling Green v. Martin Land Development Co., Inc.,*
  561 F.3d 556 (6th Cir. 2009) ........................................................................ 7, 18

*Bracken v. Wells Fargo Bank, N.A.,*
  13 F. Supp. 673 (E.D. Tex. 2014) ..................................................................... 16

*Brown v. Delta Air Lines, Inc.,*
  Nos. CIV–03–871–L, CIV–03–901–L,
  CIV–03–943–L, 2004 WL 5041257
  (W.D. Okla. Oct. 08, 2004) ................................................................................. 8

*Brown Water Marine Serv., Inc. v. Aransas Cnty. Navigation Dist. No. 1,*
  No. 13–07–00055–CV, 2008 WL
  1822727 (Tex. App.—Corpus Christi
  April 24, 2008, pet. denied) ............................................................................... 12

*Burlington Ins. Co. v. Ranger Specialized Glass, Inc.,*
  No. 4:12–CV–1759, 2012 WL 6569774,
  (S.D. Tex. Dec. 17, 2012) ................................................................................... 5

*Cade v. BAC Home Loans Servicing, LP,*
  No. H–10–4224, 2011 WL 2470733
  (S.D. Tex. June 20, 2011) ................................................................................. 21

*Cent. Power & Light Co. v. City of San Juan,*
  962 S.W.2d 602 (Tex. App.—
  Corpus Christi 1998, pet. dism'd w.o.j.) ............................................... 18

*City of Corinth v. NuRock Dev., Inc.,*
  293 S.W.3d 360 (Tex. App.—
  Fort Worth 2009, no pet.) ...................................................................... 24

*City of Farmers Branch v. Hawnco, Inc.,*
  435 S.W.2d 288 (Tex. Civ. App.—
  Dallas 1968, writ ref'd n.r.e.) ................................................................ 19

*City of McAllen v Casso,*
  No. 13-11-00749-CV, 2013 WL 1281992,
  (Tex. App. —Corpus Christi 2013,
  pet. denied)....................................................................................... 23, 24

*City of McKinney v. Hank's Restaurant Group, L.P.,*
  412 S.W.3d 102 (Tex. App.—Dallas
  2013, no pet.) ......................................................................................... 11

*City of Oak Ridge North v. Mendes,*
  339 S.W.3d 222 (Tex. App.—
  Beaumont, 2011, no pet.)........................................................................ 14

*City of Pharr v. Pena,*
  853 S.W.2d 56 (Tex. App.—
  Corpus Christi 1993, writ denied)........................................................... 19

*City of San Benito v. Rio Grande Valley Gas Co.,*
  109 S.W.3d 750 (Tex. 2003).................................................................... 18

*City of Terrell v. McFarland,*
  766 S.W.2d 809 (Tex. App.—
  Dallas 1988, writ denied)........................................................................ 24

*Cook v. City of Addison,*
  656 S.W.2d 650 (Tex. App.—Dallas
  1983, writ ref'd n.r.e.) ............................................................................ 19

*Federal National Mortgage Association v. K.O. Realty, Inc.,*
  No. 3:13–CV–2781–L, 2014 WL 3900619 (N.D. Tex. Aug. 8,
  2014) ........................................................................................................ 5

*Four T's, Inc. v. Little Rock Mun. Airport Com'n,*
  108 F.3d 909 (8th Cir. 1997) ............................................................. 7, 18

*Gay v City of Wichita Falls,*
  457 S.W. 3d 499 (Tex. App.—El Paso
  2014, no pet.) ................................................................................................ 15

*Gen. Servs. Comm'n v. Little-Tex Insulation Co.,*
  39 S.W.3d 591 (Tex. 2001)........................................................................... 10

*Gupta v. Eastern Idaho Tumor Inst., Inc.,*
  140 S.W.3d 747 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ................... 9

*Harold H. Huggins Realty, Inc. v. FNC, Inc.,*
  634 F.3d 787 (5th Cir. 2011) ........................................................................ 4

*Holloway v. Wells Fargo Bank,*
  No. 3:12-CV-2184-G(BH), 2013 WL 1187156
  (N.D. Tex. Feb. 26, 2013), *adopted,*
  2013 WL 1189215 (N.D. Tex, March 22, 2013) ....................................... 21

*Housing Authority of City of Dallas v. Killingsworth,*
  331 S.W.3d 806 (Tex. App.—Dallas 2011,
  pet. Denied)............................................................................................... 11

*In re Katrina Canal Breaches Litig.,*
  495 F.3d 191 (5th Cir. 2007) ....................................................................... 4

*J & J Sports Productions, Inc. v. Mandell Family Ventures, LLC,*
  No. 3:10–CV–02489–BF, 2012 WL
  4512500 (N.D. Tex. Oct. 2, 2012) ............................................................ 14

*Kaufman Cnty. v. Combs,*
  393 S.W.3d 336 (Tex. App.—Dallas
  2012, pet. Denied)............................................................................... 10, 14

*Kougl v. Xspedius Mgmt. Co.,*
  No. 3:04–CV–2518–D,
  2005 WL 1421446 (N.D. Tex. June 1,
  2005) ........................................................................................................... 5

*Love Terminal Partners v. United States,*
  97 Fed. Cl. 355 (2011) ................................................................................ 20

*LTTS Charter School, Inc. v. C2 Const., Inc.,*
  358 S.W.3d 725 (Tex. App.—Dallas 2011,
  pet. denied)............................................................................................... 14

*Lubbock Co. Water Control and Impr. Dist. v. Church & Akin, LLC.,*
  442 S.W. 3d 297 (Tex. 2014)................................................................. 12, 13

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ................................................................................ 3

*Maddox v. Vantage Energy, LLC,*
  361 S.W.3d 752 (Tex. App.—Fort Worth
  2012, pet. denied) ............................................................................ 19, 20

*McCasland v. City of Castroville*, 514 Fed. Appx. 446 (5th Cir. 2013) ................................. 7, 20

*Merritt Hawkins & Assocs., LLC v. Gresham,*
  No. 3:13–CV–00312–P, 2014
  WL 685557 (N.D. Tex. Feb. 21, 2014) (Solis, J.) ...................... 5

*Millgard v. McKee/Mays,*
  49 F.3d 1070 (5th Cir. 1995) .................................................... 24

*Mohamad v. Dallas County Community College Dist.*,
  No. 3:10–CV–1189–L (BF), 2010 WL 4877274 (N.D. Tex. Oct. 5, 2010) ..................... 10, 15

*Nationwide Public Ins. Adjusters Inc. v.*
  *Edcouch-Elsa I.S.D,*
  913 F.Supp.2d 305 (S.D. Tex. 2012) ........................................ 12

*OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.,*
  234 S.W.3d 726 (Tex. App.—
  Dallas 2007, pet. denied) ........................................................ 15

*Pan–Islamic Corp. v. Exxon Corp.*,
  632 F.2d 539 (5th Cir. 1980) .................................................. 5

*Raines v. Byrd,*
  521 U.S. 811 (1997) ................................................................ 3

*Reata Construction Corp. v. City of Dallas,*
  197 S.W.3d 371 (Tex. 2006) .................................................. 11

