UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CITY OF DALLAS,<br><br>*Plaintiff*,<br><br>v.<br><br>DELTA AIR LINES, INC., SOUTHWEST AIRLINES CO., VIRGIN AMERICA INC., AMERICAN AIRLINES, INC., UNITED AIRLINES, INC., SEAPORT AIRLINES, INC., UNITED STATES DEPARTMENT OF TRANSPORTATION, AND THE FEDERAL AVIATION ADMINISTRATION<br><br>*Defendants*. | §§§§§§§§§§§§§§§§§ CIVIL ACTION NO. 3:15-CV-02069-K |

## SOUTHWEST'S BENCH BRIEF ON THE STATUS QUO

Defendant Southwest Airlines Co. ("Southwest") hereby files this Bench Brief in support of its motion for preliminary injunction against Delta.

### I. ARGUMENT AND CITATION OF AUTHORITY

**A. Permitting Delta to squat indefinitely on Southwest's gates is not the "status quo."**

In its preliminary injunction briefing, Delta emphasizes the importance of the Court's duty to maintain the "status quo" pending resolution of this lawsuit. Yet Delta insists that the status quo is a unilateral extension of its temporary license to operate five flights on a Southwest gate rather than the expiration of Delta's license on its own terms. Contrary to Delta's assertion, however, it is Delta's, not Southwest's, theory of the status quo that is "novel and wholly untenable" and "absurd." (Delta's Brief in Support 3, 36 (ECF. No. 23 at 42).)

Although Delta prefers a definition of "status quo" pulled from a dictionary, (*id.* at 3), the federal courts have a well-settled definition at odds with Delta's: "the last ***uncontested*** status

which preceded the pending controversy." *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1194 (5th Cir. 1975) (emphasis added) (cited in *Texas Midstream Gas Services, L.L.C. v. City of Grand Prairie*, CIV.A.3:08CV1724-D, 2008 WL 5000038, at *20 (N.D. Tex. Nov. 25, 2008), *aff'd sub nom. Texas Midstream Gas Services, LLC v. City of Grand Prairie*, 608 F.3d 200 (5th Cir. 2010).[1]

Importantly, the status quo to be preserved is **_not_**, as Delta contends, "the situation existing at the moment the law suit is filed, but the last peaceable uncontested status existing between the parties **_before the dispute developed_**." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir. 2004) (en banc) (McConnell, J., concurring) (emphasis added), *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006); *see also Opticians Ass'n of Am.*, 920 F.2d at 197 (noting that preliminary injunction there would restore state of affairs that existed "before this controversy began," not freeze the state of affairs at the time of filing). Indeed, "it is sometimes necessary to require a party who has recently disturbed the status quo to reverse its actions," and "[s]uch an injunction restores, rather than disturbs, the status quo ante." *O Centro Espirita*, 389 F.3d at 1013.

Here, the last uncontested status existed just before Delta raised its accommodation-related grievances to the City in an attempt to force an accommodation by the City. *See United Steelworkers*, 836 F.2d 6 at 10 (preserving the "pre-grievance" status after a union protested the company's transfer of its obligation to pay insurance premiums for retired workers to another

---

[1] Other federal circuits define "status quo" similarly. *See, e.g.*, *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990) (defining status quo as "the last, peaceable, noncontested status of the parties) (cited in *Wenner v. Texas Lottery Com'n*, 123 F.3d 321 (5th Cir. 1997)); *United Steelworkers of Am., AFL-CIO v. Textron, Inc.*, 836 F.2d 6, 10 (1st Cir. 1987) (defining the status quo as the "last uncontested status which preceded the pending controversy") (citing *Westinghouse Electric Corp. v. Free Sewing Machine Co.,* 256 F.2d 806, 808 (7th Cir.1958)).

party). That uncontested status has Delta's sublease with American expiring and Delta consolidating its operations at DFW. Delta cannot seriously dispute that this was the last uncontested state of affairs.

Even assuming Delta's temporary accommodations qualify as uncontested, the last uncontested status would be Delta's last temporary accommodation set to expire after the hearing. Thus, by squatting on Southwest's gate after its license expires, Delta intends to disturb the status quo and commit a trespass. Delta does not and cannot dispute that Southwest has a lease for 16 gates and a sublease with United for 2 more gates. Nor can Delta dispute that, until temporarily extended at the request of the Court, Delta's gate use license was set to expire.

The only way to interpret the status quo here as continuing an accommodation of Delta past the expiration of its temporary license is to assume that a permanent, forced accommodation of Delta on Southwest's gates is somehow uncontested. The reality is plainly the opposite. Southwest has vigorously contested a permanent accommodation (as well as even a short-term continuation beyond the increase in Southwest's own August 2015 schedule).[2] In arguing that its disputed accommodation is the status quo, Delta turns the concept on its head.

