| **From:** | Bob Kneisley <Bob.Kneisley@wnco.com> |
| **Sent:** | Saturday, October 25, 2014 8:26 AM |
| **To:** | Moss, Jonathan (OST) <jonathan.moss@dot.gov> |
| **Subject:** | RE: email address |
| **Attach:** | DAL Asset Transfer Agreement (Fully Executed 10.06.14).pdf |

Jon,

Per your request the DAL Asset Transfer Agreement between WN and UA is attached.  The sublease of gates is an attachment to the ATA.

Please let me know if you need anything else.  All the best,

Bob

**Robert W. Kneisley**
**Associate General Counsel**
**Southwest Airlines Co.**
**919 18th Street, N.W., Suite 600**
**Washington DC 20006**
**(202) 263-6284**

**bob.kneisley@wnco.com**

---

**From:** jonathan.moss@dot.gov [jonathan.moss@dot.gov]
**Sent:** Friday, October 24, 2014 2:33 PM
**To:** Bob Kneisley
**Subject:** email address

Bob – thanks for the quick call back.  My email address is jonathan.moss@dot.gov.  Monday is fine.

DOT00000664

EXHIBIT

470

exhibitsticker.com

Looks like I'm going to miss you when you come in next week to meet with Katie as I will out of the office.  Call with any questions, and have a great weekend.


Jon


Jonathan Moss

Deputy Assistant General Counsel for Operations

U.S. DOT

202-366-3633


******* **CONFIDENTIALITY NOTICE** *******

**This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete this message from your system. Thank you.**

Execution Version

## ASSET TRANSFER AGREEMENT

This Asset Transfer Agreement (this "*Agreement*") is entered into as of October 6, 2014, between **SOUTHWEST AIRLINES CO.**, a Texas corporation ("*Southwest*") and **UNITED AIRLINES, INC.**, a Delaware corporation ("*United*", and together with Southwest, the "*Parties*" and each a "*Party*").

## RECITALS

A.      WHEREAS, on March 31, 2013, United Air Lines, Inc. ("*Old United*"), a wholly-owned subsidiary of United Continental Holdings, Inc. ("*UAL*"), merged with and into Continental Airlines, Inc. ("*Continental*"), another wholly-owned subsidiary of UAL, to form one legal entity (the "*Airlines Merger*"), with Continental continuing as the surviving corporation of the Airlines Merger, the successor-in-interest, by merger, to Old United, and as a wholly-owned subsidiary of UAL. Upon closing of the Airlines Merger on March 31, 2013, Continental's name was changed to United Airlines, Inc.;

B.      WHEREAS, pursuant to that certain Amended and Restated Lease of Terminal Building Premises, effective as of October 1, 2008, as amended by certain supplements thereto (collectively, the "*United DAL Lease*"), United leases from the City of Dallas ("*Dallas*") all of the Leased Premises, as the term is defined in the United DAL Lease (herein, the "*United DAL Premises*") at Dallas Love Field Airport in the City of Dallas, Texas ("*DAL*");

C.      WHEREAS, Southwest desires to sublease from United and United desires to sublease to Southwest all of the United DAL Premises, together with associated holdrooms and other space, as more particularly described and delineated on Exhibits attached to the DAL Sublease, as defined below (such premises, the "*DAL Subleased Premises*"), on the terms and subject to the conditions set forth herein and in the DAL Sublease; and

D.      WHEREAS, the Parties acknowledge that the DAL Subleased Premises shall not include, and United is not conveying to Southwest hereunder or under the DAL Sublease, any passenger loading bridges located at the DAL Subleased Premises.

NOW, THEREFORE, in consideration of the mutual representations, warranties, covenants and agreements contained herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the terms and conditions hereof, the Parties, intending to be legally bound, hereby agree as follows:

1.      **DEFINITIONS**

1.01      "*Affiliate*" means, with respect to any person or entity, any other person or entity directly or indirectly controlling, controlled by, or under common control with such person or entity, and the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person or entity, whether through ownership of voting securities, by contract or otherwise.

1

1.02   "*Airlines Merger*" is defined in Recital A.

1.03   "*Cash Consideration*" is defined in Section 2.02.

1.04   "*Closing Date*" means (a) the first business day falling five (5) days after the conditions set forth in Sections 4.01 and 4.02 have either been waived or satisfied, or (b) such other date as may be agreed to in writing by the Parties.

1.05   "*Continental*" is defined in Recital A.

1.06   "*DAL*" is defined in Recital B.

1.07   "*Dallas*" is defined in Recital B.

1.08   "*DAL Sublease*" is defined in Section 2.01.

1.09   "*DAL Subleased Premises*" is defined in Recital C.

1.10   "*Governmental Agency*" means each national, federal, state, county, local or municipal governmental or regulatory agency (including Dallas), department, commission, authority, board, bureau, body, board of arbitration, court, tribunal, instrumentality or minister, ministry, official or public or statutory person (whether autonomous or not) having or asserting jurisdiction over this Agreement or the parties or subject matter hereto.

1.11   "*HSR Act*" means the Hart-Scott-Rodino Antitrust Improvements Act of 1976, together with all rules and regulations promulgated thereunder.

1.12   "*Indemnified Party*" is defined in Section 10.03.

1.13   "*Indemnifying Party*" is defined in Section 10.03.

1.14   "*LGA*" means LaGuardia Airport located in the Borough of Queens, New York City, New York.

1.15   "*LGA Order*" means the FAA Order on Operating Limitations at New York LaGuardia Airport, 71 Fed. Reg. 77854 (Dec. 27, 2006), as most recently amended and extended by the FAA Notice of Extension to Order, 79 Fed. Reg. 17222 (Mar. 27, 2014) (extending the order until the final Rule on Slot Management and Transparency for LaGuardia Airport, John F. Kennedy International Airport, and Newark Liberty International Airport becomes effective but not later than October 29, 2016), or any successor or replacement provision, regulation, order or FAA action in effect to limit operations at LGA.

1.16   "*Losses*" is defined in Section 10.01.

1.17   "*Old United*" is defined in Recital A.

1.18   "*Outside Date*" is defined in Section 9.01(b)

2

1.19   "*Regulatory Conditions*" means the conditions to Closing set forth in <u>Sections</u> <u>4.01(c)</u>, <u>4.01(e)</u>, <u>4.02(c)</u> and <u>4.02(e)</u>.

1.20   "*Replacement LGA Order*" means another statute, rule, regulation, notice, order or other FAA action limiting operations adopted by the FAA or other applicable Governmental Agency at LGA that would replace or supersede the LGA Order.

1.21   "*Slot*" means "operating authorization" for one landing or takeoff at LGA during a specific time period, subject to the LGA Order or the Replacement LGA Order, as applicable; and the term "*Slots*" shall be construed accordingly.

1.22   "*Termination Fee*" is defined in <u>Section 9.02(b)</u>.

1.23   "*Third Party Claim*" is defined in <u>Section 10.03</u>.

1.24   "*Transaction Documents*" means this Agreement and the DAL Sublease.

1.25   "*Transaction Liability*" means any and all liabilities, commitments and obligations of any nature whatsoever, to the extent forming the basis for a Third Party Claim, whether asserted or unasserted, known or unknown, absolute or contingent, accrued or unaccrued, matured or unmatured or otherwise, arising out of, or in any way (directly or indirectly) related to the execution and delivery of this Agreement (including any announcement or other communication in respect thereof), the performance of the terms of this Agreement or the consummation of the transactions contemplated hereby (including the DAL Sublease and the transactions contemplated thereby), including any claim seeking to challenge, enjoin, unwind, delay or otherwise frustrate all or any part of this Agreement, the DAL Sublease or the transactions contemplated hereby or thereby, but not including (a) any liabilities, commitments or obligations for any taxes (including income taxes or any state or local taxes) of United, (b) any costs or expenses internal to United (it being agreed and understood that, for the avoidance of doubt, outside attorneys' fees within the definition of "*Losses*" herein shall be included in the definition of "*Transaction Liability*" hereunder, and shall not be deemed "costs or expenses internal to United"), (c) any liabilities, obligations or commitments of any nature whatsoever arising from or related to the preparation, filing or response to subsequent requests under the HSR Act (except as set forth in the last sentence of <u>Section 11.12</u> hereof), (d) any Third Party Claim related to a violation by United of their disclosure obligations under applicable securities laws relating to this Agreement, or (e) any Third Party Claim asserting a breach of fiduciary duty by United, its officers or directors, relating to this Agreement.

1.26   "*UAL*" is defined in Recital A.

1.27   "*United DAL Lease*" is defined in Recital B.

1.28   "*United DAL Premises*" is defined in Recital B.

3

2. **DAL SUBLEASE AND CASH CONSIDERATION**

2.01    Sublease of the DAL Subleased Premises.  On the Closing Date, United and Southwest shall enter into an agreement whereby Southwest shall sublease from United the DAL Subleased Premises.  The sublease of the DAL Subleased Premises shall be effectuated pursuant to an agreement, substantially in the form attached hereto as **Exhibit A** (the "*DAL Sublease*").

2.02    Cash Consideration from Southwest to United.  On the Closing Date, Southwest shall pay to United the total sum of One Hundred Twenty Million and 00/100 Dollars  ($120,000,000.00) in consideration for the transactions contemplated hereby (the "*Cash Consideration*").  The Cash Consideration shall be paid to United via wire transfer of immediately available funds to the following account:

> Bank: JPMorgan Chase
> ABA/routing #: 021-000-021
> SWIFT Address: CHASUS33
> Account Name: United Airlines Special Account
> Account Number: 51-67795

3. **DELIVERIES ON THE CLOSING DATE**

3.01    Southwest's Deliveries to United.  On the Closing Date, and subject to the satisfaction or waiver of the conditions set forth in Section 4 hereof, unless such deliveries have previously been made, Southwest shall make the following deliveries to United (or to another party if and as indicated below):

(a)    The DAL Sublease duly authorized and executed by Southwest, together with the evidence that Southwest has received the consent and approval of Dallas with respect to the DAL Sublease as contemplated by Section 4.02(c);

(b)    The Cash Consideration; and

(c)    A certificate of Southwest, dated as of the Closing Date, signed by an authorized officer of Southwest, certifying that the conditions specified in Section 4.02 (in so far as they pertain to Southwest) have been fulfilled.

3.02    United's Deliveries to Southwest.  On the Closing Date, and subject to the satisfaction or waiver of the conditions set forth in Section 4 hereof, unless such deliveries have previously been made, United shall make the following deliveries to Southwest:

(a)    The DAL Sublease duly authorized and executed by United, together with the evidence that United has received the consent and approval of Dallas with respect to the DAL Sublease as contemplated by Section 4.01(c);

(b)    If United has received the Cash Consideration, United's acknowledgment, via email, of its receipt of the Cash Consideration; and

4

(c)     A certificate of United, dated as of the Closing Date, signed by an authorized officer of United, certifying that the conditions specified in <u>Section 4.01</u> (in so far as they pertain to United) have been fulfilled.