*Regus Mgmt. Grp., LLC v. Int'l Bus. Mach. Corp.*,
  No. 3:07– CV– 1779– B, 2008 WL
  2434245 (N.D. Tex. June 17, 2008) ...................................... 5

*Rowan Cos., Inc. v. Griffin*, 876 F.2d 26 (5th Cir. 1989) ................. 5

*Sharyland Water Supply Corp. v. City of Alton,*
  354 S.W.3d 407 (Tex. 2011) .................................................. 23

*Sheffield Development Co. v.*
  *City of Glenn Heights,*
  140 S.W.3d 660, n. 89 (Tex. 2004) ........................................ 18

*Smith Intern., Inc. v. Egle Group, LLC*,
   490 F.3d 380 (5th Cir. 2007) ............................................... 16

*Somerset Indep. Sch. Dist. v. Casias*,
   No. 04–07–00829–CV, 2008 WL
   1805533 (Tex. App.—San Antonio
   April 23, 2008, pet. denied) ............................................... 12

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
   852 S.W.2d 440 (Tex. 1993) ............................................... 10

*Tex. Dep't of Criminal Justice v. Miller*,
   51 S.W.3d 583 (Tex. 2001) ................................................... 9

*Tex. Dep't of Parks & Wildlife v. Miranda*,
   133 S.W.3d 217 (Tex. 2004) ................................................. 9

*Texas Dep't of Transp. v. Jones*,
   8 S.W.3d 636 (Tex. 1999) ..................................................... 9

*Tooke v. City of Mexia*,
   197 S.W.3d 325 (Tex. 2006) ............................................... 10

*Travis v. City of Glenn Heights, Tex.*,
   Civ. Action No. 3:13-CV-01080-K, 2013
   WL 5508662 (N.D. Tex. Oct. 3, 2013) .................................. 4

*Tutor v. City of Hailey, Idaho*,
   No. 02-475-S-BLW, 2004
   WL 344437 (D. Idaho Jan. 20, 2004) ................................... 7

*U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*,
   336 F.3d 375 (5th Cir. 2003) ................................................. 4

*United States et al. v. US Airways Group, Inc.and AMR Corporation*,
   Case No. 1:13-cv-01236 (D.D.C.) .......................................... 8

*Val-Com Acquisitions Trust v. Chase Home Fin. LLC*,
   3:10-CV-1214-K, 2011 WL 1938146
   (N.D. Tex. May 19, 2011) ..................................................... 5

*Vanegas v. Am. Energy Servs.*,
   302 S.W.3d 299 (Tex. 2009) ............................................... 16

*Wasson Interests, Ltd. v. City of Jacksonville*,
   No. 12-13-00262-CV; 2014 WL 3368413,
   (Tex. App.—Tyler July 9, 2014, pet. filed) ......................... 12

*Water Exploration Ltd. v. Bexar Metro.Water Dist.*,
345 S.W. 3d 492 (Tex. App.—
San Antonio 2011, no pet.) ........................................................................ 12

*Westinde v. JPMorgan Chase Bank, N.A.*,
No. 3:13-CV-3576-O), 2014 WL
4631405 (N.D. Tex. Sept. 16, 2014) ..................................................... 16, 17

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) .................................................................................... 3

*Williamson v. Tucker*,
645 F.2d 404 (5th Cir.1981),
cert. denied, 454 U.S. 897 (1981) ............................................................... 2

*Winton v. Seven Falls Co.*,
515 U.S. 277 (1995) ..................................................................................... 5

*WPF of Delaware, Inc. v. City of Houston*,
163 F.3d 1356 (5th Cir. 1998)(per curiam).............................................. 18

*Zachry Const. Corp. v. Port of Houston Authority
of Harris Cnty.*, 449 S.W.3d 98 (Tex. 2014) ............................................ 11

**Constitutional Provisions**
U.S. Const., art. III ............................................................................................. 3

**Statutes**
49 U.S.C. § 40117.............................................................................................. 8

49 U.S.C. § 47107.............................................................................................. 7

49 U.S.C. § 41762............................................................................................ 22

Tex. Bus. & Com. Code, § 26.01(b) ............................................................... 17

Tex. Civ. Prac. & Rem. Code, § 101.0215(a).................................................. 11

Tex. Local Gov't Code § 271.151 .............................................................. 10, 13

Tex. Local Gov't Code § 271.152 ................................................................... 10

Tex. Local Gov't Code § 271.153 ................................................................... 13

Tex. Trans. Code, § 22.002(a) ........................................................................ 11

Wright Amendment Reform Act of 2006, Pub. L. 109-352, 120 Stat. 2011 (2006) ............. Passim

**Rules and Regulations**

63 Fed. Reg. 17,919 n.1 (April 10, 1998) .................................................................................. 22

Fed. R. Civ. P. 12 ...................................................................................................................... 5

**Charter Provisions and Ordinances**

Dallas City Charter, Chapt. XXII, Section 1 ............................................................................ 13

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CITY OF DALLAS, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-cv-02069-K |
| | § | |
| DELTA AIR LINES, INC., *et al.,* | § | |
|     Defendants. | § | |

**<u>PLAINTIFF CITY  OF DALLAS' BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
DELTA AIR LINES, INC.'S AMENDED COUNTERCLAIMS FOR LACK OF
JURISDICTION AND FAILURE TO STATE A CLAIM</u>**

TO THE HONORABLE JUDGE OF SAID COURT:

The City of Dallas ("City"), files this brief in support of its motion to dismiss Delta Air

Lines, Inc.'s ("Delta") three amended counterclaims and shows the Court the following:

## I.   INTRODUCTION

The City has entered into airport leases with Southwest Airlines Co. ("Southwest"),

United Airlines, Inc. ("United"), and American Airlines, Inc. ("American").  Virgin American,

Inc. ("Virgin") has subleased American's gates and Southwest has sub-leased United's gates.

Delta seeks permanent gate accommodation at Love Field.  The City brought this action against

Delta, other airlines, the United States Department of Transportation ("DOT"), and the Federal

Aviation Administration ("FAA") seeking declaratory relief concerning competing demands for

gate space at Love Field.  The competing claims, primarily between co-defendants Southwest

and Delta, are based on the conflicting interpretations of rights and obligations under

accommodation provisions found in airport leases, the Five-Party Agreement, the City's grant

assurances and competition plan, and the Wright Amendment Reform Act of 2006 ("WARA").

(*See* ECF No. 1).

Delta filed counterclaims against the City and the City moved to dismiss. (ECF No. 66, 78, 79). Delta did not respond to the City's motion but instead filed amended counterclaims that, despite having been served with the City's initial motion to dismiss, merely repeat the original counterclaims and suffer the same defects. (ECF No. 133).