Delta's current presence on the gates is of no consequence. The Fifth Circuit has expressly approved finding the status quo to entail the return of possession to the party with the uncontested possessory right, ***even if the property is currently in the hands of a different party***. *See Yeargin Const. Co., Inc. v. Parsons & Whittemore Alabama Mach. & Services Corp.*, 609 F.2d 829, 831 (5th Cir. 1980) (describing the district court's order returning "disputed records to the party which had possession of them at the outset of the controversy" as preserving the status

---

[2] Further, neither the City nor the DOT has ever mandated an accommodation of Delta. Delta thus has no basis for arguing that it had some uncontested, preexisting right to possession of the gates leased or subleased by Southwest.

quo). Here, upon the expiration of Delta's license, the only uncontested right of possession to the half of a gate Delta is using at Love Field lies with Southwest. Any current or continuing presence by Delta on the gate past the expiration of the license does not make that the status quo, as any right to do so is unmistakably disputed.

Finally, to the extent Delta relies on the erroneous presumption that it has a legal right to continued accommodation, Delta has confused its view of " 'what should be' with 'what is.' " *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1100 (10th Cir. 1991), *overruled on other grounds by O Centro Espirita*, 389 F.3d 973. Assuming Delta could "eventually succeed in convincing the district court, on the merits, to order" an accommodation, "a final decision so holding would unquestionably alter the status quo." *Id.* Whether Delta has an existing *legal* right to permanent accommodation is irrelevant, "the *reality* of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights" is that Delta has an expiring license to use the gates. *Id.*(emphasis in original); *see also Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001) (concluding that even if the defendant "had the legal right under the contract" to do something, "the reality" was different). And Southwest, in contrast, has a lease and sublease providing it with an undisputed preferential right to fully utilize its gates. (*See* Delta Brief in Support 32 (noting that "Southwest will enjoy the preferential gate-use rights created by the Lease Agreement").)

In sum, Delta has wrongly conflated "a photographic replication of the circumstances existing at the moment suit was filed" with the status quo. *Massachusetts Mut. v. Associated Dry Goods,* 786 F.Supp. 1403, 1427 (N.D.Ind.1992). The last uncontested status does not leave Delta with an indefinite right to accommodation. Delta's filing of continuously morphing counter- and

crossclaims might ultimately provide Delta with a legal right to accommodation, but those claims do not alter the existing and uncontested reality that Delta's license expires after the hearing and with it, any present right to fly out of Love Field.

> **B. Alternatively, even if extending Delta's temporary license was the last uncontested status in the case, the Court may disregard this status because Delta's trespass has caused and will continue to cause Southwest irreparable harm.**

The Fifth Circuit has stated that preservation of the status quo is only a means to an end and rejected the idea that there exists "any particular magic in the phrase 'status quo.' " *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). Instead, [t]he purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Id.* "If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." *Id.*

Here, because Southwest's claim is one for trespass, the element of irreparable harm is satisfied without any additional showing.[3] *See Beathard Joint Venture v. W. Hous. Airport Corp.*, 72 S.W.3d 426, 432 (Tex. App.—Texarkana 2002, no pet.) (holding that an airport licensee committed a trespass by continuing to use the licensed premises after its license expired and that the element of irreparable injury had been satisfied without any additional showing). Moreover, as will be shown at the preliminary injunction hearing, Southwest has suffered from irreparable brand damage at Love Field due to the operational challenges of sharing a gate with Delta and

---

[3] The same cannot be said for Delta.

operating such a high number of flights. That damage is expected to increase as both winter weather and the busy holiday flying season approach.

Accordingly, whether Delta's expiring license to operate constitutes the status quo or not, a preliminary injunction in Southwest's favor is necessary to prevent irreparable harm.

DATED: September 27, 2015

Respectfully submitted

*/s/ Britta Erin Stanton*

John T. Cox, III (tcox@lynnllp.com)
Texas Bar No. 24003722
Kent D. Krabill (kkrabill@lynnllp.com)
Texas Bar No. 24060115
Britta Erin Stanton (bstanton@lynnllp.com)
Texas Bar No. 24036976
Stephen M. Cole (scole@lynnllp.com)
Texas Bar No. 24078358
Christopher Patton (cpatton@lynnllp.com)
Texas Bar No. 24083634
Russell Herman (rherman@lynnllp.com)
Texas Bar No. 24083169
**LYNN TILLOTSON PINKER & COX, LLP**
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
Telephone: 214.981.3830
Facsimile: 214.981.3839

**ATTORNEYS FOR DEFENDANT SOUTHWEST AIRLINES CO.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 27, 2015, the foregoing document was served on all counsel of record through the Court's ECF system.

*/s/ Britta Erin Stanton*
Britta Erin Stanton

4814-2202-3977, v. 1