**4.     CONDITIONS PRECEDENT TO THE PARTIES' OBLIGATIONS**

4.01     <u>Conditions to Southwest's Obligations</u>.  Southwest's obligation to consummate the transactions contemplated by this Agreement shall be subject to the satisfaction, or waiver by Southwest, on or before the Closing Date, of each of the following conditions:

(a)     All of the representations and warranties of United contained herein shall be true and correct in all material respects on the Closing Date as though such representations and warranties had been made on and as of the Closing Date (except that any such representation and warranty that addresses matters as of a particular date shall have been true and correct in all material respects as of such date) and all covenants and obligations to be performed by United prior to the Closing Date shall have been performed in all material respects.

(b)     United shall have executed and delivered to Southwest the DAL Sublease.

(c)     Southwest shall have received evidence that United has received the consent and approval of Dallas with respect to the DAL Sublease.

(d)     Southwest shall have received a certificate of United, dated as of the Closing Date, signed by an authorized officer of United, certifying that the conditions specified in <u>Section 4.01</u> (in so far as they pertain to United) have been fulfilled.

(e)     Any applicable waiting period under the HSR Act relating to the transactions contemplated by this Agreement shall have expired or been terminated.

(f)     No Governmental Agency of competent jurisdiction shall have issued, promulgated, enforced or entered any order or judgment (whether temporary, preliminary or permanent) that is in effect as of the Closing Date and that has or would have the effect of making the transactions contemplated by this Agreement illegal or otherwise prohibiting the consummation thereof.  No action, suit or other proceedings shall be pending before any court, tribunal or other Governmental Agency seeking to restrain or prohibit the consummation of all or any part of the transactions specifically contemplated by this Agreement.

4.02     <u>Conditions to United's Obligations</u>.  United's obligation to consummate the transactions contemplated by this Agreement shall be subject to the satisfaction, or waiver by United, on or before the Closing Date, of each of the following conditions:

(a)     All representations and warranties of Southwest contained herein shall be true and correct in all material respects on the Closing Date as though such representations and warranties had been made on and as of the Closing Date (except that any such representation and warranty that addresses matters as of a particular date shall have been true and correct in all material respects as of such date) and all covenants and

5

obligations to be performed by Southwest prior to the Closing Date shall have been performed in all material respects.

      (b)    Southwest shall have executed and delivered to United the DAL Sublease.

      (c)    United shall have received evidence that Southwest has received the consent and approval of Dallas with respect to the DAL Sublease.

      (d)    United shall have received a certificate of Southwest, dated as of the Closing Date, signed by an authorized officer of Southwest, certifying that the conditions specified in Section 4.02 (in so far as they pertain to Southwest) have been fulfilled.

      (e)    Any applicable waiting period under the HSR Act relating to the transactions contemplated by this Agreement shall have expired or been terminated.

      (f)    No Governmental Agency of competent jurisdiction shall have issued, promulgated, enforced or entered any order or judgment (whether temporary, preliminary or permanent) that is in effect as of the Closing Date and that has or would have the effect of making all or any part of the transactions contemplated by this Agreement illegal or otherwise prohibiting their consummation.  No action, suit or other proceedings shall be pending before any court, tribunal or other Governmental Agency seeking to restrain or prohibit all or any part of the consummation of the transactions specifically contemplated by this Agreement.

## 5.    SOUTHWEST'S REPRESENTATIONS AND WARRANTIES

Southwest makes the following representations and warranties to United:

      5.01    Organization, Standing and Power.  Southwest is a corporation duly organized, validly existing and in good standing under the laws of Texas.  Southwest has all requisite corporate power and authority to execute, deliver and perform this Agreement and all instruments and documents relating hereto.

      5.02    Validity of Agreement.  This Agreement has been duly executed and delivered by Southwest.  This Agreement constitutes the valid and binding obligation of Southwest enforceable in accordance with its terms.

      5.03    No Conflicts or Violations.  The execution and delivery of this Agreement, the consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Southwest do not and will not: (i) conflict with or result in a breach of the articles or certificate of incorporation or bylaws of Southwest; (ii) subject to obtaining approvals required under Section 5.04 hereof, violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority; or (iii) (with or without the giving of notice or the lapse of time or both) subject to obtaining approvals required under Section 5.04 hereof, violate, conflict with, result in a breach of, constitute a default, or accelerate the performance required by, any of the terms of any agreement, lease, mortgage, indenture or

6

other instrument or writing of any nature to which Southwest is a party or by which Southwest or its assets or properties may be bound.

5.04    Required Approvals.  Other than the consent of Dallas with respect to the sublease of the DAL Subleased Premises from United and the approvals or expiration of applicable waiting period contemplated by Sections 4.01(e) and 4.02(e), Southwest has obtained all approvals necessary to consummate the transactions contemplated by and in accordance with the terms and conditions of this Agreement.

## 6.    UNITED'S REPRESENTATIONS AND WARRANTIES

United makes the following representations and warranties to Southwest:

6.01    Organization, Standing and Power.    United is a corporation duly organized, validly existing and in good standing under the laws of Delaware.  United has all requisite corporate power and authority to execute, deliver and perform this Agreement and all instruments and documents relating hereto.

6.02    Validity of Agreement.    This Agreement has been duly executed and delivered by United.  This Agreement constitutes the valid and binding obligation of United enforceable in accordance with its terms.

6.03    No Conflicts or Violations.    The execution and delivery of this Agreement, the consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by United do not and will not: (i) conflict with or result in a breach of the articles or certificate of incorporation or bylaws of United; (ii) subject to obtaining approvals required under Section 6.04 hereof, violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority; or (iii) (with or without the giving of notice or the lapse of time or both) subject to obtaining approvals required under Section 6.04 hereof, violate, conflict with, result in a breach of, constitute a default, or accelerate the performance required by, any of the terms of any agreement, lease, mortgage, indenture or other instrument or writing of any nature to which United is a party or by which United or its assets or properties may be bound.

6.04    Required Approvals.  Other than the consent of Dallas with respect to the sublease of the DAL Subleased Premises to Southwest and the approvals or expiration of applicable waiting period contemplated by Sections 4.01(e) and 4.02(e), United has obtained, or will have obtained as of the Closing Date, all approvals necessary to consummate the transactions contemplated by and in accordance with the terms and conditions of this Agreement.

6.05    No Lien on the DAL Subleased Premises.  There is no lien, mortgage, pledge, claim or other similar encumbrance on any of the DAL Subleased Premises.

7

**7.** **CONDUCT AND ACTIONS PRIOR TO THE CLOSING DATE**

7.01    Access to Records and Properties.  Until the Closing Date, United shall, upon reasonable advance notice, afford to Southwest's officers, independent public accountants, counsel, lenders, consultants and other representatives, reasonable access during normal business hours reasonably requested by United relating to the DAL Subleased Premises for any reasonable inspections thereof.  Nothing in this Section 7.01 is intended to give rise to any contingency to any Party's obligations to proceed with the transactions contemplated herein.  Until the applicable effective date of the DAL Sublease, United agrees to continue to maintain and repair the DAL Subleased Premises in the same manner in which United was doing so prior to the effective date of the DAL Sublease.

7.02    Consents, Approvals, Waivers and Filings.  In connection with the consummation of the transactions contemplated hereby, each Party shall cooperate with the other and use its commercially reasonable efforts to take, or cause to be taken, or do, or cause to be done, all things necessary, proper or advisable to satisfy, or cause to be satisfied, all conditions to the obligations of such Party under this Agreement over which it has control or influence, and to cause the transactions contemplated hereby to be consummated as promptly as practicable in accordance with the terms hereof, including, without limitation, using commercially reasonable efforts to take, or cause to be taken, and to assist and cooperate with the other Party in obtaining all necessary actions, waivers, consents, confirmations and approvals from any applicable Governmental Agency, and other third parties, including Dallas.  In furtherance and not in limitation of the foregoing, each Party shall make an appropriate filing of a Notification and Report Form pursuant to the HSR Act with respect to the transactions contemplated by this Agreement within ten (10) business days of the date of this Agreement, and each of the Parties agrees to supply as promptly as reasonably practicable any additional information and documentary material that may be requested pursuant to the HSR Act, and to use their respective commercially reasonable efforts to take or cause to be taken all other actions necessary, proper or advisable consistent with this Section 7.02 to cause the expiration or termination of the applicable waiting periods, or receipt of required authorizations, as applicable, under the HSR Act as soon as practicable.  Without limiting the foregoing, the parties shall request, and shall use commercially reasonable efforts to obtain, early termination of the waiting period under the HSR Act.

**8.** **CONFIDENTIALITY.**

8.01    Each Party shall treat as confidential all information obtained as a result of entering into or performing this Agreement which relates to:

(a)    the provisions of this Agreement;

(b)    the negotiations relating to this Agreement; or

(c)    the other Parties to this Agreement and is not in the public domain.

8.02    Each Party shall:

8

(a)   not disclose any such confidential information to any person other than any of its directors or employees who needs to know such information in order to discharge his duties;

(b)   not use any such confidential information other than for the purpose of the transactions governed by this Agreement; and

(c)   ensure that any person to whom any such confidential information is disclosed by it pursuant to this Section 8 complies with the restrictions contained in this Section 8 as if such person were a party to this Agreement.

8.03   Notwithstanding the other provisions of this Section 8, each Party may disclose any such confidential information:

(a)   if and to the extent required by law or for the purpose of any judicial proceedings;

(b)   if and to the extent required by any regulatory or governmental body to which that Party is subject, wherever situated, whether or not the requirement for information has the force of law;

(c)   to its professional advisers, auditors and bankers;

(d)   if and to the extent the information is or has come into the public domain through no action or fault of any Party;

(e)   if and to the extent the other applicable Party has given prior written consent to the disclosure; or

(f)   to any Governmental Agency (including Dallas) as may be advisable (after consent by the other Party hereto, not to be unreasonably withheld, conditioned or delayed) or required in connection with the satisfaction of the Regulatory Conditions.

Any information to be disclosed pursuant to sub-sections 8.03(a) 8.03(b) or  8.03(f) above shall be disclosed only after notice to the other Party hereto.

The restrictions contained in this Section 8 shall continue to apply after the termination of this Agreement without limit in time.

## 9.   TERMINATION.

9.01   Termination.  This Agreement may be terminated at any time prior to the Closing only as follows:

(a)   by mutual written consent of United, on the one hand, and Southwest, on the other hand;

(b)   by either of United, on the one hand, or Southwest, on the other hand, if the transactions contemplated hereby have not been consummated by the first business day

9

following the date falling two hundred and seventy (270) days from the date of execution of this Agreement set forth in the first paragraph of this Agreement (the "*Outside Date*"); provided, however, that a Party shall not be entitled to terminate this Agreement pursuant to this subsection (b) if that Party's breach of this Agreement has prevented the consummation of the transactions contemplated hereby at or prior to such time.