In its amended counterclaims, Delta repeats and does not dispute the basic facts and the identification of governing legal documents and statutes as set forth in the City's original complaint. (*Compare* ECF Nos. 1 at 1-6, 12-39 and 133 at 8-27). Delta's first two amended counterclaims seek declaratory relief against the City. (ECF No. 133 at 28-30). Delta's third amended counterclaim asserts a breach of contract claim and seeks damages and specific performance. (*Id*. at 30-35). The amended counterclaims are redundant of the claims and relief sought by the City, Delta also lacks standing, its breach of contract claims are barred by the City's governmental immunity, and Delta fails to state a breach of contract claim. All of Delta's amended counterclaims should be dismissed with prejudice.

## II.   STANDARDS OF REVIEW

### A.  Standards under Rule 12(b)(1).

Fed. R. Civ. P. 12(b)(1) authorizes the dismissal of a case for lack of jurisdiction over the subject matter. On a Rule 12(b)(1) motion, the district court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981), *cert. denied*, 454 U.S. 897 (1981). In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts. *Id*.

A private plaintiff must first establish that it satisfies the standing requirements imposed by the "case" or "controversy" provision of Article III of the United States Constitution. U.S.

Const., art. III; *Allen v. Wright*, 468 U.S. 737, 750-51, (1984). Under the case or controversy requirement, each plaintiff must establish that it has standing to sue. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). This "irreducible constitutional minimum" of standing requires a showing (1) that the plaintiff have suffered an "injury in fact"; (2) that there be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant; and (3) that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing must be addressed on a claim by claim basis. *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001).

An injury in fact, for standing purposes, is an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual and imminent, and not conjectural or hypothetical. *Id.*, 504 U.S. at 560, 112 S.Ct. 2130. The injury must be concrete in both a qualitative and temporal sense. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). The complainant must allege an injury that is "distinct and palpable," as opposed to merely "abstract," and the alleged harm must be "actual or imminent," and not "conjectural" or "hypothetical." *Whitmore*, 495 U.S. at 158.

The second element of standing requires proof of a causal connection between the injury in fact and the conduct complained of. *Defenders of Wildlife*, 504 U.S. at 560–61. The injury has to be fairly traceable to the challenged action of the defendants. *Id.* Causation focuses on the relationship between the alleged violation and the alleged injury. *Allen*, 468 U.S. at 753 n. 19.

Under the third element for standing, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision. *Defenders of Wildlife*, 504 U.S. at 560–61. This element focuses on the relationship between the remedy requested and the alleged injury. *Allen*, 468 U.S. at 753 n. 19.

**B.  The standards under Fed. R. Civ. P. 12(b)(6).**

In deciding a Rule 12(b)(6) motion, a court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007).  A court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken.  *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).[1]  A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Showing the "grounds" for plaintiff's entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action is not sufficient.  *Twombly,* 550 U.S. at 555; *Travis v. City of Glenn Heights, Tex.*, Civ. Action No. 3:13-CV-01080-K, 2013 WL 5508662, at *1 (N.D. Tex. Oct. 3, 2013) (Kinkeade, J.).  A court is not bound to accept a legal conclusion couched as a factual allegation.  *Id.*  A claim is implausible on its face when the pleadings do not permit the court to infer more than the mere possibility of misconduct.  *Harold H. Huggins Realty, Inc. v. FNC, Inc.,* 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal,* 556 U.S. at 679). *Travis*, 2013 WL 5508662", *1.

**III.   THE REQUESTED DECLARATORY RELIEF SHOULD BE DISMISSED**

**A.  Delta's amended counterclaims are redundant.**

The Declaratory Judgment Act confers federal courts with unique and substantial discretion in deciding whether to declare the rights of litigants.  *Winton v. Seven Falls Co.*, 515

---

[1] In its amended counterclaims, Delta incorporates the airport leases, the Five-Party Agreement, and WARA.

U.S. 277, 286 (1995). While courts may not dismiss a declaratory relief request "on the basis of whim or personal disinclination ... the court may consider a variety of factors in determining whether to decide a declaratory judgment suit." *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28–29 (5th Cir. 1989) (internal quotations and citations omitted). *See Val-Com Acquisitions Trust v. Chase Home Fin. LLC*, 3:10-CV-1214-K, 2011 WL 1938146, at *4 (N.D. Tex. May 19, 2011) (Kinkeade, J.). A request for a declaratory judgment need not be permitted if it adds nothing to the suit. *See Regus Mgmt. Grp., LLC v. Int'l Bus. Mach. Corp.*, No. 3:07– CV– 1779– B, 2008 WL 2434245, at * 2 (N.D. Tex. June 17, 2008) (Boyle, J.) (citing *Pan–Islamic Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980)). Pursuant to Fed. R. Civ. P. 12(b)(6), courts routinely dismiss declaratory judgment claims seeking to resolve matters already pending before the court. *See, e.g.*, *Merritt Hawkins & Assocs., LLC v. Gresham*, No. 3:13–CV–00312–P, 2014 WL 685557, *2-*4 (N.D. Tex. Feb. 21, 2014) (Solis, J.) (dismissing declaratory judgment counterclaim since all issues would be resolved in relation to plaintiff's contract claims); *Burlington Ins. Co. v. Ranger Specialized Glass, Inc.*, No. 4:12–CV–1759, 2012 WL 6569774, *3 (S.D. Tex. Dec. 17, 2012) (dismissing a declaratory judgment counterclaim that was a "mirror image of the ... Complaint"); *Regus Mgmt.*, 2008 WL 2434245, *3 (dismissing a declaratory judgment claim that was "repetitive and unnecessary"); *Federal National Mortgage Association v. K.O. Realty, Inc.*, No. 3:13–CV–2781–L, 2014 WL 3900619 (N.D. Tex. Aug. 8, 2014) (Lindsay, J.) (dismissing with prejudice a declaratory judgment counterclaim in response to a plaintiff's request for declaratory relief as "duplicative," and serving "no useful purpose."). Redundant declaratory judgment claims will not survive challenge by a Rule 12(b)(6) motion. *Gresham*, 2014 WL 685557, at *3 (citing *Kougl v. Xspedius Mgmt. Co.*, No. 3:04–CV–2518–D, 2005 WL 1421446, *4 (N.D. Tex. June 1, 2005) (Fitzwater, J.)).

Here, Delta's amended counterclaims are fully duplicative and redundant of the City's claims for declaratory relief. They involve the same facts, issues, and law. They do not introduce any new facts, evidence, or proper issues and Delta cannot show that granting it any relief will have any effect beyond the effect that would be achieved by resolving the City's claims. Since the City ultimately seeks declarations of rights without even asserting how the Court should rule, the Court could grant the relief the City is requesting by granting the same relief as sought by Delta's counterclaims. Delta's counterclaims serve no useful purpose and the Court should dismiss them with prejudice pursuant to Rule 12(b)(6).

**1. Delta's request for declaratory relief to be accommodated is redundant.**

The City requested that the Court declare "Delta's rights to temporary and permanent gate accommodation." (ECF No. 1 at 42 [¶ 116(d)]). Delta's first amended counterclaim seeks nearly the identical relief, except from its perspective, by requesting that the Court declare "that the City has an obligation to require that Delta be accommodated at Love Field." (ECF No. 133 at 29 [¶ 92]). No additional request for relief beyond the City's declaratory judgment claims is needed to grant or deny Delta the relief it seeks. The amended counterclaim is redundant.