(c)     by either United or Southwest if a Governmental Agency of competent jurisdiction shall have issued, promulgated, enforced or entered any order or judgment that has or would have the effect of making all or any part of the transactions contemplated by this Agreement illegal or otherwise prohibiting their consummation and such order or judgment has become final and non-appealable;

(d)     by Southwest providing written notice to United if there has been a breach of any of the representations, warranties or covenants by United set forth in this Agreement which would result in the conditions set forth in Section 4.01(a) to not be satisfied (but not waived) (so long as Southwest has provided United with written notice of such breach and the breach has continued without cure for a period of 20 days after the notice of such breach or the earlier occurrence of the Outside Date); or

(e)     by United providing written notice to Southwest if there has been a breach of any of the representations, warranties or covenants by Southwest set forth in this Agreement which would result in the conditions set forth in Section 4.02(a) to not be satisfied (but not waived) (so long as the United has provided Southwest with written notice of such breach and the breach has continued without cure for a period of 20 days after the notice of such breach or the earlier occurrence of the Outside Date).

9.02     Effect of Termination.

(a)     In the event of termination of this Agreement as provided in Section 9.01 hereof, this Agreement shall forthwith become void and there shall be no liability or obligation hereunder on the part of any of United or Southwest (other than pursuant to this (i) Section 9.02, (ii) Article 8, (iii) in the case of a termination pursuant to Section 9.01(d), Section 10.02(b), and (iv) Sections 11.01 – 11.06 (both inclusive), 11.08, 11.10, 11.12 – 11.18 (both inclusive), and 11.20, which shall survive any such termination); provided, however, that no party shall be relieved or released from any liabilities or damages arising out of any willful and material breach of this Agreement.

(b)     Except where this Agreement is terminated by Southwest pursuant to Section 9.01(d), following any termination of this Agreement, Southwest shall immediately pay to United a non-refundable fee of Three Million and 00/100 Dollars ($3,000,000.00 the "**Termination Fee**"). Under circumstances where the Termination Fee is due and payable under this Article 9, the Termination Fee, when paid by Southwest to United in accordance with the terms of this Article 9 (including by transfer of the LGA Slots, if applicable), shall constitute United's sole and exclusive remedy hereunder, and the Termination Fee shall serve as liquidated damages. For the avoidance of doubt, the foregoing shall be without prejudice to Section 11.12 and, until such time as the Termination Fee shall have been paid, or under circumstances where the Termination Fee is not due and payable, United shall be entitled to all other remedies available to it under this Agreement, at law or in equity, including specific performance pursuant

10

to Section 11.11 (provided that where United has elected the delivery of the LGA Slots in lieu of the cash satisfaction of the Termination Fee hereunder, for so long as Southwest continues to use all efforts to cause such delivery without delay, United's sole and exclusive remedy shall be limited to specific performance in accordance with Section 11.11 of the Southwest obligation to deliver such LGA Slots to United as satisfaction of the Termination Fee hereunder).  The Termination Fee shall be payable in cash (in immediately available funds to the account set forth in Section 2.02 hereof or another account designated in writing by United) or, at United's election by written notice to Southwest within three (3) days after such termination, to be exercised in its sole and exclusive discretion, by the delivery (for no additional consideration) to United by Southwest of any two LGA Slots to the extent acquired by Southwest from United in a transaction subsequent to the date hereof (it being agreed and understood that neither United nor Southwest shall be obligated to enter into any (or discussions related to any) such transaction, with any determinations in respect thereof to be made in each party's sole discretion, and that no inference as to any such transaction shall be drawn from the inclusion of United's election in this Section 9.02(b)).

(c)     Southwest and United agree that the agreement contained in Section 9.02(b) is an integral part of the transactions contemplated by this Agreement, that without such agreement United and Southwest would not have entered into this Agreement, and that the Termination Fee does not constitute a penalty.  It is the intention of the parties hereto that if the Termination Fee is held to be in an amount which is not permitted by applicable law, or any provision of Section 9.02(b) is in any way construed to be too broad or to any extent invalid, Section 9.02(b) shall not be construed to be null, void and of no effect, but to the extent such provision would be valid or enforceable under applicable law, a court of competent jurisdiction shall construe and interpret or reform Section 9.02(b) to provide for a covenant having the maximum enforceable amount and other provisions (not greater than those contained herein) as shall be valid and enforceable under such applicable law.

10.    **INDEMNIFICATION**

10.01    By United.   From and after the Closing, United shall indemnify and defend Southwest and its Affiliates against and agrees to hold each of them harmless from any and all damage, loss, liability and expense (including, without limitation, reasonable attorneys' fees) ("**Losses**") incurred or suffered by any of them arising out of any misrepresentation or breach of warranty or breach of covenant or agreement made or to be performed by United pursuant to this Agreement.

10.02    By Southwest.  Southwest shall indemnify and defend United and its Affiliates against and agrees to hold each of them harmless from any and all Losses incurred or suffered by United or any of its Affiliates arising out of (a) from and after the Closing, any misrepresentation or breach of warranty or breach of covenant or agreement made or to be performed by Southwest pursuant to this Agreement or (b) any Transaction Liability. Notwithstanding the foregoing: (i) in the case of termination of this Agreement pursuant to Section 9.01(d), Southwest shall have no obligation to indemnify, defend or hold harmless United and its Affiliates for any Losses arising out of any  Transaction Liability to the extent such Losses were caused in whole or in part by United's breach of any of the representations, warranties or covenants set forth in this Agreement, and such breach

11

resulted in the conditions set forth in <u>Section 4.01</u> not being satisfied; and (ii) Southwest's obligation to indemnify United under this <u>Section 10.02</u> shall not exceed $5 million.

  10.03 <u>Procedures</u>. The Party seeking indemnification under this <u>Article 10</u> (the "**Indemnified Party**") agrees to give prompt notice to the Party against whom indemnity is sought (the "**Indemnifying Party**") of the assertion of any claim, or the commencement of any suit, action or proceeding by any Governmental Agency or other third party in respect of which indemnity may be sought under such Article (a *"Third Party Claim"*); <u>provided</u> that the failure to promptly provide such notice shall not relieve the Indemnifying Party of its obligations to defend the Indemnified Party hereunder unless, and only to the extent that, the Indemnifying Party would be actually and substantially prejudiced in its ability to defend such action or proceeding or would otherwise forfeit substantial rights. The notice provided by the Indemnified Party shall (in each case, solely to the extent actually known by the Indemnified Party at the time of such notice): (i) state that a Third Party claim has been asserted or commenced against the Indemnified Party for which such Indemnified Party is entitled to indemnification pursuant to this Agreement (and the basis therefor) and (ii) enclose a copy of any papers served with respect to such Third Party Claim, and any other documents received by the Indemnified Party from such Third Party evidencing such Third Party Claim. The Indemnifying Party shall have the right to assume the defense of any such Third Party Claim at its own expense, including the employment of counsel reasonably satisfactory to the Indemnified Party, and the Indemnified Party shall provide reasonable assistance and cooperation during the defense of such Third Party Claim or settlement thereof (including providing testimony), and shall (subject to appropriate restrictions on confidentiality, and the ability to withhold information to the extent it would reasonably jeopardize attorney-client or other similar privilege) provide reasonable access to all information reasonably relevant thereto (including furnishing the Indemnifying Party with any books, records and other information reasonably requested by the Indemnifying Party and in the Indemnified Party's possession or control). The Indemnified Party shall have the right to participate in such defense and employ separate counsel of its choosing in connection therewith (provided that the reasonable fees and expenses of such separate counsel shall be considered indemnifiable "*Losses*" hereunder to the extent the Indemnified Party shall have reasonably concluded that representation of both the Indemnified Party and the Indemnifying Party by counsel selected by the Indemnifying Party would be inappropriate due to actual or potential differing interests between the Indemnified Party and the Indemnifying Party). The Indemnifying Party shall control the investigation, defense and settlement of such Third Party Claim, and have the right to compromise or settle such Third Party Claim; <u>provided</u>, <u>however</u>, that, the Indemnifying Party shall obtain the prior written consent of the Indemnified Party before entering into any compromise or settlement of such Third Party Claim, such consent not to be unreasonably withheld, conditioned or delayed, unless such compromise or settlement includes a complete and unconditional release by the Third Party asserting the Third Party Claim of all Indemnified Parties from all liabilities related to such Third Party Claim and such judgment or settlement agreement does not require the Indemnified Party to pay any money or other consideration (other than money or consideration covered by the Indemnifying Party's indemnification obligations under this <u>Article 10</u>) (it being agreed and understood that in the event the remedy sought in such Third Party Claim includes behavioral or other non-monetary relief, the Indemnifying Party shall not be permitted to compromise or settle any such Third Party Claim without the

consent of the Indemnified Party, such consent to be withheld or granted in its sole discretion). The Indemnified Party shall not file any papers, or consent to the entry of any judgment, or compromise or settle such Third Party Claim with respect to which the Indemnifying Party is obligated to indemnify the Indemnified Party under Section 10.01 or 10.02, as the case may be, without obtaining the prior written consent of the Indemnifying Party, such consent not to be unreasonably withheld, conditioned or delayed. The Indemnifying Party will not be obligated to indemnify any Indemnified Party hereunder for any compromise or settlement entered into or any judgment that was consented to without the Indemnifying Party's prior written consent. The Parties will use their reasonable efforts to minimize Losses from Third Party Claims and will act in good faith in responding to, defending against, settling or otherwise dealing with such claims.

       10.04    Survival; Rights Cumulative. The indemnification obligations set forth in this Article 10 shall survive the Closing and, in respect of the indemnification obligations set forth in Section 10.02(b), any termination of this Agreement pursuant to Section 9.01(d), indefinitely. The Parties' rights under this Article 10 shall be in addition to, and not in lieu of, any rights of the Parties under the DAL Sublease.

## 11.    **MISCELLANEOUS**

       11.01    Press Release(s). Notwithstanding anything contained herein to the contrary, the Parties shall be permitted to disseminate reasonable and customary press releases, announcements or media statements regarding the general transactions consummated pursuant to the terms of this Agreement upon the other Party's prior written consent; provided, however, such press releases, announcements or media statements shall not include any specific information regarding pricing and/or rentals contained herein. Further, the Parties agree to cooperate with each other in coordinating the timing of any initial permitted press releases by a Party announcing the general transactions contemplated pursuant to terms of this Agreement.

       11.02    Attorneys' Fees. If any Party brings an action or other proceeding to enforce or interpret this Agreement (including any action or proceeding seeking specific performance pursuant to Section 11.11 or any action or proceeding by United seeking to collect the Termination Fee or enforce its rights under Article 10), the prevailing Party in that action or proceeding shall be entitled, in addition to any other amounts recoverable in such action or proceeding, to recover from the non-prevailing Party all such reasonable fees, costs and expenses (including all court costs and reasonable attorneys' fees) suffered or incurred by the prevailing Party in the pursuit or defense of such action or proceeding.