**2. Delta's request for declaratory relief regarding reclaiming gates is redundant.**

As noted, the City sought declaratory relief as to Delta's rights to being accommodated. Delta's second amended counterclaim seeks declaratory relief that United's sublease to Southwest of its two gates is somehow invalid, that Southwest is limited to 16 gates, and that the two gates are now common use gates. (ECF No. 133 at 30 [¶ 100]. Delta makes the conclusory claim it has suffered and continues to suffer unspecified injury because of the sublease. (*Id.* [¶ 99]). Presumably, Delta makes these assertions based on its efforts to obtain accommodation. As noted, the City has already sought declaratory relief as to Delta's rights for accommodation

and this request is redundant.  If Delta is entitled to accommodation, it does not matter whether the gates are leased by United or subleased by Southwest.  Moreover, as discussed below, Delta lacks standing to assert this claim and a claim is not stated.

### 3.   Delta' breach of contract claim is redundant.

Delta's breach of contract amended counterclaim is also redundant.  If Delta has some contractual claim against the City for accommodation, it will be resolved in the City's request for a declaration of "Delta's rights to temporary and permanent gate accommodation."  (ECF No. 1 at 42 [¶ 116(d)]).  This claim is redundant and should be dismissed.

All of the declaratory relief sought by Delta has already been presented to the Court by the relief sought in the City's complaint.   The amended counterclaims are redundant, unnecessary, add nothing, and should be dismissed with prejudice.

### B.  Delta lacks standing to complain about United's sublease to Southwest

Delta apparently asserts that the City's consent of the sublease somehow violates the public interest, title 49 of the U.S. Code, and the leases. (ECF No. 133 at 26-27, 29-30). Initially, Delta has no standing or other interest in the governing statutes or the City's compliance.  No private right of action exists to enforce or claim rights under title 49 as to grant assurances, competition plans, and the limitations imposed by WARA.  *McCasland v. City of Castroville*, 514 Fed. Appx. 446, 448-49 (5th Cir. 2013) (no private cause of action or property interests created under 49 U.S.C. § 47107); *Bowling Green v. Martin Land Dev. Co., Inc.*, 561 F.3d 556, 560-61 (6th Cir. 2009) (no private cause of action under AAIA); *Four T's, Inc. v. Little Rock Mun. Airport Comm'n*, 108 F.3d 909, 915 (8th Cir. 1997); *Tutor v. City of Hailey, Idaho*, No. 02-475-S-BLW, 2004 WL 344437, *9 (D. Idaho Jan. 20, 2004) ("Though Plaintiffs assert that AAIA's provision requiring assurances of nondiscrimination provide them a private right of action, this claim has been rejected by all federal circuit courts which have addressed the

issue."); *Brown v. Delta Air Lines, Inc.*, Nos. CIV–03–871–L, CIV–03–901–L, CIV–03–943–L, 2004 WL 5041257, *3-4 (W.D. Okla. Oct. 08, 2004) (no private cause of action under 49 U.S.C. § 40117, and holding "this finding is in accord with rulings that Congress did not intend to provide for private rights of action under other statutes governing the airline industry.").

The absence of a private or public right is furthered stated in the express limitation in WARA on the federal government's authority to require the City "to modify or eliminate preferential gate leases with air carriers in order to allocate gate capacity to new entrants or to create common use gates, unless such modification or elimination is implemented on a nationwide basis." (ECF 21 at 16; WARA § 5(e)(2)(B)(ii)). Delta claims a right denied the federal government.

As discussed in Section IV(D), Delta lacks standing to complain about any alleged breach or violation of the lease. Delta lacks standing to base any claim on the public's interest since it has not suffered an injury in fact. Delta has not alleged any legally protected interest that has been violated by the City's consent to the sublease. Also, Delta has not alleged any connection between the City's consent to the sublease and Delta's claimed but unidentified injury. Furthermore, if the two gates were somehow converted to common use gates, it is speculative to assume that Delta would be awarded gates or slots. The Department of Justice and at least one district court have already opposed and denied Delta's attempt to acquire two gates at Love Field as not being in the interest of competition. *See generally United States et al. v. US Airways Group, Inc. and AMR Corporation*, Case No. 1:13-cv-01236 (D.D.C.).

### C.  Delta has failed to state a claim about United's sublease to Southwest

In its amended counterclaim, Delta seeks a declaration to terminate or modify United's sublease to Southwest and also the City's lease with Southwest. Section 4.06(E) of the leases state if an airline's rights to use a preferential use gate cease, terminate, or expire the gate

becomes a common use gate under the control of the City.   (*See* ECF No. 24 at 174-175 [§4.06(E)]).   Delta's pleadings do not allege a legal basis by which United's rights should cease, terminate, or expire.   Oddly, while seeking to declare the rights of United and Southwest, Delta has not named them in this counterclaim.   Moreover, Delta also advances claims as a party to this or other leases and seeks damages and specific performance.   Delta cannot assert that the rights under leases are terminated and yet seek to likewise enforce them.   *See Gupta v. Eastern Idaho Tumor Inst., Inc.*, 140 S.W.3d 747, 757–58 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (holding that a party was bound by the contract despite other party's material breach because that party continued to demand performance under the contract).   A claim is not stated and it should be dismissed.

## IV.   THE COURT LACKS JURISDICTION OVER ANY CONTRACT CLAIM

### A.   The City's governmental immunity bars Delta's breach of contract claim.

In Texas, sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits against the State or other governmental units unless the State consents to suit.   *Ash Grove Texas, L.P. v. City of Dallas*, No. 3:08–CV–2114–O. 2009 WL 3270821, *5 (N.D. Tex. Oct. 09, 2009) (O'Connor, J.) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004) and *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999)).   To establish subject-matter jurisdiction against a governmental unit, a plaintiff's pleading must establish, either by reference to a statute or express legislative permission, the legislature's consent to its lawsuit, or immunity from suit will deprive the trial court of subject-matter jurisdiction.   *Jones*, 8 S.W.3d at 638.   Mere reference to a legislative waiver, however, does not establish a governmental entity's consent to be sued and is not enough to confer jurisdiction on the trial court.   *See Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001) (holding that merely alleging the Tort Claims Act is not sufficient to establish jurisdiction).   For

the waiver to be effective, a plaintiff must plead a constitutional or legislative waiver with facts that make the waiver applicable. *See Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 599 (Tex. 2001) (holding that the plaintiff had failed to allege facts to demonstrate a valid takings claim to invoke a waiver of immunity from suit); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (holding that the pleader must allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause). Delta has pleaded no such facts. In addition, to establish a waiver of governmental immunity, the plaintiff must plead a valid claim. *See Kaufman Cnty. v. Combs*, 393 S.W.3d 336, 345 (Tex. App.—Dallas 2012, pet. denied). Delta has not pleaded a valid claim.