       11.03    Notices. Any notice or communication required or permitted hereunder must be in writing and sent by (a) personal delivery, (b) expedited delivery service with proof of delivery, (c) registered or certified mail, postage prepaid, or (d) facsimile (provided that the facsimile transmission is confirmed by mail in the manner previously described), addressed as follows:

    To Southwest:

DOT00000678

Southwest Airlines Co.
2702 Love Field Drive
Attn:  HDQ-1EO
Dallas, Texas 75235
Attn: Executive Vice President
        Chief Commercial Officer
Facsimile: (214) 792-5151

With copies to:    Southwest Airlines Co.
2702 Love Field Drive
Attn:  HDQ-4PF
Dallas, Texas 75235
Attn: Vice President Airport Affairs
Facsimile: (214) 792-4224

Southwest Airlines Co.
2702 Love Field Drive
Attn:  HDQ-4GC
Dallas, Texas 75235
Attn: Vice President General Counsel
Facsimile: (214) 792-6200

To United:    United Airlines, Inc.
233 S. Wacker Dr.
Chicago, Illinois 60606
Attn: Vice President Network Planning
Facsimile: (872) 825-0028

With copies to:    United Airlines, Inc.
233 S. Wacker Dr.
Chicago, Illinois 60606
Attn: Vice President Corporate Real Estate
Facsimile: (872) 825-0300

United Airlines, Inc.
233 S. Wacker Dr.
Chicago, Illinois 60606
Attn: Associate General Counsel - Commercial Transactions,
Finance and Loyalty
Facsimile: (872) 825-0310

or to such other address or to the attention of such other person as the applicable Party hereafter designates by written notice sent in accordance herewith.  Any such notice or communication will be deemed to have been given either at the time of personal delivery or, in the case of delivery by service or mail, as of the date of delivery at the address and in the manner provided herein, or, in the case of facsimile or electronically, on receipt.

14

11.04    Entire Agreement and Conflict.  This Agreement and the documents to be executed under it contain the entire agreement between the Parties relating to the matters contained herein.  Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect.  In case of a conflict between the provisions of this Agreement on the one hand and the provisions of the DAL Sublease on the other hand, the provisions of this Agreement shall control and govern.

11.05    Modification.    This  Agreement  may  be  modified,  amended  or supplemented only by a written instrument duly executed by all of its Parties.

11.06    Severability.  If any term, provision or paragraph of this Agreement is determined to be illegal or void or of no force or effect, the balance of this Agreement shall survive.

11.07    Further Assurances.  Each Party will execute, acknowledge and deliver any further assurance, documents and instruments reasonably requested by the other Party at the requesting Party's costs, for the purpose of giving effect to the transactions contemplated herein or the intentions of the Parties with respect thereto.

11.08    Waiver.  No waiver of any provision of this Agreement shall constitute a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless contained in a writing signed by the waiving Party.

11.09    Broker Representation.  Southwest and United represent and warrant to the other that such Party has incurred no liability to any broker or agent with respect to the payment of any commission regarding the consummation of the transaction contemplated hereby.

11.10    Disclaimer of Consequential Damages. Notwithstanding anything stated or implied in this Agreement to the contrary, except in respect of any Losses arising out of Third Party Claims that are subject to indemnification pursuant to Section 10.02(b), no Party (nor such Party's parent, affiliated or subsidiary corporations, officers, directors, agents, employees or contractors), will be liable to any other Party in any action or claim for any exemplary, punitive, incidental, special, collateral, consequential, or any other indirect damages, including without limitation loss of profit, loss of good will or loss of opportunity.

11.11    Specific Performance.  The Parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached by United or Southwest, as applicable.   It is accordingly agreed that each Party, not in breach of its obligations hereunder, shall be entitled to an injunction or injunctions, without any requirement to post or provide any bond or other security in connection therewith, to prevent breaches of this Agreement by the other Party, and to enforce specifically the terms and provisions hereof against such other Party, in any court having jurisdiction, this being in addition to any other remedy to which the parties hereto are entitled at law or in equity.

15

11.12    Payment of Fees and Expenses.  Except as otherwise expressly contemplated hereunder (including the final sentence of this Section 11.12), each Party to this Agreement shall be responsible for, and shall pay, all of its own fees and expenses, including those of its counsel, incurred in the negotiation, preparation and consummation of this Agreement and the transaction it describes.  For the avoidance of doubt, Southwest shall pay all filing fees required under the HSR Act in connection with the transactions contemplated hereby.

11.13    Assignment.  The rights, benefits, duties, and obligations under this Agreement are not assignable by any Party; provided that the foregoing shall not be deemed to prevent any assignment of this Agreement to any successor to a Party hereunder by merger or other consolidation or any assignment to any purchaser of all or substantially all of a Party's assets.

11.14    Binding Effect.  This Agreement shall bind and inure to the benefit of the respective successors and permitted assigns of its Parties.

11.15    Applicable Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

11.16    Interpretation.  In this Agreement the definitions of capitalized terms defined in this Agreement are equally applicable to both the singular and plural forms of the defined terms; references to a designated "Section" refer to a Section of this Agreement, unless otherwise specifically indicated; all Section headings are for convenience only, and shall not affect the meaning or interpretation of this Agreement; "including" is used only to indicate examples, without limitation to the indicated examples and without limiting any generality which precedes it; and masculine, feminine and neuter pronouns are used interchangeably.

11.17    Construction.  This Agreement shall not be construed against either Party based on its authorship.

11.18    Counterparts.  This Agreement may be signed in counterparts and by the exchange of facsimile or PDF (via email) signature pages.

11.19    Time is of the Essence.  Time is of the essence in this Agreement, and all of its terms, covenants and conditions hereof.

11.20    Jurisdiction.  UNITED AND SOUTHWEST AGREE THAT THE COURTS OF THE STATE OF NEW YORK SHALL HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT OR ANY ANCILLARY DOCUMENT EXECUTED PURSUANT THIS AGREEMENT; EACH PARTY CONSENTS TO AND AGREES NOT TO CONTEST SUCH EXCLUSIVE JURISDICTION.

*[THE REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK]*

DOT00000681

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year first above written.

**SOUTHWEST**:

**SOUTHWEST AIRLINES CO.**

By:_____

Name: Bob Jordan

Title: Executive Vice President – Chief Commercial
      Officer


**UNITED**:

**UNITED AIRLINES, INC.**


By:_____

Name: Jim Compton

Title: Vice Chairman and Chief Revenue Officer


*[SIGNATURE PAGE TO ASSET TRANSFER AGREEMENT]*



IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year first above written.

SOUTHWEST:

SOUTHWEST AIRLINES CO.



By:

Name: Bob Jordan

Title: Executive Vice President – Chief Commercial Officer



UNITED:

UNITED AIRLINES, INC.

By:

Name: Jim Compton

Title: Vice Chairman and Chief Revenue Officer

SIGNATURE PAGE TO ASSET TRANSFER AGREEMENT

**<u>Exhibit A</u>**
**DAL Sublease**

DOT00000684

**CONSENT TO SUBLEASE**

The City of Dallas, a Texas municipal corporation ("City") hereby consents to the Agreement of Sublease, attached hereto as **Exhibit** A, by and between United Airlines, Inc., a Delaware corporation (formerly known as Continental Airlines, Inc.) ("Sublessor") and Southwest Airlines Co., a Texas corporation, ("Sublessee") concerning that certain Amended and Restated Lease of Terminal Building Premises (Airport Use and Lease Agreement), effective October 1, 2008, by and between the City, as lessor, and Sublessor, as lessee, for the use of Love Field Airport ("Lease").

The City's consent is subject to the following terms and conditions:

1. The City's consent is not to be interpreted or construed as consent to any future sublease of the Lease from Sublessor or Sublessee to any other person or entity.

2. The City's consent is not to be interpreted or construed as release of Sublessor of any of the obligations of Sublessor under the Lease.

3. The City's consent is not to be interpreted or construed as an amendment to or diminution in any manner of the City's rights and privileges pursuant to the Lease.


**CITY OF DALLAS:**                         **APPROVED AS TO FORM:**
A. C. **GONZALEZ**                          **WARREN M. S. ERNST**
                                            **CITY ATTORNEY**


_____          _____



**Exhibit:**     Agreement of Sublease

**UNITED AIRLINES, INC.**

AGREEMENT OF SUBLEASE

This Agreement of Sublease (this "Sublease"), dated as of the __ day of _____, 20__, is entered into by and between UNITED AIRLINES, INC., a Delaware corporation (formerly known as Continental Airlines, Inc.), ("United") and SOUTHWEST AIRLINES CO., a Texas corporation (the "Sublessee" or "Southwest") (and together with United, the "Parties" and each a "Party").

WITNESSETH:

WHEREAS, by Amended and Restated Lease of Terminal Building Premises effective October 1, 2008, and any amendments and/or supplements thereto as more particularly described on Exhibit 1 attached hereto and made a part hereof (the "Base Lease"), United leases from the City of Dallas ("Landlord") certain premises (the "Base Lease Premises") at Dallas Love Field (the "Airport") (to the extent that the Base Lease Premises are part of a larger structure, that structure shall be referred to herein as the "Building"); and

WHEREAS, United is willing to sublease to Sublessee and Sublessee is willing to sublease from United, the Base Lease Premises, as described herein, on the terms and conditions set forth herein; and

WHEREAS, United and Southwest are parties to that certain Gate Use License Agreement (as the same has been or may be amended from time to time, the "Gate Use Agreement") dated September 18, 2014 and, unless such Gate Use Agreement has terminated prior to the Commencement Date (as defined below), in accordance with its terms, the Parties wish to terminate the Gate Use Agreement on the Commencement Date, as defined below.

NOW, THEREFORE, United and Sublessee agree as follows:

1.    **Base Lease Premises.**   Subject to and in accordance with the terms and conditions set forth herein, United hereby subleases to Sublessee and Sublessee hereby subleases and takes from United the Base Lease Premises, which consist of the "Leased Premises," as that term is defined in the Base Lease (taking into account the LFMP, as defined in the Base Lease).

2.    **Term.**   The term ("Term") of this Sublease shall commence on _____, 20__ (the "Commencement Date") and shall continue until September 30, 2028 (the "Current Base Lease Expiration Date"), unless terminated prior to such date in accordance with this Sublease; provided, however, if United is offered to enter into another direct lease or an extension of the Base Lease at any time on or after

1

October 1, 2028 (in each case, a "New Base Lease") for the lease of the Base Lease Premises with Landlord after the Current Base Lease Expiration Date, United shall use its commercially reasonable efforts: (a) to assign the New Base Lease, subject to the last sentence of this Section 2, to Southwest; or (b) if such assignment to Southwest is not possible, to enter into such New Base Lease for the entire term offered by the City and, subject to the last sentence of this Section 2, sublease to Southwest the premises leased under such New Base Lease for the entire term of such New Base Lease and under the same terms and conditions of this Sublease (by simple term extension of this Sublease). United's assignment or sublease obligations set forth in the preceding sentence shall apply so long as (x) Southwest is not in default under the terms of this Sublease and (y) Southwest has not further subleased all or a portion of the Leased Premises or assigned this Sublease, in whole or in part, to another party, in accordance with the terms of this Sublease. Southwest shall cooperate with United in any such assignment or sublease and shall pay consent or other fees, if any, imposed by the City for or associated with such sublease or assignment required under this Section 2.   As between United and Southwest, any assignment document pursuant to Section 2(a) above of this Sublease shall not contain additional terms and conditions unless such terms and conditions are mutually agreed up on by the Parties. Upon United's entry into any New Base Lease and subsequent subleasing to Southwest under Section 2(b) of this Sublease, any and all references to "Base Lease" in this Sublease shall include the New Base Lease. Notwithstanding anything contained herein to the contrary, unless United and Southwest mutually agree otherwise, United's obligations under this Section 2 shall be limited to the assignment of the New Base Lease or a sublease, as applicable, with respect to (A) the Base Lease Premises, or, (B) if premises other than the Base Lease Premises are leased to United under the New Base Lease, then in all cases only two (2) gates and only associated and other support space equivalent to the associated and other support space currently part of the Base Lease Premises (so long as such gates and associated and other support space are leased by United under the New Base Lease).