Governmental immunity of local governments such as the City for contractual claims is waived only to the extent specifically provided by statute. See *Mohamad v. Dallas County Community College Dist.*, No. 3:10–CV–1189–L (BF), 2010 WL 4877274, *3 (N.D. Tex. Oct. 5, 2010) *adopted* 2010 WL 4883436 (N.D. Tex. Nov. 30, 2010) (Lindsay, J.) (citing *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006)). The only statute waiving a Texas city's governmental immunity for a breach of contract claim is found in chapter 271 of the Texas Local Government Code. Under that statute, a local governmental "that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter." Tex. Local Gov't Code § 271.152. A "contract subject to this subchapter" means "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." Tex. Local Gov't Code § 271.151. No waiver exists Delta's claims.

**1. Filing this action did not waive governmental immunity as to Delta's breach of contract claim.**

Delta now attempts to argue that the City waived governmental immunity by originally filing this action. (ECF No. 133 at 7, 28 [20, 84]).[2] In *Reata Construction Corp. v. City of Dallas*, 197 S.W.3d 371, 376–77 (Tex. 2006), the Texas Supreme Court held when a governmental entity joins the litigation process by asserting its own affirmative claims for monetary relief, that entity's immunity may be partially waived. Seeking declaratory relief is not a claim for monetary damages and does not waive immunity for a claim seeking damages from the governmental entity. *Housing Auth. of City of Dallas v. Killingsworth*, 331 S.W.3d 806, 814-15 (Tex. App.—Dallas 2011, pet. Denied). *Also see City of McKinney v. Hank's Restaurant Group, L.P.*, 412 S.W.3d 102, 116 (Tex. App.—Dallas 2013, no pet.) (holding city's claim for declaratory relief did not waive immunity as to declaratory relief counterclaim). In bringing this action and seeking declaratory relief, the City did not waive governmental immunity. Furthermore, a governmental entity seeking monetary relief still remains immune from a counterclaim for damages in excess of the amount sufficient to offset the government's recovery, if any. *Reata,* 197 S.W. 3d at 377. The City seeks no damages, so there is nothing to offset.

**2. Chapter 271's waiver is limited to actions filed in Texas state courts.**

Section 271.156 of the Texas Local Government Code states "This subchapter does not waive sovereign immunity to suit in federal court." Delta cannot invoke chapter 271 to bring its counterclaim and no other waiver exists. Governmental immunity bars Delta's breach of contract counterclaim. *Zachry Const. Corp. v. Port of Houston Auth. of Harris Cnty.*, 449 S.W.3d 98, 107 (Tex. 2014) ("Section 271.156 limits the Act's waiver of immunity to suits filed in state court."); *Nationwide Public Ins. Adjusters Inc. v. Edcouch-Elsa I.S.D,* 913 F.Supp.2d

---

[2] The operation of an airport is a governmental function. *See* Tex. Trans. Code, § 22.002(a)(2); Tex. Civ. Prac. & Rem. Code, § 101.0215(a)(10).

305, 310-11 (S.D. Tex. 2012) (dismissing breach of contract claim brought in federal court because, pursuant to § 271.156, the claim was not within waiver of chapter 271).

### 3. There is no contract for the provision of "goods and services" to the City and, therefore, there is no waiver of immunity.

Delta alleges the contract at issue was a lease with the City. (ECF No. 133 at 30-34). A lease is not a contract for goods or services. The waiver is chapter 271 does not apply. *See Lubbock Co. Water Control and Impr. Dist. v. Church & Akin, LLC*., 442 S.W. 3d 297 (Tex. 2014) (holding a lease of a marina was not a contract for goods and services and therefore there was no waiver of sovereign immunity). *See also Bexar Metro. Water Dist. v. Educ. & Econ. Dev. Joint Venture*, 220 S.W.3d 25, 32 (Tex. App.—San Antonio 2006, pet. dism'd w.o.j.); *Brown Water Marine Serv., Inc. v. Aransas Cnty. Navigation Dist. No. 1*, No. 13–07–00055–CV, 2008 WL 1822727, at *2 n. 1 (Tex. App.—Corpus Christi April 24, 2008, pet. denied) (mem. op.); *Somerset Indep. Sch. Dist. v. Casias*, No. 04–07–00829–CV, 2008 WL 1805533, at *3 (Tex. App.—San Antonio April 23, 2008, pet. denied) (mem. op.); *Water Exploration Ltd. v. Bexar Metro. Water Dist.*, 345 S.W. 3d 492, 499-502 (Tex. App.—San Antonio 2011, no pet.); *Wasson Interests, Ltd. v. City of Jacksonville*, No. 12-13-00262-CV; 2014 WL 3368413, *3 (Tex. App.—Tyler July 9, 2014, pet. filed) (mem. op.). There has been no waiver under chapter 271 because the contract claimed by Delta did not qualify as a contract for providing goods or services to a governmental entity.

### 4. Delta does not seek sums "due and owed" under the contract, and therefore, there is no waiver of immunity.

Any recovery under chapter 271 is to limited "the balance due and owed by the local governmental entity under the contract." Tex. Loc. Gov't Code § 271.153(a)(1). The Supreme Court observed that: "Construing section 271.152's waiver of immunity with section 271.153(a)'s limitation on damages to which the waiver applies, the waiver will typically apply only to

contracts in which the governmental entity agrees to pay the claimant for the goods or services that the claimant agrees to provide to the governmental entity." *Church & Akin*, 442 S.W. 3d at 304.   Under the leases, the City never made or agreed to make any payments to Delta or the signatory airlines; instead, the only contractual payments were to the City by the signatory airlines.   With any accommodation provisions, the requesting airline would pay the signatory airline. (*See* ECF No. 24 at 174-175 [§4.06(F)]).   Since Delta does not seek the balance due and owed under the contract, it does not assert a valid claim within the waiver of sub-chapter 271.

**5.   Chapter 271 does not waive governmental immunity for claims of specific performance.**

In addition to a conclusory claim for damages, Delta makes a conclusory claim for specific performance.   (ECF No. 66 at 82 [¶ 83]).   The waiver of governmental immunity is limited to the balance due and owed under the contract.   The Texas legislature specifically limited the remedy of specific performance to contracts with school districts and junior college districts.   *See* Tex. Local Gov't Code § 271.153(c).   By specifically limiting the remedy to those districts, it excluded the availability of the remedy against other governmental entities.

**6.   There was no written and properly executed contract between the City and Delta.**

Delta claims a unilateral contract based on oral statements.   By this claim, Delta admits that there was no "written contract stating the essential terms of the agreement" and that it was not "properly executed on behalf of the local governmental entity."   Tex. Local Gov't Code § 271.151.   The Dallas City Charter provides that "No contract, … , shall be deemed executed on behalf of the city nor shall it be binding upon the city unless it has first been signed by the city manager and approved as to form by the city attorney." Dallas City Charter, Chapt. XXII, Section 1.   There has been no waiver of governmental immunity and there is no jurisdiction for the claim. *LTTS Charter School, Inc. v. C2 Const., Inc.*, 358 S.W.3d 725, 741-744 (Tex. App.—

Dallas 2011, pet. denied) (no signed contract or approval by governing body); *City of Oak Ridge North v. Mendes*, 339 S.W.3d 222, 231-232 (Tex. App.—Beaumont, 2011, no pet.).