2A.  **Termination of the Gate Use Agreement.**  Unless the Gate Use Agreement has terminated, in accordance with its terms, prior to the Commencement Date, the Gate Use Agreement shall be deemed terminated on the Commencement Date and, except as provided in the last sentence of this Section 2A, on and after the Commencement Date, neither Party shall have any rights or obligations (whether express or implied) under, pursuant to or by virtue of, and each of the Parties hereby releases and forever discharges each of the other Parties from its obligations under, the Gate Use Agreement, and all of such rights and obligations are hereby waived by the Parties. Notwithstanding the termination of the Gate Use Agreement, as provided herein, the provisions of Sections 8 and 11 of the Gate Use Agreement shall survive the termination of the Gate Use Agreement, in

2

accordance with their terms, for a period of five (5) years after the Commencement Date.

3.  **Base Lease Incorporated; Subordination.**   Except as set forth herein, this Sublease is expressly made subject to all of the terms, covenants, and conditions of the Base Lease.   Sublessee acknowledges that this Sublease shall be in all respects subject and subordinate to the Base Lease.   While this Sublease may in some instances repeat certain provisions of the Base Lease for purposes of setting forth Sublessee's and United's primary obligations under the Sublease, the Parties agree that all the terms, conditions, and covenants in the Base Lease shall be applicable to this Sublease with the same force and effect as if United were the lessor under the Base Lease and Sublessee were the lessee under the Base Lease.   Nothing contained in this Sublease shall be deemed to confer upon Sublessee any rights that are in conflict with the Base Lease, as the same may be altered or amended from time to time; provided, however, that United shall not agree to or effect any modification, amendment or termination of the Base Lease that would adversely affect the rights or obligations of this Sublessee hereunder without the prior written consent of Sublessee, unless United is obligated under the terms of the Base Lease or by law to agree to or effect any such modification, amendment or termination. Sublessee shall perform all of United's obligations, as lessee, under the Base Lease and United and Sublessee shall not do or permit to be done any act or thing that would contravene the terms of the Base Lease, and the Base Lease shall govern in the event of a conflict with this Sublease. In the event that United receives or becomes aware of any notice from the Landlord of any alleged or actual default under the Base Lease, United shall promptly notify Sublessee of such notice. Sublessee shall promptly cure such default upon learning of it through any means. If Sublessee is required to cure any payment or other default by United under the Base Lease, Sublessee shall have a claim against United for any such action taken by Sublessee.  In the event that the Base Lease is cancelled or terminated by the Landlord as provided under the Base Lease, the Term of this Sublease shall automatically terminate simultaneously therewith, with no prerequisite of notice. The Parties agree that the intent of this Sublease is to impose upon Sublessee all burdens and obligations, including without limitation financial burdens, imposed by the Base Lease on "Airline" (as defined in the Base Lease). In addition to the foregoing, and notwithstanding any other provisions of this Sublease to the contrary, (a) any payments of Rent (including without limitation landing fees) must be paid by Sublessee to United not later than three (3) business days prior to the applicable dates under the Base Lease when payments, rent, landing fees, or other fees and charges must be paid to Landlord, and (b) any reports, budgets, projections or notices that must be delivered to Landlord under the Base Lease (including, but not limited to reports required  for  calculation of landing fees or other variable charges) must be delivered by Sublessee to United not later than three (3) business days prior to the

DOT00000688

applicable dates on which such reports, budgets, projections or notices must be delivered to Landlord under the Base Lease.

United shall not exercise its right to terminate the Sublease as provided in Section 12.04 of the Base Lease without Sublessee's prior written consent (which consent may be given or withheld in Sublessee's reasonable discretion) provided Sublessee agrees to indemnify United for any costs, expenses or liability as a result of it not exercising its right to terminate the Base Lease, in accordance with its terms, as set forth in Section 17(B) hereof.

4.   **Use.**   During the Term, Sublessee shall use the Base Lease Premises only for such purposes as are permitted under the Base Lease.

5.   **Rent. Default Interest, Other Costs, Late Payments, Per-Use Charges.**

   A. Facilities Rent.  As rent for the use of the Base Lease Premises, Sublessee shall pay United rent equal to all rent and other fees and charges required to be paid to Landlord pursuant to the Base Lease, including without limitation, all fixed and variable rent, landing fees and other fees and charges, in each case without set-off or deduction, due and payable in advance during the term hereof not later than three (3) business days prior to the dates those payments must be paid to Landlord under the Base Lease (the "Facilities Rent").  Facilities Rent due hereunder shall be subject to adjustment for any changes made to the rent, landing fees and other fees or charges due under the Base Lease, or for any increase in United's costs for the Base Lease Premises, and United shall notify Sublessee in writing of any such adjustment. Any adjustment in the Facilities Rent shall be effective simultaneously with the increase of United's rent, fees, charges or costs under the Base Lease. In the event this Sublease commences or terminates on a day other than the last day of any particular month, all Facilities Rent and any Additional Rent (as defined below) shall be prorated for such month of commencement and/or termination.

   B. Additional Rent.  The term "Additional Rent" means all other fees, charges, costs and other amounts payable by Sublessee hereunder, shall be payable in the same manner as provided for Rent, and United shall have all rights against Sublessee for default in payment thereof as in the case of nonpayment of Rent.  The term "Rent" means the Facilities Rent and all Additional Rent.

   C. Payment Address.  All Rent payments and other payments due from Sublessee shall be in U.S. Dollars, effected through the Airline Clearing House (ACH), until or unless United specifies a different payment procedure.

4

It is agreed that United may, by prior written notice to Sublessee, require that all payments due from Sublessee be made by check or wire transfer of immediately available funds, transmitted on the basis of wiring instructions provided by United.

D. <u>Use Charges and Assessments.</u> Sublessee shall be responsible for any and all of its rents, landing fees and all other charges and/or assessments associated with its use of the Airport. Sublessee shall provide to both Landlord and United all written activity or other reports required by the Base Lease when required by the Base Lease, including without limitation any and all reports of enplaned and deplaned passengers, loaded weight and the like required by the Base Lease related to the calculation of any rents, landing fees or other fees and charges under the Base Lease; Sublessee also agrees to pay United for its pro rata share of security costs related to the use of the Building that is not otherwise paid and/or reimbursed by the Transportation Security Administration ("<u>TSA</u>") or other appropriate governmental entity, in which event it will be payable by Sublessee as Additional Rent due within seven (7) days of Sublessee's receipt of notice from United that such costs have been incurred. Sublessee shall be responsible for any cost associated with its operations, such as payment to vendors serving its aircraft and/or personal property and/or delivering goods and/or services to Sublessee, utility charges, communication charges, facility maintenance charges, and any and all other rents, charges, and/or assessments relating to its operation at the Airport. Sublessee shall be responsible for its pro rata share of any common charges at the Airport or other charges related to the use of the Base Lease Premises. Sublessee shall timely pay all charges and/or assessments under this section to the charging party unless otherwise directed by United, in which event it will be payable by Sublessee as Additional Rent due within seven (7) days of receipt of notice by United to Sublessee of such Additional Rent.

E. <u>Other Fees.</u> If Landlord assesses United a fee associated with this Sublease of the Base Lease Premises, then such fee and/or assessment will be payable by Sublessee as Additional Rent due within ten (10) days of receipt of written notice by United to Sublessee that such fee or assessment has been incurred

F. <u>Late Payment.</u> Sublessee acknowledges that the late payment by Sublessee of any monthly installment of Rent or other charges will cause United to incur certain costs and expenses not contemplated under this Sublease, the exact amount of which costs are difficult or impracticable to determine. Therefore, if any such amount owing is not paid by the earlier of (a) the date specified in this Sublease or (b) three (3) business days prior to

5

the date such amount   must be paid to Landlord under the Base Lease, Sublessee shall immediately pay to United a late charge equal to the greater of (i) the sum of any late charge and default interest payable under the Base Lease, or (ii) 1.5% of such amount per month from the due date until the date when full payment is made.   Such late charge shall constitute Additional Rent. To the extent that any late charge provided for hereunder is determined to constitute interest, in no event shall such late charge, plus any other interest due on sums owed to United hereunder, ever exceed the maximum interest rate permitted by law, and in the event such amount should exceed the maximum rate, then the amount owed to United shall automatically be reduced to equal the maximum amount permitted by law.

G. <u>Performance Security.</u>  If the Landlord requires a security deposit or other performance security in connection with the Base Lease or the Leased Premises during the Term at anytime and from time to time, Sublessee shall be responsible for and pay any such security deposit and/or security deposit required by Landlord and in the form required by Landlord

6. **Utilities and Services**.  United will furnish the Base Lease Premises with utilities and services to the extent that they are furnished to United under the Base Lease, except that United assumes no responsibility for interruption of such services for any reason whatsoever, and Sublessee agrees to pay United for any extraordinary electrical, gas, water consumption or other utility or service charges related to the Base Lease Premises at the rate payable by United for that utility. To the extent that these utilities and services are not included in the Base Lease, the Sublessee is responsible for these items. Sublessee shall pay United for any utilities, custodial services, facility maintenance costs, and/or other services provided under the Base Lease for the Base Lease Premises and/or such utilities and/or services that are common to the Base Lease Premises.

7. **Acceptance of Base Lease Premises.**  Sublessee has inspected the Base Lease Premises and accepts the Base Lease Premises in its AS-IS condition and acknowledges that United has made no representations as to the condition thereof. Further, United makes no warranties, guarantees or representations of any kind either express or implied, arising by law or otherwise, including, but without limiting the generality of the foregoing, any warranty, guarantee or representation with respect to the merchantability, fitness for intended use and condition of such Base Lease Premises. Sublessee hereby waives and United expressly disclaims all warranties, guarantees or representations, express or implied, arising by law or otherwise, including, but without limiting the generality of the foregoing, any implied warranty of merchantability, any implied warranty arising from the course of performance, course of dealing or usage, or any implied warranty of fitness for a particular purpose. Except for liability arising from Sublessee's indemnity of United in Section 17(B) hereof, in no event shall Sublessee's liability of any kind under this

6

Sublease, include any special, incidental or consequential damages, including, without limitation, loss of profits, even if Sublessee shall have been advised of the possibility of such potential loss or damage.