As to Delta's claim as a third party beneficiary, Delta does not seek to claim rights as found in the leases.  Rather, it seeks to modify the terms of the leases and impose those modifications on the City and signatory airlines.  Specifically, it seeks to modify the term "new entrant" so that Delta will fit within the definition.  It seeks to modify the accommodation provision so that any request must be evaluated when first made or within a "snapshot" period. It seeks to modify the provision so that any accommodation granted must be granted on a permanent basis.  It seeks to modify the provision so that a signatory airline can never re-capture its preferential leased gate space once there has been any accommodation.  Delta has conceded that the leases are not ambiguous.  (*See* ECF Nos. 63 at 7; 73 at 11).  There has been no written contract stating these terms that has been properly executed by the City and therefore no waiver of governmental immunity for the claims asserted by Delta.  *See City of Oak Ridge North*, 339 S.W. 3d at 321-32 (holding no waiver under chapter 271 based on attempt to modify written contract in violation of parol evidence rule because alleged obligations not founded on a properly executed written contract).

### 7.  A valid breach of contract claim is not stated.

As explained below, Delta has failed to allege a valid breach of contract claim. Therefore, there has been no waiver of governmental immunity and the Court lacks jurisdiction over any such claim.  *See Combs*, 393 S.W.3d at 345.

### B.  Delta lacks standing for any breach of contract claim.

A plaintiff must have standing in order to maintain a suit for breach of contract.  *J & J Sports Productions, Inc. v. Mandell Family Ventures, LLC*, No. 3:10–CV–02489–BF, 2012 WL 4512500, *4 (N.D. Tex. Oct. 2, 2012) (citing *OAIC Commercial Assets, L.L.C. v. Stonegate Vill.,*

*L.P.,* 234 S.W.3d 726, 735 (Tex. App.—Dallas 2007, pet. denied).   To establish standing for a breach of contract claim, a plaintiff must demonstrate either third-party beneficiary status or privity of contract.   *Id.*   For purposes of standing, privity is established by proving that the defendant was a party to an enforceable contract with either the plaintiff or a party who assigned its cause of action to the plaintiff.   *Id.*

As discussed below, no unilateral contract was formed and no third-party beneficiary rights were created.   WARA, the competition plan, the grant assurances, and the leases, separately or collectively, establish there was no intent to create any contractual rights between the City and Delta.   Delta lacked privity and was not a third party beneficiary.   Additionally, as stated below, Delta is not a "new entrant" and lacks any right to claim accommodation.   Delta lacks standing to assert breach of contract claims and the Court lacks jurisdiction over this claim.

### C.  Dismissal should be with prejudice.

Typically dismissals for lack of jurisdiction are without prejudice; however, because of the lack of a waiver of sovereign/governmental immunity, there is no court where such claims can be brought, dismissal should be with prejudice.   *Mohamad,* 2010 WL 4883436, at *1, *Id.* Texas courts also hold that claims barred by governmental immunity are dismissed with prejudice.   *See e.g. Gay v City of Wichita Falls*, 457 S.W. 3d 499, 504 (Tex. App.—El Paso 2014, no pet.) ("If the suit is barred by governmental immunity, dismissal with prejudice is mandatory.").   Pursuant to Rule 12(b)(1) or alternatively 12(b)(6), Delta's counterclaim for a breach of contract claim should be dismissed with prejudice.

### V.   DELTA HAS FAILED TO STATE A BREACH OF CONTRACT CLAIM

### A.  Elements for a breach of contract claim.

A valid breach of contract claim requires the claimant to allege the existence of a valid contract, performance or tender of performance, a material breach of that contract, and damages

resulting from that breach.  *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007).   Delta relies on alleged oral "promises" and the interplay of the accommodation provisions in the City airport leases, the City competition plan, the City grant assurances, the Five-Party Agreement, and WARA to claim a unilateral contract with the City or rights as a third-party beneficiary of the leases.   Delta's pleading fails to allege the elements necessary to assert a breach of contract claim and has failed to state a claim under either theory.

### B.  Delta has failed to allege a unilateral contract.

Delta makes the conclusory claim that it has a unilateral contract with the City.  (ECF No. 133 at 31 [¶¶ 105, 106]).  A unilateral contract is created by the promisor promising a benefit if the promisee performs and becomes enforceable when the promisee performs.  *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009).  The promise binds the promisor only when the promise accepts the offer by rendering performance.  *Westinde v. JPMorgan Chase Bank, N.A.*, No. 3:13-CV-3576-O), 2014 WL 4631405, *5 (N.D. Tex. Sept. 16, 2014) (O'Connor, J.).  Until the promisee performs, the contract is a merely an illusory promise that lacks mutuality and is unenforceable.  *Id.* Delta has failed to allege either a contractual promise or its performance.

Initially, the claimed "promises" were alleged oral statements that the City would accommodate Delta.  (ECF No. 133 at 16-17).  These were not contractual "promises" but rather statements of possible expectations related to compliance with the claimed federal requirements under the circumstances at that time.   According to Delta, the City had the obligation to accommodate independent of any alleged "promises."  An agreement to do what one is already bound to do generally cannot serve as sufficient consideration for a contract.   *See Bracken v. Wells Fargo Bank, N.A.*, 13 F. Supp. 673, 681-82 (E.D. Tex. 2014).  Delta's claim of promises fails because Delta does not suggest any consideration for the promise.

Delta's claims of promises also fail because Delta seeks a permanent accommodation or at least for a lease in excess of a year.  An oral promise of a lease for more than a year violates the Texas statute of frauds and is unenforceable.  Tex. Bus. & Com. Code, § 26.01(b)(6).  *Also see Westinde,* 2014 WL 4631405, *5 (holding no unilateral contract based on alleged oral promises barred by statute of frauds).  If Delta should claim the alleged promise was for less than a year, then there has been no breach since Delta has been voluntarily accommodated since October, 2014 and will continue to be accommodated until a Court decision.

Moreover, the allegations do not contend that any mandatory accommodation granted by the City would have been different than what achieved through Delta's voluntary accommodation agreement.  Delta makes the conclusory allegation that it was forced to enter temporary voluntary accommodation agreements and were less favorable than the terms the City offered Southwest.  (ECF No. 133 at 19, 21 [¶¶ 56, 61]).  Under the leases, if the parties could not agree on reasonable fees and charges then the City was authorized to issue a binding decision based on "the Signatory Airline's direct and indirect costs plus a reasonable allowance for administration."  (ECF No. 24 at 175 [4.06(F)(4)(c)]).  Delta does not allege that its voluntary accommodation agreements were less favorable than what the City, under the leases, was authorized to decide.  The allegation is Delta's speculation.

Further, Delta's reliance on the leases is misplaced.  The leases are written bilateral agreement and Delta is not a party to the contract.  Under the accommodation provision in the leases, the City would not enter into a contract with Delta.  Rather, Delta would enter into a contract with a signatory airline.  (*See* ECF No. 24 at 174-175).