8.  **No Cost to United**.  Sublessee will be wholly responsible for all costs associated with preparing the Base Lease Premises for Sublessee's use of the same and for moving Sublessee's personnel and equipment into the Base Lease Premises. These costs include, but are not limited to, moving costs, the de- installation and installation of equipment and utilities, facilities modifications and renovations (including signage removal and installation), permitting, equipment rental charges, operational damages (whether revenue or cost based), or any other cost or effort necessary to make the Base Lease Premises useable to the Sublessee.

9.   **Repairs and Maintenance**. Sublessee, at its sole cost and expense, shall perform all maintenance, repair, cleaning and similar obligations relating to the Base Lease Premises as may be imposed by the Base Lease on the Airline (as defined in the Base Lease). In the event that Sublessee fails to make any required repair or comply with any of the other foregoing obligations, such failure shall be a default and, in any such case, within seven (7) days after receiving written notice from United that such repair or compliance is needed, or in the event that Sublessee fails  within seven (7) days to commence and thereafter diligently complete such repair or compliance, United, without being obligated to do so, may make such repairs or perform such obligations, in which event it will be payable by Sublessee as Additional Rent due within seven (7) days after receiving written notice by United to Sublessee that such cost has been incurred

10. **Environmental, Health and Safety**.  Sublessee shall comply with the terms and conditions of Section 14.04 of the Base Lease that are imposed on "Airline" (as defined in the Base Lease).  In addition, Sublessee shall also comply with the following additional terms and conditions:

    A.   Sublessee shall conduct its operations under this Sublease in a prudent manner, taking reasonable preventative measures to avoid environmental impacts or harm to human health or the environment, including, without limitation, unpermitted spills, leaks, releases, or the disposal of "hazardous wastes" or "hazardous substances" (each as defined in Section 14.04 of the Base Lease), or the creation of any public hazard or nuisance. Sublessee shall not cause or permit any hazardous waste or hazardous substance to be brought upon the Base Lease Premises, except to the extent required for the customary use and occupancy of the Base Lease Premises under this Sublease, and provided that such hazardous wastes or hazardous substances are used, stored, handled, and disposed of in accordance with all environmental laws.  If in the course of conducting its operations under this Sublease, Sublessee encounters conditions which could give rise to liability under any environmental laws or otherwise could result in harm to human

7

health or the environment, Sublessee shall immediately notify United of such conditions. Such notice shall not relieve Sublessee of its obligations to comply with applicable environmental laws and does not obligate United to correct any condition giving rise to such notice.

B.   Sublessee shall ensure that its employees are trained in procedures required to comply with all applicable environmental, health and safety laws. Sublessee shall provide at its expense all equipment and personnel necessary to conduct its operations in a safe manner and shall ensure safe operations at all times. Sublessee shall obtain any permits, licenses or approvals required for the conduct of its operations under applicable laws and may not rely upon any permits, licenses or approvals obtained by United, except as agreed to in writing by United.

C.   Sublessee shall not cause any spills, leaks, discharges, dumping, releases, or on-site disposal (hereinafter "**Releases**") of any hazardous wastes or hazardous substances in connection with its operations under this Sublease, unless specifically authorized under environmental laws, and shall immediately notify United of any such Releases. Sublessee shall promptly undertake all actions to remediate any Releases as required by applicable environmental laws and as otherwise required by United, in its reasonable discretion, pursuant to work plans and schedules reviewed and approved by United. Sublessee shall timely provide copies to United of any written reports, correspondence or other documents prepared in response to such Releases or otherwise provided to any governmental agencies and airport authorities under any environmental laws. In the event that Sublessee fails to timely fulfill its remediation obligations under this Section, United may undertake such actions at the sole cost and expense of Sublessee.

D.   Upon termination of this Sublease, Subtenant shall be responsible for the proper removal of all Hazardous Materials associated with Subtenant's operations under the Sublease and shall ensure that all Releases of Hazardous Materials arising out of Subtenant's operations under this Sublease are remediated in accordance with the terms of this Sublease.

E.   Claims for indemnification for environmental matters are limited to the environmental indemnification provision in Section 14.04 of the Base Lease.

11.   **Landlord-Mandated Maintenance and Improvements.**   In the event the Landlord requires the maintenance or replacement of certain portions of the leasehold (such as, but not limited to, carpet, walls, doors, and ceilings) in the Base Lease, Sublessee shall be responsible for any such maintenance or replacements in the Base Lease Premises.

8

12. **Taxes.**  Sublessee agrees to pay, before they become delinquent, all taxes (both general and special), assessments or governmental charges of any kind whatsoever (the "Taxes"), levied or assessed against the Base Lease Premises, or any property of Sublessee located thereon or any business conducted by Sublessee thereon; provided, however, that Sublessee shall not be responsible for any taxes imposed on United associated with its net income, gross receipts, excess profits or any other type of tax arising from United's business unrelated to the Base Lease or this Sublease. In the event that United shall be assessed for Taxes on the Base Lease Premises or any or all of Sublessee's leasehold improvements, equipment, furniture, fixtures, personal property or Sublessee's business operations, Sublessee shall pay to United the amount of such Taxes within ten (10) days after delivery to Sublessee by United of a written statement setting forth the amount of such Taxes payable by Sublessee. On demand by United, Sublessee shall furnish United with satisfactory evidence that the payments required to be made by Sublessee hereunder have been remitted to the appropriate entity or agency.  Sublessee shall be allowed to contest any imposition of taxes consistent with the procedures set forth in the Base Lease.

13. **Alterations.**  Sublessee may not make any alteration, addition or improvement to the Base Lease Premises without the prior written approval of United and the Landlord, and United's approval shall not be unreasonably withheld, delayed or conditioned. Unless United elects otherwise, in the event of an early termination of this Sublease all alterations, additions or improvements to the Demised Premises shall become the property of United with the exception that Sublessee's trade fixtures shall remain the property of Sublessee.  In the event United so elects, any such alterations, additions or improvements shall be removed by Sublessee at its own cost and expense upon the early expiration of the Term of this Sublease, and Sublessee shall repair any damage to the Base Lease Premises caused by such removal.   Further, if United (upon the early termination of this Sublease) or Landlord (at the completion of the Term of this Sublease) so elects, Sublessee shall re-install or replace any fixtures and/or equipment removed or relocated by Sublessee during the term of this Sublease.

14. **Right of Entry.**  United shall have the right to enter the Base Lease Premises for any reasonable purpose after giving at least 24 hours prior written notice to Sublessee (except in the case of an emergency, in which event no notice will be required), including to gain access to and egress from those portions of the Base Lease Premises or the Building not leased to Sublessee hereunder and to perform such functions as may be necessary or convenient for the maintenance and operation thereof. In the event the Base Lease Premises and/or personal property are used by others, then United, Sublessee, and/or their respective personnel shall have reasonable rights of ingress and egress at all times to the Base Lease Premises and shall use reasonable effort not to interfere with each other's operations.

9

15. **Compliance with Law.**   Sublessee will comply with all applicable statutes, ordinances, rules, regulations, orders and directives of any governmental authority (including Landlord) applicable to the Base Lease Premises or to United's or Sublessee's use or occupancy thereof and perform, at its own expense, all obligations imposed thereby.   Sublessee shall pay all costs, fines, and assessments that it causes or which are assessed due to its actions, including insofar as those actions are contrary to a law, ordinance, or regulation and are not mandated by this Sublease.

Sublessee shall indemnify and hold harmless United from and against any and all costs, claims, judgments and expenses (including reasonable attorneys' fees) incurred by United due to any investigation commenced or penalties or fines imposed by the Federal Aviation Administration, the Landlord or any other governmental agency having jurisdiction with respect to the Air Carriers Standard Security Program and/or Landlord's security program arising out of or in connection with Sublessee's use and occupancy of the Base Lease Premises, except to the extent such investigation, penalties or fines were caused solely by the gross negligence or willful misconduct of United.

16. **Casualty.**   If the Base Lease Premises or any portion thereof is damaged or destroyed by fire or other casualty, and the Landlord is not obligated under the Base Lease to repair or replace the damaged or destroyed Base Lease Premises and does not elect to repair or replace the Base Lease Premises, United may terminate this Sublease by written notice to Sublessee but only if Landlord also terminates the Base Lease; provided, however, and notwithstanding anything the foregoing, in such case of damage or destruction, if United does not terminate this Sublease, Sublessee shall, without expense to United, cause the Base Lease Premises to be repaired or replaced. If the Base Lease Premises are so damaged that Sublessee is unable to occupy or use the Base Lease Premises or a portion thereof during repair or reconstruction, then, to the extent abatement of rents is provided in such circumstances under the Base Lease, the Rent hereunder shall be appropriately abated until the Base Lease Premises can be occupied or used by Sublessee. United shall in no event be required to rebuild, repair or replace any improvements, fixtures or personal property of Sublessee.   Notwithstanding the foregoing, in the event the Building or the Base Lease Premises or the Base Lease Premises are damaged or destroyed through the negligence or willful misconduct of Sublessee, its officers, directors, employees, agents, customers, concessionaires, vendors, contractors or invitees, then Sublessee shall immediately repair any such damage.  United may exercise its discretion to undertake the cost of repairing any such damage, in which event it will be payable by Sublessee as Additional Rent due within seven (7) days of receipt of written notice by United to Sublessee that such cost has been incurred.

10

DOT00000695

17. **Release and Indemnity.**

    A. <u>Release.</u> Sublessee hereby agrees that United shall not be liable for any loss or damage to any property (including the property of Sublessee, its officers, directors, employees, agents, customers, concessionaires, vendors, contractors or invitees) or the death or injury of any persons (including Sublessee, its officers, directors, employees, agents, customers, concessionaires, vendors, contractors or invitees) occasioned by theft, fire, acts of God, public enemy, injunction, riot, strike, insurrection, war, or any other action of any governmental body or authority, by other tenants of the Base Lease Premises or the Building or any other matter, or for any injury or damage or inconvenience which may arise through repair or alteration of any part of the Base Lease Premises or the Building, except to the extent caused by the gross negligence or willful misconduct of United.