Similarly, to the extent, Delta relies on the Five-Party Agreement, it is a written multilateral contract and Delta is not a party.  It provides that the accommodation is determined

by the terms of the leases.  (ECF No. 1 at 73 [¶ 3(b)]).  Under the leases, no contract is created between the City and a requesting airline, only a contract between Delta and a signatory airline. (ECF No. 24 at 174-175).   The Five-Party Agreement also expressly states no third-party beneficiary rights are created.  (ECF No. 1 at 78 [¶ 11]).

To the extent Delta relies on grant assurances, the competition plan, and WARA, as a basis for a unilateral contract, it has no standing or other interest in the governing statutes or the City's compliance.  No private right of action exists to enforce or claim rights under title 49 of the U.S. Code as to grant assurances, competition plans, and the limitations imposed by WARA. *McCasland,* 514 Fed. Appx. at 448-49; *Bowling Green,* 561 F.3d at 560-61; *Four T's, Inc.,* 108 F.3d at 915; *Tutor,* 2004 WL 344437 at *9; *Brown,* 2004 WL 5041257 at *3-4.  Delta cannot form a contract based on title 49 or WARA.

In addition, whatever claimed promises Delta asserts were made by individuals, those promises were not enforceable against the City.  Delta does not allege that City Council approved a lease with Delta.  Texas cities can express and bind themselves only by way of a duly assembled meeting of the cities' governing bodies. *City of San Benito v. Rio Grande Valley Gas Co.,* 109 S.W.3d 750, 757 (Tex. 2003) (citing *Cent. Power & Light Co. v. City of San Juan*, 962 S.W.2d 602, 612 (Tex. App.—Corpus Christi 1998, pet. dism'd w.o.j.); *see also WPF of Delaware, Inc. v. City of Houston,* 163 F.3d 1356, *1 (5th Cir. 1998)(per curiam)(noting that under Texas law, governmental units only act through their governing body and statements or acts of the mayor or other officers or governing body members are ineffectual).  A municipality cannot be bound by the promise of a city official or employee to take a certain action or refrain from taking some action in the future.  *Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 678, n. 89 (Tex. 2004); *City of Pharr v. Pena*, 853 S.W.2d 56, 62 (Tex. App.—Corpus

Christi 1993, writ denied); *Cook v. City of Addison*, 656 S.W.2d 650, 657 (Tex. App.—Dallas 1983, writ ref'd n.r.e.); *City of Farmers Branch v. Hawnco, Inc.*, 435 S.W.2d 288, 292 (Tex. Civ. App.—Dallas 1968, writ ref'd n.r.e.).

Furthermore, the factual underpinning on any alleged promises changed when Southwest announced it planned to expand the number of flights to 180 and made demand for full access to its preferentially leased gates. (*See* ECF No. 133 at 22 [¶67]).

Apart from there being no enforceable promise on which to base a contract, Delta has not performed. It claims a lease was formed. It makes no allegations that it has paid the City for the term of whatever lease it claims. Indeed, Delta make no allegations as to what are the essential terms of any lease, including what space has been leased, the lease payment, maintenance and insurance requirements, and the length of the lease.

### C. Delta is not a third-party beneficiary.

Under Texas law, a third party is entitled to recover upon a contract made between other parties only if the parties intended to secure some benefit to that third party, and only if the contract was entered into directly and primarily for the third party's benefit. *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 756-57 (Tex. App.—Fort Worth 2012, pet. denied). The parties must have entered the agreement with the clear and express intention of directly benefitting the third party and a presumption exists that parties contracted for themselves unless it clearly appears that they intended a third party to benefit from the contract. *Id*. at 757. In the absence of a clear and unequivocal expression of the contracting parties' intent to directly benefit a third party, courts will not confer third-party beneficiary status by implication. *Id*. The fact that a person might receive an incidental benefit from a contract to which it is not a party does not give that person a right of action to enforce the contract. *Id*. A third-party beneficiary will not be recognized unless that intent is clearly written or evidenced in the contract and the fact that a

person is directly affected by the parties' conduct, or that he may have a substantial interest in a contract's enforcement, does not make him a third party beneficiary. *Id.*

Delta claims to be a third party beneficiary of the accommodation provisions in the various documents. However, the Five-Party Agreement expressly stated no third party beneficiary rights were created. (ECF No. 1 at 78 [¶ 11]). The Five-Party Agreement bars Delta's attempt to claim third-party beneficiary rights under that agreement.

Further, because of the interconnection between the leases, the competition plan, the grant assurances, and WARA, the prohibition in the Five-Party Agreement also serves as a prohibition in each of those documents. The Five-Party Agreement was incorporated into WARA and became part of federal law. *Love Terminal Partners v. United States*, 97 Fed. Cl. 355, 406, 415 (2011). Thus, the grant assurances, competition plan, and WARA recognize no third party beneficiary rights are created. This is consistent with the recognition that title 49 does not create any private right of action. *See e.g.*, *McCasland*, 514 Fed. Appx. at 448-49. The leases also identify the Five-Party Agreement and state that the City and Southwest agreed to enter into the lease that would express the intent of and provide provisions consistent with the terms of the Five-Party Agreement. (ECF No. 24 at 154). Other provisions in the leases reference the Five-Party Agreement. (ECF No. 24 at 153-154, 173). The leases were adopted with federal law in mind, specifically WARA which incorporated the Five-Party Agreement. It disclaimed any intent to create third-party beneficiary rights. Individually and collectively the documents establish a clear and express disclaimer of any intent to grant third-party beneficiary rights.

Moreover, the accommodation provision in the leases was not intended to create third-party beneficiary rights in Delta or any other requesting airline. It reflects an intent to comply with the governing federal law and not to bestow contractual rights on Delta. In *Cade v. BAC*

*Home Loans Servicing, LP*, No. H–10–4224, 2011 WL 2470733, *2-4 (S.D. Tex. June 20, 2011) and *Holloway v. Wells Fargo Bank*, No. 3:12-CV-2184-G(BH), 2013 WL 1187156, *13-14 (N.D. Tex. Feb. 26, 2013), *adopted*, 2013 WL 1189215 (N.D. Tex. March 22, 2013) (Fish, S.J.), borrowers sued lenders claiming to be a third-party beneficiary of an agreement between the lender and Fannie Mae, Freddie Mac, or others under the "HAMP" program.  The borrowers alleged that by entering the agreement, the lender agreed to comply with requirements and guidelines in the program that provided mortgage borrowers loan modifications in exchange for federal incentives.  *Cade*, 2011 WL 2470733, *2; *Holloway*, 2013 WL 1187156, *13.  The borrowers claimed the lenders breached the agreements by not following the guidelines.  The courts acknowledged that the borrowers were the intended beneficiaries of the program but that did not make them third-party beneficiaries of the agreements.  *Id*.  The courts noted there was no private right of action.  *Id*.  In *Holloway*, the court concluded the plaintiff had failed to meet his "difficult burden" to establish rights as a third-party beneficiary.  *Holloway*, 2013 WL 1187156, *14.  In *Cade*, the court held that there was no right to enforce compliance within the four corners of the agreement and the presumption against conferring third-party rights was not effectively rebutted.  *Cade*, 2011 WL 2470733, *4.  The same analysis applies here.  Nothing within the leases grants Delta the right to enforce compliance.