    B. <u>Indemnity.</u> **SUBLESSEE HEREBY RELEASES AND WILL DEFEND, INDEMNIFY AND HOLD HARMLESS UNITED AND ITS PARENT, SUBSIDIARIES AND AFFILIATED COMPANIES AND EACH OF THEIR OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, CONCESSIONAIRES, VENDORS, AND CONTRACTORS (EACH AN "<u>INDEMNIFIED PARTY</u>," AND COLLECTIVELY, THE "<u>INDEMNIFIED PARTIES</u>") FROM AND AGAINST ANY AND ALL LIABILITY, CLAIMS, PENALTIES, FINES, CAUSES OF ACTION, SUITS, LIENS, LOSSES, LOSS OF USE, DAMAGES, COSTS AND EXPENSES OF ANY KIND (INCLUDING LEGAL FEES AND COSTS) (COLLECTIVELY, "<u>CLAIMS</u>") THAT MAY BE SUFFERED BY, ACCRUED AGAINST, CHARGED TO OR RECOVERABLE FROM THE INDEMNIFIED PARTIES BY REASON OF OR RELATED TO (I) ANY OCCURRENCE DURING THE TERM OF THIS SUBLEASE IN, UPON OR AT THE BASE LEASE PREMISES OR THE BUILDING, HOWEVER CAUSED, INCLUDING, WITHOUT LIMITATION, OCCURRENCES CAUSED, IN WHOLE OR IN PART, BY THE NEGLIGENCE OR MISCONDUCT OF THE SUBLESSEE, ITS OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, CONCESSIONAIRES, VENDORS AND CONTRACTORS; OR (II) ANY OCCUPANCY, USE, OR MISUSE OF THE AREAS SURROUNDING THE BASE LEASE PREMISES OR THE SERVICE AREAS, PARKING AREAS, PEDESTRIAN AREAS, PEDESTRIAN WALKS OR DRIVEWAYS IN OR AROUND THE BASE LEASE PREMISES BY SUBLESSEE, ITS OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, CUSTOMERS, CONCESSIONAIRES, VENDORS, CONTRACTORS OR INVITEES OR ANY OCCUPANCY, USE, OR MISUSE OF THE BASE LEASE PREMISES (III) ANY OCCURRENCE ELSEWHERE IN THE BASE LEASE PREMISES OR THE BUILDING OCCASIONED IN WHOLE OR IN PART BY THE ACT OR OMISSION OF SUBLESSEE, ITS OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, CUSTOMERS, CONCESSIONAIRES, VENDORS, CONTRACTORS OR**

11

**INVITEES; (IV) ANY EVENT OF DEFAULT (INCLUDING LEGAL FEES AND COSTS RELATING TO ANY SUBLESSEE BANKRUPTCY OR RECEIVERSHIP); (V) ANY OCCURRENCE OCCASIONED BY THE VIOLATION OF ANY LAW, REGULATION OR ORDINANCE OR PERMITTED BY SUBLESSEE OR ITS OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, CUSTOMERS, CONCESSIONAIRES, VENDORS, CONTRACTORS OR INVITEES; OR (VI) ANY CLAIMS AGAINST THE INDEMNIFIED PARTIES ARISING AS A RESULT OF THIS SUBLEASE, INCLUDING UNITED'S AGREEMENT TO NOT EXERCISE ITS RIGHT OF TERMINATION UNDER THE BASE LEASE AS PROVIDED IN THE LAST PARAGRAPH OF SECTION 3 HEREOF AND ANY INDEMNITY OBLIGATION TO OR IN FAVOR OF LANDLORD OR ANY LANDLORD-RELATED PERSONS OR ENTITIES ARISING IN CONNECTION WITH THIS SUBLEASE; PROVIDED, HOWEVER, THAT SUBLESSEE'S INDEMNITY OF AN INDEMNIFIED PARTY AS SET FORTH ABOVE SHALL NOT APPLY TO CLAIMS TO THE EXTENT SUCH CLAIMS ARISE FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SUCH INDEMNIFIED PARTY.**

18.  **Insurance**.

A.  <u>Coverage.</u>  During the term of this Sublease, Sublessee, at its own cost and expense, shall maintain with insurers the types and amounts of coverage required in the Base Lease.

B.  <u>Form and Certificates.</u>  The liability policies shall: (i) name United and Landlord as additional insureds; (ii) specifically insure the liability assumed by Sublessee hereunder; (iii) be primary without right of contribution from any insurance carried by United or Landlord; (iii) contain a waiver of subrogation; and (iv) provide for thirty (30) days written notice to United and Landlord prior to cancellation or material change. Certificates evidencing the above coverages and special endorsements shall be provided to United and Landlord on or before the date Sublessee takes possession of the Base Lease Premises.  Insurance forms shall be sent to:

United Airlines, Inc.
Vice President Corporate Real Estate
233 S. Wacker Dr., HDQOU
Chicago, IL 60606

C.  <u>Waiver of Subrogation</u>.  Sublessee, on behalf of itself and its insurers hereby waives any claim or right of recovery from United or Landlord, their officers, directors, employees, agents, concessionaires and contractors, for loss or damage to Sublessee or its property or the property of others under

12

Sublessee's control, to the extent that such loss is covered by valid insurance policies.   Sublessee shall provide notice of this waiver of subrogation to its insurers.

19.   **Liens.**  Sublessee hereby agrees to keep the Base Lease Premises, including the improvements thereon, free and clear of mechanic's liens and other liens for taxes, labor, services, equipment, materials, and/or any other type of lien.  In the event such a lien is filed or recorded, Sublessee shall take all action required to remove the same within fifteen (15) days of the filing or recordation.  If the Sublessee fails to take such action to remove the lien within fifteen (15) days after Sublessee's receipt of written notice from United, United may exercise its discretion to do so, in which even any cost of such removal of the lien incurred by United shall be payable by Sublessee as additional rent due within seven (7) days of Sublessee's receipt of United's written notice that such cost has been incurred.

20.   **No Bailment.**   During the term of this Sublease, an employee or agent of Sublessee shall at all times be in charge of and in custody and control of any aircraft or equipment of Sublessee on or about the Base Lease Premises and United shall at no time be considered a bailee of or in custody or control of such aircraft or equipment.  United shall not be liable to Sublessee for damage sustained by or claims lodged against Sublessee in connection with or resulting from the use of the Base Lease Premises or from the rendering of services or the furnishing of goods pursuant to this Sublease unless such damage was sustained by or such claims were lodged due to the gross negligence or willful misconduct of such Indemnified Party.

21.   **Intentionally Omitted.**

22.   **Condemnation.**

A. Total Taking.  If during the term of this Sublease or any extension or renewal hereof, all or a portion of the Base Lease Premises should be taken for any public or quasi-public use under any governmental law, ordinance or regulation or by right of eminent domain, or should be sold to the condemning authority under threat of condemnation, and as a result the Base Lease is terminated, this Sublease shall terminate and the Rent hereunder shall be abated during the unexpired portion of this Sublease, effective from the date of taking of the Base Lease Premises by the condemning authority.  Any compensation and damages that may be the result of such taking (after taking into account any portion thereof to which Landlord is entitled under the Base Lease) shall (if not apportioned by a condemnation decree) be  fairly and equitably apportioned between United and Sublessee.

13

B. <u>Partial Taking</u>. If, during the Term, a portion of the Base Lease Premises shall be taken but the Base Lease is not terminated, the Sublease shall continue and Rent and other amounts payable hereunder shall be reduced to the same extent as provided in the Base Lease. Any compensation and damages that may be the result of such taking (after taking into account any portion thereof to which Landlord is entitled under the Base Lease) shall (if not apportioned by a condemnation decree) be fairly and equitably apportioned between United and Sublessee.

C. <u>Awards.</u> Subject to the Base Lease, United and Sublessee shall be entitled to receive and retain such separate awards and portions of lump sum awards, if any, as may be allocated to their respective interests in any condemnation proceedings. The termination of this Sublease shall not affect the rights of the respective parties to such awards.

23. **Defaults.** The occurrence of any of the following shall constitute an "<u>Event of Default</u>" by Sublessee under this Sublease:

A. Sublessee fails to pay any sum as required hereunder and such failure is not cured within five (5) days after written notice of an Event of Default is received by Sublessee;

B. Sublessee abandons or vacates the Base Lease Premises or fails to use the Base Lease Premises for more than thirty (30) consecutive days;

C. Sublessee fails to observe and perform any other provision of this Sublease, and such failure is not cured within twenty-five (25) days of the date, provided in the written notice of an Event of Default sent from United to Sublessee; provided, further, that if the failure cannot reasonably be cured within said twenty-five (25) day period, Sublessee shall not be deemed to be in default if Sublessee timely commences to cure the failure and thereafter diligently prosecute the same to completion;

D. Sublessee (i) takes any action leading to its cessation as a going concern or ceases or suspends operations for reasons other than a strike; or (ii) becomes insolvent or makes transfers in fraud of creditors or makes an assignment for the benefit of creditors; or (iii) files a petition for protection under any state or federal bankruptcy act or a trustee or receiver is appointed for all or substantially all of Sublessee's assets.

E. United demands in writing adequate assurance of future performance of the Sublease upon concluding, that it has reasonable grounds for insecurity, and Sublessee fails to provide such adequate assurance provided; that the

14

reasonableness of grounds for insecurity and the adequacy of any assurance offered shall be determined according to commercial standards.

24. **Remedies Upon Default.** Upon the occurrence of an Event of Default hereunder, United may take any one or more of the following actions:

    A. Maintain this Sublease in full force and effect and recover any and all Rent (including Additional Rent) and other monetary charges as they become due, without terminating Sublessee's right to possession, regardless of whether Sublessee shall have abandoned the Base Lease Premises. If United elects not to terminate this Sublease, United shall have the right to attempt to relet the Base Lease Premises on behalf of Sublessee upon such conditions and for such a term and to do all acts necessary to maintain or preserve the Base Lease Premises as United deems reasonable and necessary, including the removal of all persons and property from the Base Lease Premises, without being deemed to have elected to terminate this Sublease. Any property so removed may be disposed of or stored in a public warehouse or elsewhere, at United's election, at the cost of and for the account of Sublessee, which cost shall constitute Additional Rent. Notwithstanding any election by United not to terminate this Sublease initially, United at any time thereafter may elect to terminate this Sublease as a result of such previous and then existing Event of Default;

    B. Terminate this Sublease by written notice to Sublessee, in which event this Sublease shall be ended as to Sublessee and all persons holding under Sublessee, and all of Sublessee's rights shall be forfeited and lapsed, as fully as if this Sublease had expired by lapse of time. In such event, Sublessee shall be required to vacate and halt the use of the Base Lease Premises immediately and surrender same to United. If Sublessee fails to surrender the Base Lease Premises immediately to United, United, without prejudice to any other remedy, may enter upon and take possession of the Base Lease Premises and expel or remove Sublessee and any other person who may be occupying or using the Base Lease Premises or any part thereof, without being liable for wrongful eviction or any other cause of action or claim of damages. In the event of termination in accordance with this provision, the Rent, including Additional Rent, or any other sums payable by Sublessee pursuant to this Sublease that have accrued hereunder but are unpaid shall be immediately due and payable by Sublessee to United.