Furthermore, no third-party beneficiary status could currently be conferred on Delta.  Delta claims that under the leases' terms and the other documents, a "new entrant" may be entitled to accommodation.  (ECF No. 133 at 11 [¶ 34]).  Delta asserts it is a new entrant by creating a definition that includes Delta.  (*Id*. at 9, 31 [¶¶ 25, 103]).  The definition does not appear in any of the controlling documents and the City has not located any other source for the definition.

Southwest argues that DOT has defined a "new entrant" airline as "an independent airline that has started jet service within the last ten years and pursues a competitive strategy of charging low fares." (ECF No. 76-1 at 19 (citing 63 Fed. Reg. 17,919, 17920 n.1 (April 10, 1998)). Southwest further argues that federal law defines a "new entrant air carrier" as "an air carrier that has been providing air transportation according to a published schedule for less than 5 years . . ." (*Id*. citing 49 U.S.C. 41762(10)).   Delta does fit within any of those definitions or any other reasonable definition.   Because Delta has been and is currently operating at Love Field since 2009, it is neither new to Love Field nor an entrant and therefore is not entitled to any possible relief of any accommodation provision under the leases as a third-party beneficiary.

### D.  There has been no possible breach.

Delta concedes it has been able to continue flight operations at Love Field since October 2014 and will continue to be able to do until at least September 30, 2015 or until the Court issues its ruling.  (*See* ECF 66 at 4 [Response to ¶6]).  It has been voluntarily accommodated and its accommodation will continue until the Court makes its decision.  To the extent Delta seeks to assert violations of grant assurances, competition plans, or WARA, there is no private cause of action for their enforcement.

### E.  There have been no damages.

Delta has been able to continue its five flights without interruption through the voluntary accommodation agreements.   (*See* ECF 66 at 4 [Response to ¶6]).  Delta has not suffered any damages.  Further, Delta's claims of damages are so vague as to fail to state a claim.  It alleges it has and will continue to suffer significant and irreparable injury.  (ECF No. 133 at 34 [¶ 117]). In its prayer, it claims it suffered "actual damages in excess of $75,000." (*Id*. at 35 [¶h]).

### F.  Delta has not stated a claim for specific performance.

If an adequate remedy at law exists, specific performance is foreclosed.  *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 423 (Tex. 2011).  Delta only makes a conclusory claim there is no adequate remedy at law. (ECF No. 133 at 34 [¶ 118], 35 [¶f]).  Yet, it asserts a damage claim for undetermined amounts in excess of $75,000.  (*Id*. at 34 [¶117], 35 [¶h]).  Delta has failed to state a claim for specific performance relief because it has an adequate remedy at law by seeking damages.  Furthermore, a claim for damages and specific performance violates the one-satisfaction rule.  *City of McAllen v. Casso*, No. 13–11–00749–CV, 2013 WL 1281992, *15 (Tex. App.—Corpus Christi March 28, 2013, no pet.)(mem. op.).

### G.  Delta's pleadings admit no claim is stated regarding any other accommodation request.

The amended breach of contract counterclaim now includes Delta's request that an additional eight flights be accommodated.  For all the reasons stated above, no claim for a breach of a contract is stated.  In addition, there are no allegations of promises or performance related to that request.  Finally, Delta seeks to ignore its own argument as how accommodation requests should be evaluated.  As to the first request, it claims a "snapshot date" should be used to determine the availability of space.  Under its theory, availability is to be evaluated at the time the request is made and up to six months after that date.  (ECF No. 133 at 19-20 [¶¶ 58-59]).  As to the request for eight additional flights, Delta urges that the request be evaluated as of the date of the request and ignore the six months.  (*Id*. at 22, 25 [¶¶ 64, 75]).  Delta's amended counterclaim concedes that Southwest announced and will implement its expanded flight operations within the six months of the request and no available space will remain.  (*Id*. at 22 [¶ 64]).  Delta does not allege that there was or is space available for these flights within the

snapshot period.  Under its own theory, Delta is not entitled to accommodation for the additional eight flights.

## VI.   DELTA HAS FAILED TO STATE A CLAIM FOR ATTORNEY FEES

Delta claims attorney fees pursuant to Chapter 38 of the Texas Civil Practices and Remedies Code.  (ECF No. 133 at 35 (¶ i), 36).   Apart from Delta not alleging a breach of contract claim and therefore not being entitled to any recovery under Chapter 38, Chapter 38 is not applicable against municipalities.  *Millgard v. McKee/Mays*, 49 F.3d 1070, 1073 (5th Cir. 1995) (relying *City of Terrell v. McFarland*, 766 S.W.2d 809, 813 (Tex. App.—Dallas 1988, writ denied)); *Blake Box v. Dallas Mexican Consulate Gen.*, No. 3:08-CV-1010-O, 2014 WL 3952932, *3 (N.D. Tex. Aug. 8, 2014).  *Also see City of Corinth v. NuRock Dev., Inc.*, 293 S.W.3d 360, 370 (Tex. App.—Fort Worth 2009, no pet.); *City of McAllen v Casso*, No. 13-11-00749-CV, 2013 WL 1281992, *13 (Tex. App.—Corpus Christi 2013, pet. denied)(mem. op.). Delta has failed to state a claim for attorney fess against the City and its request for attorney fees should be dismissed with prejudice.

In addition, Section 14.32 of the leases states that the agreement is subject to the notice of claim requirements in Section 2-86 of the Dallas City Code.  (ECF No. 24 at 233).  Delta alleges compliance with Section 2-86 (ECF No. 133 at 34 [119]).  Section 2-86 states a person making a claim is not entitled to recover attorney fees.  (ECF No. 24 at 264).  Delta is not entitled to attorney fees.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, the City requests that Delta Air Line Inc.'s counterclaims against the City be dismissed with prejudice for the failure to state a claim and lack of jurisdiction and grant the City such other relief as the Court finds just.

Respectfully submitted,

OFFICE OF THE CITY ATTORNEY
CITY OF DALLAS, TEXAS

WARREN M.S. ERNST
CITY ATTORNEY

By     s/ Peter B. Haskel
    CHARLES ESTEE
    Senior Assistant City Attorney
    State Bar of Texas No. 06673600
    charles.estee@dallascityhall.com
    PETER B. HASKEL
    Executive Assistant City Attorney
    peter.haskel@dallascityhall.com
    State Bar of Texas No. 09198900
    7BN Dallas City Hall
    1500 Marilla Street
    Dallas, Texas 75201
    Telephone – 214/670-3519
    Telecopier – 214/670-0622
ATTORNEYS FOR PLAINTIFF, CITY OF
DALLAS

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2015, I electronically filed the foregoing document

with the Clerk of Court for the United States District Court for the Northern District of Texas

using the electronic case filing system of the Court.  Service on all attorneys of record who are

Filing Users will be automatically accomplished through Notice of Electronic Filing.


    s/ Peter B. Haskel
      PETER B. HASKEL