    C. In addition, Sublessee agrees to pay to United upon demand the amount of all loss and damages which United may suffer by reason of such

15

DOT00000700

termination, whether through inability to relet the Base Lease Premises on satisfactory terms or otherwise, including, without limitation, (i) all expenses incurred by United, including court costs and reasonable attorneys' fees, in recovering possession of the Base Lease Premises or enforcing United's rights under this Sublease; (ii) all costs and charges for care of the Base Lease Premises while vacant or unused; (iii) all costs of restoring the Base Lease Premises to a good condition; (iv) all costs associated with United's efforts to relet the Base Lease Premises; and (v) the difference between the total Rent that would have accrued to United under the Sublease for the remainder of the term had the Sublease not been terminated and the total fair market rental value of the Base Lease Premises for the remainder of the term of the Sublease. The failure of United to relet the Base Lease Premises or any part or parts thereof shall not release or effect Sublessee's liability for damages hereunder;

D. Cure the default on the behalf of the Sublessee, in which event all costs incurred by United in accomplishing such cure will be payable by Sublessee as Additional Rent due within ten (10) days of notice by United to Sublessee that such cost has been incurred;

E. Intentionally Omitted.

F. Exercise any right available to United in law or in equity.

25. **Sublessee Bankruptcy.**

A. Sublessee expressly acknowledges that the notice provisions of this Sublease, including §§ 3, 5A, 5C, 5G, 10, 12, 14, 15, 16 and any notice of Rent due (including Additional Rent) are not subject to or restricted by the automatic stay imposed by the Bankruptcy Code.

B. Sublessee acknowledges United will incur substantial damages if Sublessee fails to comply in any respect with this Sublease pending a ruling on assumption or rejection thereof, and including during the initial 60 days of the bankruptcy case. Sublessee agrees that United is entitled to adequate protection for Sublessee's use of the Base Lease Premises, and that only full and timely performance of all terms and conditions of this Sublease from the inception of the case can adequately protect United, and that no cause to extend the time for performance under 11 U.S.C. § 365(d)(3) could be sufficient to outweigh United's damages or adequate protection rights.

C. Sublessee further acknowledges that United holds all rights of a secured creditor under the Bankruptcy Code, and is entitled to adequate protection of its interests as a secured creditor, which must include full and timely

16

performance of all terms and conditions of this Sublease, without waiver or limitation of any and all other rights of United as a secured creditor.

26. **Cumulative Rights.**  United's rights and remedies hereunder shall be cumulative and shall not be exclusive of one another, and United shall have the right to pursue any one or more of them. United's acceptance of any Rent or other payments due hereunder or United's failure to take any action on account of a default if such default persists or is repeated, shall not be deemed a waiver of any default or Event of Default. United's consent to any act by Sublessee requiring United's consent or approval shall not be deemed to waive or render unnecessary United's consent or approval to any subsequent or similar acts by Sublessee.

27. **Surrender of Premises/Holding Over.**  Upon expiration of the Term or early termination of this Sublease for any reason, Sublessee shall surrender the Base Lease Premises to Landlord in compliance with the terms of the Base Lease and in good condition, broom clean, reasonable wear and tear excepted and also excepting damage by flood, fire, earthquake, act of God, or the public enemy, not caused by the acts or omissions of Sublessee, its employees, or agents.

28. **Assignment and Sublease.**  Sublessee shall have the right to assign or sublet this Sublease or any portion thereof during the Term of this Sublease, with the prior written consent of United, which consent may be given or withheld in United's reasonable discretion.   Notwithstanding anything contained herein to the contrary, during the term hereof, Sublessee shall follow the procedures set forth below in this Section 28 for any proposed assignment of this Sublease in its entirety or in part, or for any proposed subletting of all or any portion of the Subleased Premises (the "Proposed Assigned/Subleased Premises") and United shall have the right to approve or disapprove any proposed assignment or sublease or terminate this Sublease with respect to the Assigned/Subleased Premises as provided below. Sublessee shall notify United of any proposed assignment or sublease, and within thirty (30) days after United's receipt of such notice from Sublessee, United shall provide Sublessee a written notice of its (a) approval (with conditions as provided in the following sentence) or disapproval of the assignment or sublease or (b) election to terminate the Sublease with respect to the Proposed Assigned/Subleased Premises.  The Parties agree that in connection with any assignment or sublease, United may impose on its consent, that any proposed assignment or sublease be to an assignee or sublessee with at least the same financial capabilities and strength as the named Sublessee as of the date of this Sublease; and further, that the Landlord has consented to such sublease or assignment in accordance with the terms of the Base Lease. United's acceptance of Rent from any person other than Sublessee shall not be deemed to be a waiver of this provision.  Any termination of this Sublease with respect to the Proposed Assigned/Subleased Premises in accordance with this Section 28 shall be effective on the date of Sublessee's applicable proposed assignment or sublease for which Sublessee sought United's consent.

17

29.  **Accommodation of Requesting Airlines.**  Notwithstanding anything contained herein or in the Base Lease to the contrary, Sublessee acknowledges and agrees that, as between Sublessee and United (and without affecting the Landlord's rights as provided in the Base Lease), if Sublessee or United are required to accommodate any airline in accordance with the Base Lease, in accordance with Sublessee's separate lease with Landlord for other premises at the Airport, or otherwise, Sublessee, so long as it is permitted to do so by Landlord, shall:  (A) not use the Leased Premises to accommodate such airlines; and (B) use other premises that the Sublessee leases or otherwise subleases at the Airport to accommodate such airlines.

30.  **Accord and Satisfaction.**  No payment or receipt by United of a lesser amount than the Rent or other charges herein stipulated shall be deemed to be other than on account of the Rent or such charges.  Further, no endorsement or statement on any check or any letter accompanying any check shall be deemed to be an accord and satisfaction.  United may accept such check or payment without prejudice to United's right to recover the balance of such Rent or other charges or pursue any other remedy provided in this Sublease.

31.  **Attorney's Fees.**  In the event that either party defaults in the performance of any of the terms, conditions or agreements contained in this Sublease, whether or not there is an Event of Default, and the non-defaulting party engages an attorney with respect to such default, including the filing of any defaulting party's bankruptcy or receivership or the enforcement of all or part of this Sublease, the defaulting party agrees to pay all of non-defaulting party's reasonable attorneys' fees and costs.

32.  **Force Majeure.**  Neither party shall be deemed to be in breach of this Sublease by reason of a failure to perform any of its obligations hereunder to the extent that such failure is caused by strike or labor troubles, unavailability of materials or utilities, riots, rebellion, insurrection, invasion, war, action or interference of governmental authorities, acts of God, or any other cause whether similar or dissimilar to the foregoing which is reasonably beyond the control of the affected party; provided, however, this clause shall not apply to Sublessee's obligation to pay Rent or other sums due hereunder or United's obligation to pay rent or other sums owed under the Base Lease, such obligations being absolute and unconditional.

33.  **Governing Law.**  This sublease shall be governed by and construed under the laws of the State of Texas.

34.  **Amendment.**  The provisions of this Sublease may be modified, amended or waived only by a written instrument, executed by United and Sublessee.

35. **Waiver.**  A waiver by either party to this Sublease of any breach of the covenants, conditions or agreements contained herein shall not be construed as a waiver of any succeeding breach of the same or other covenants, conditions or agreements.

36. **Survival of Provisions.**  The provisions of this Sublease, including without limitation, Sections 10(D), 15 and 17, shall survive the expiration or earlier termination of this Sublease with respect to occurrences during the term of this Sublease, as well as the exercise of any remedy by United or Sublessee under this Sublease.

37. **Severability.**  If any provision or term of this Sublease shall be determined to be illegal, invalid or unenforceable, the remainder of this Sublease shall not be affected and shall remain valid and enforceable to the fullest extent permitted by law.

38. **Approval by Landlord.**  This Sublease is conditioned upon the written consent being obtained from the Landlord. In the event the Landlord does not give its consent, either of the undersigned parties may, at its option, rescind its signature and this Sublease shall thereafter be of no force or effect.

39. **Notices.** All notices, requests and other communications under this Sublease shall be in writing and shall be deemed to have been duly given if hand delivered or sent overnight courier guaranteeing next day delivery, addressed as follows (or to other address, as shall have been designated by the recipient in writing):

| | |
|---|---|
| To United: | United Airlines, Inc.<br>Attention: Vice President Corporate Real Estate<br>233 South Wacker Dr., HDQOU<br>Chicago, IL 60606<br><br>Telephone: (872) 825-8603<br>Fax:  (872) 825-0300 |
| With a copy to: | United Airlines, Inc.<br>Attention:  Associate   General   Counsel   –<br>Commercial Transactions, Finance and Loyalty<br>233 South Wacker Dr., HDQLD<br>Chicago, IL 60606<br><br>Telephone: (872) 825-7217<br>Fax:  (872) 825-0310 |
| To Sublessee: | Southwest Airlines Co.<br>Attention:  Vice President Airport Affairs<br>2702 Love Field Dr.<br>HDQ-4PF |

19

Dallas, TX 75235

Telephone: (214) 792-4365
Fax:  (214) 792-4224

With a copy to:    Southwest Airlines Co.
Attention: VP General Counsel
2702 Love Field Dr.
HDQ-4GC
Dallas, TX 75235

Telephone: (214) 792-6143
Fax:  (214) 792-6200

Either party may, from time to time, change its address by written notice to the other party.

40.   **Quiet Enjoyment.**  Upon Sublessee's payment of all sums due hereunder and provided that Sublessee is not otherwise in default hereunder, Sublessee shall peaceably and quietly hold, occupy and enjoy the Base Lease Premises for the term of this Sublease without hindrance, ejection or interruption by United, or persons lawfully claiming through United.

41.   **Binding Effect.**  Subject to prohibitions against assignment, this Sublease shall be binding upon the parties, their personal representatives, successors and assigns.

42.   **Counterparts.**  This Sublease may be executed in multiple counterparts, including by electronic transmission, each of which shall be deemed an original for all purposes and all of which shall be deemed collectively to be one Sublease.

43.   **Affiliates.**  Notwithstanding anything to the contrary contained in this Sublease, subject to consent of the Landlord, Sublessee shall be entitled to sublease or license part or all of the Base Lease Premises to, or ground handle from the Base Lease Premises, any Affiliate of Sublessee, without the consent of United. For purposes of this Section, "Affiliate" shall mean any air transportation company that (i) is a parent or subsidiary of Sublessee, or (ii) operates under essentially the same trade name as Sublessee at the Airport and uses essentially the same livery as Sublessee, or (iii) operates under essentially the same trade name as a parent or subsidiary of Sublessee at the Airport and uses essentially the same livery as such parent or subsidiary.

*Remainder of Page Intentionally Left Blank*
*Signature Page Follows*

20

*[Signature page to Agreement of Sublease]*

IN WITNESS WHEREOF, the parties hereto have caused this Sublease to be executed by their respective duly authorized representatives.

**SUBLESSEE:**                                    **UNITED:**

**SOUTHWEST AIRLINES CO.**          **UNITED AIRLINES, INC.**


By:_____          By:_____
Name: Bob Montgomery                    Name: Kate Gebo
Title:, Vice President Airport Affairs      Title: Vice President Corporate Real Estate
Date:_____
                                                      Date:_____

21

**EXHIBIT 1 TO AGREEMENT OF SUBLEASE**

BASE LEASE