UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CITY OF DALLAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  3:15-CV-02069-K |
| | § | |
| DELTA AIRLINES, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**AMERICAN AIRLINES, INC.'S BRIEF IN SUPPORT OF ITS RESPONSE TO
THE CITY OF DALLAS'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT, AND, IN ADDITION TO OR IN THE ALTERNATIVE,
MOTION FOR ENTRY OF PERMANENT INJUNCTION**

American Airlines, Inc. ("American") files this brief in support of its response to the City of Dallas's Motion for Summary Judgment or Partial Summary Judgment, and, In Addition or In the Alternative, Motion for Entry of Permanent Injunction (together, the "City's Motion") (Doc. No. 436) whereby the City seeks to have this Court declare as a matter of law that the City's proposed "Accommodation Policies and Procedures" (hereinafter, the "Accommodation Policy" or "Policy") to be lawful, and authorize the Policy's immediate implementation.  Many of the issues implicating the lawfulness of the City's proposed Policy are already before the Court in prior briefing related to the City's pending motion to modify the Court's Preliminary Injunction.[1]

In advocating for the Policy's implementation, the City overlooks and otherwise fails to address the conspicuous illegalities posed by the Policy including: (1) Violating 49 U.S.C. § 41713(b)(2), which expressly prohibits the City from implementing a policy, like the one at issue here, that interferes with an air carrier's (*i.e.*, American's) right and ability to provide future service at Love Field; and (2) The City's proposed alteration of the definition of "signatory

---

[1]  *See* Doc Nos. 431, 441-49.

airlines" so as to unlawfully discriminate against American in violation of the federal grant assurances set forth at 49 U.S.C. §§ 47107(a)(1) and (a)(3).  For these reasons, as well as those set forth in American's Objections to the City of Dallas's Proposed Accommodation Policy (Doc. No. 441), American requests that the Court deny the City's Motion and reject its proposed Policy as currently written.

## I.
### UNDISPUTED FACTS AS THEY RELATE TO AMERICAN'S OPPOSITION

Under the existing and in place Airport Use and Lease Agreements ("Lease Agreement(s)"), a "signatory airline" is defined as:

> 1.52. **"Signatory Airlines"** means all airlines serving the Airport which: (A) have entered into an Airport Use and Lease Agreement with the City that is substantially similar to this Agreement; *and (B) are currently operating regularly scheduled flights at the Airport.*[2]

This is a definition upon which all of the parties—including the City—agreed when they negotiated and executed their respective Leases.  However, without legitimate explanation or justification, the City has drafted Paragraph 3a of the General Terms in the City's proposed Accommodation Policy so as to set forth a new and substantially different definition of "signatory airline" that eliminates the second, italicized requirement of Paragraph 1.52 of the Lease Agreements.  The City's new definition also specifically identifies American as among the "current signatory airlines."  Paragraph 3(e), in turn, effects the City's discriminatory bar against American by stating:   "A signatory airline is not a new entrant and is not entitled to accommodation pursuant to Section 4.06F of leases between the City and the signatory airlines."

---

[2]   The Airport Use and Lease Agreement that American entered into with Dallas after enactment of the Wright Amendment Reform Act of 2006 ("WARA") is already in the record at Doc. No. 24, at p. 144 of 272.  The same definition of "Signatory Airlines" appears in the Airport Use and Lease Agreement Dallas entered into with Southwest after the Wright Amendment Reform Act of 2006.  Doc. No. 438-1 at p. 72 of 206.

With this language, the City specifically and expressly seeks to prejudice American, which has not operated any flights at Love Field since 2014,[3] by stripping it of the right and ability, whether exercised now or in the future, to *ever* seek accommodation at Love Field as otherwise allowed and required by law.  The City seeks to exploit the fact that American entered into a Lease Agreement with the City once upon a time, but has not operated any flights at Love Field for years, so as to automatically qualify it as a "signatory airline" and thus, per the City's proposed Policy, automatically disqualify it from ever seeking accommodation under the City's new, proposed Policy, which bars all signatory airlines, including American by name, from ever being entitled to access and service Love Field.

To support its discriminatory Policy, the City relies singularly on this Court's purported "conclu[sion] that signatory airlines are not new entrants under the terms of the lease."  [City's Motion at 11].  However, the Court never reached such a "conclusion."  The Court said nothing about re-defining "Signatory Airlines" as that term is defined in the Leases.  Rather, the Court referenced Southwest's argument and Delta's argument about the meaning of "signatory airline," neither of which referred to the definition in the Leases, and then agreed with Delta.  *See City of Dallas v. Delta Airlines, Inc.*, 2016 WL 98604, at *8 (N.D. Tex. Jan. 8, 2016).   The Court was not asked and had no reason or legal basis to re-write the Lease's definition of "Signatory Airlines" as the City contends.  In any event, however, since filing its Motion, the City seemingly has walked back its position on the proposed definition of "signatory airlines" in its

---

[3]   In its Reply to Responses to Its Motion to Modify Preliminary Injunction (Doc No. 455), the City argues or at least implies that American voluntarily "abandon[ed] providing service to Love Field."  *Id.* at p. 7.  The notion that American's decision to assign its lease rights to Virgin was one of pure volition, is inaccurate and not supported by the record, which shows that American was *required* to divest itself of its lease rights at Love Field pursuant to its settlement with the Department of Justice in connection with its merger with US Airways.

most recent filing, stating:  "If the Court should alter its interpretation of new entrant, the City will modify its policy accordingly."  [Doc. No. 455, p. 7].  Thus, to the extent the Court clarifies that it had not intended to re-define the term "Signatory Airlines" when it issued its January 8, 2016 decision, then it seems the City is prepared to revert to using the original, agreed upon definition of "Signatory Airline" used in the Leases.   Otherwise, the City's proposed Accommodation Policy violates federal law and cannot be implemented in its present form, and the City's Motion should be denied.

## II.
### ARGUMENTS AND AUTHORITIES

The Court should deny the City's Motion insofar as it seeks to implement its proposed Accommodation Policy, or is otherwise premised upon a declaration that such Policy, in its present form, is lawful and eligible for implementation.  It is not.  By unjustifiably and inexplicably defining American as a "signatory airline" so as to be barred from the definitions of "new entrant" and "requesting airline," and thus ineligible for accommodation under the Leases and the City's proposed Policy, the City seeks relief that violates federal law.  It also lacks footing in common sense.  In particular, barring American from seeking accommodation at Love Field violates 49 U.S.C. § 41713(b)(1), which prohibits the City from enacting or enforcing a law, regulation, or other provision "related to price, route, or service of an air carrier."  It also violates the federal grant assurances under 49 U.S.C. §§ 47107(a)(1) and (a)(3).  And finally, extending the definition of "signatory airline" to include American is both unnecessary to give the Policy its intended effect, and places nonsensical obligations on air carriers generally.

**A.     The City Does Not and Cannot Articulate Any Legitimate Justification for Discriminating Against American With Its Unnecessarily Expansive Definition of "Signatory Airline," Thus Placing Its Proposed Accommodation Policy In Violation of Federal Law.**

Other than relying on a misunderstanding of this Court's January 8, 2016 Order, the City's Motion is silent as to why it seeks to adopt a new definition of "signatory airline," which materially differs from the definition previously agreed upon and adopted by the parties in their respective Leases.  In setting the permissible scope of a proprietor's power to regulate an airport, the preemption provision of the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713(b)(1),  prohibits the City from enacting or enforcing "a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier."  *Id.*  The City's attempt at adopting and enforcing an accommodation policy that bars American, by name and effect, from providing services or routes that include Love Field runs afoul of the City's limited powers as the proprietor of Love Field.  *See* 49 U.S.C. § 41713(b)(1).

In *American Airlines, Inc. v. Dept. of Transp.*, the Fifth Circuit examined the parameters by which an airport proprietor, like the City here, may restrict a federally-certified air carrier's ability to offer services and routes at Love Field.  *Id.*, 202 F.3d 788, 804-08 (5th Cir. 2000). There, the Court recognized that "airport proprietors—the majority of which are municipalities— were best equipped to handle local problems arising at and around their facilities" such that the preemptive effect of § 41713(b)(1) does "not limit a State, political subdivision of a State . . . from carrying out its proprietary powers and rights."  *Id.* at 805 (internal citations omitted). However, the Court also recognized that such powers and rights are not without limits, especially given that "local proprietors play an 'extremely limited' role in the regulation of aviation."  *Id.* at 806.   Accordingly, an airport proprietor can issue only "reasonable, nonarbitrary, and nondiscriminatory rules that advance the local interest."  *Id.* (internal quotations and citations

omitted); *see also Arapahoe County Pub. Airport Authority v. F.A.A.*, 242 F.3d 1213, 1223 (10th Cir. 2001) (noting that the local proprietor seeking an exception to the ADA's preemption provision bears the burden of proof).  Examining the contours of this "proprietary powers" exception to the ADA preemptive provision, the Court surveyed a number of cases and identified several local interests that justified imposing restrictions on an air carrier's services and routes. These include enacting polices and regulations to reduce noise levels, tempering environmental concerns, and managing air traffic congestion.  *See id.*

In this case, however, the City does not and cannot identify any such legitimate reason for seeking implementation of its Accommodation Policy, which on its face discriminates against American with respect to its ability to offer services and routes at and through Love Field.  Such restrictions do nothing to alleviate noise, pollution, or congestion at Love Field.  Consequently, the City's proposed restrictions are *un*reasonable, arbitrary, and discriminatory.  *See* 49 U.S.C. § 41713(b)(1).  Likewise, these restrictions do nothing to advance the local interest.  *See American Airlines*, 202 F.3d at 806.  Rather, by expressly and deliberately barring American from serving Love Field, the City seeks to stifle, if not eliminate, competition at Love Field and thereby deprive citizens of additional air carrier options, none of which advances the local interest.

For this reason alone, the Court should reject the City's proposed Accommodation Policy in its present form and deny its Motion.

**B.     The City's Proposed Accommodation Policy Also Violates Requisite Federal Grant Assurances Applicable to Love Field.**

As a condition precedent to providing airport development assistance under the Airport Improvement Program, 49 U.S.C. § 47107, *et seq.*, the federal government must receive certain assurances from the airport sponsor; here, the City of Dallas.  *See Southwest Airlines Co. v. U.S. Dept. of Transp.*, 832 F.3d 270, 273 (D.C. Cir. 2016).  Title 49 U.S.C. § 47107(a) sets forth the

statutory sponsorship requirements to which an airport sponsor receiving federal assistance must agree.  *See id.*  These grant assurances state that "the airport will be available for public use on reasonable conditions and without unjust discrimination," and "the airport operator will not withhold unreasonably the classification or status of tenant or signatory from an air carrier that assumes obligations substantially similar to those already imposed on air carriers of that classification or status."  49 U.S.C. §§ 47107(a)(1), (3); *Southwest Airlines Co.*, 832 F.3d at 273; *see generally* FAA Order No. 5190.6B at Chapter 9.

Construing a situation similar to the one presented here, this Court held in *City of Dallas v. Southwest Airlines Co.* that the City would unlawfully discriminate in violation of federal law if it denied Southwest access to Love Field since the City allowed other passenger aircraft of the same general class flown by Southwest to use and service the airport.  *Id.*, 371 F. Supp. 1015 (N.D. Tex. 1973), *aff'd on other grounds*, 494 F.2d 773 (5th Cir. 1974).  Similarly, if American is able to serve Love Field now or in the future, the City is obligated to afford it the opportunity to do so.  *See id.* at 1023 (noting potential users of the airport must be provided "a fair and nondiscriminatory 'opportunity' to use its facilities").  However, the City seeks to strip American of any such opportunity by declaring in definitive fashion that it is ineligible to seek such access under the City's proposed Policy, thus rendering it discriminatory and unlawful.  *See id.*; *see also* 49 U.S.C. § 47107(a).

For this reason, the Court should deny the City's Motion and reject its proposed Policy as currently written.

**C.      Even If Not Illegal, Labeling American as a "Signatory Airline" Under the City's Proposed Policy Serves No Legitimate Purpose and Invites Unintended and Absurd Consequences**

Even if it were not illegal to define "Signatory Airlines" in such a way so as to unlawfully discriminate against an air carrier such as American, the City's proposed Policy sets forth no reason (legitimate or otherwise) for doing so.  Nor does it make any sense to label American as a signatory airline.  As previously explained in American's objection to the City's proposed Accommodation Policy (Doc. No. 4), virtually all of the Policy's requirements and obligations apply only to an "operating airline" – *i.e.*, one that is currently servicing Love Field. For example, only an "operating airline" must provide monthly reports to the City under Paragraph in the Policy's General Terms.  American, as a purported signatory airline with no ongoing operations at Love Field, would have nothing to report.  Likewise, only those airlines that are operating flights in and out of Love Field (*i.e.*, "operating airlines") could possibly be eligible to provide accommodation under Paragraphs 1 and 2 of the Policy's "Procedures" section.

Changing the Policy so that most of the references to "signatory airlines" are eliminated or changed to "operating airlines" would not significantly or substantively alter the Policy, except to eliminate or at least substantially alleviate its discrimination against American.  It also would make greater sense.  For example, as presently written, it defies logic to require "requesting airlines" to contact American in writing to seek accommodation at Love Field since American neither possesses nor operates gates at Love Field and thus cannot offer accommodation.  Nevertheless, Paragraph 1 of the "Procedure" on page 3 of the Policy requires "new entrants" to seek accommodation from "all *signatory* and operating airlines," which by its terms necessarily would include American.  Eliminating reference to "signatory" makes better sense and does not otherwise compromise the Policy's purpose.  Nor does it make any sense to

8

require American to explain to the City why American failed to provide accommodation at Love Field, as required by Paragraph 5 of the Procedure.  If the City's Director of Aviation were to order American to provide accommodation under that Paragraph 5, he would be ordering a futility because American, which operates no gates at Love Field, could not provide accommodation.  Support for omitting such references to "signatory airlines" can be found in Paragraph 14 of the "Procedure" section where reference is again made to the Director ordering an airline to provide accommodation; however, it correctly refers only to his ordering "operating airlines" to furnish accommodation.  That makes sense.

Most of the operative provisions in the "Procedure" section of the proposed Policy refer only to "operating airlines" and omit any reference to "signatory airlines," which also makes sense.  See, for example, the first and third sentences of Paragraph 3, which suggest that the requesting airline must have contacted only "*operating* airlines" to request accommodation and describing only the response of "*operating* airlines" to the request for accommodation, making no reference to "signatory airlines" who may have signed a Lease at some point in the past, but no longer operates any flights at Love Field.  Paragraph 4 of the "Procedure" similarly pertains only to "operating airlines."   The provisions in Paragraphs 9, 10, 11, 12, and 14 of the Procedure make no reference whatsoever to "signatory airlines."   None of the provisions in the Gate Utilization Analysis section of the Policy pertains to a "signatory airline" that is not also an "operating airline."

Because the City's proposed Policy is needlessly discriminatory and because such issues could be easily fixed or otherwise addressed, the Court should reject the Policy's implementation as written, and correspondingly deny the City's Motion.

## P<small>RAYER FOR</small> R<small>ELIEF</small>

For the foregoing reasons, American requests that the Court deny the City's Motion and reject the City's invitation to declare as a matter of law that its proposed Accommodation Policy is lawful and entitled to immediate implementation as presently written.

Respectfully submitted,

*/s/ C. Scott Jones*
_____
Michael V. Powell
  Texas Bar No. 16204400
  mpowell@lockelord.com
C. Scott Jones
  Texas Bar No. 24012922
  sjones@lockelord.com
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
T: (214) 740-8000
F: (214) 740-8800

**ATTORNEYS FOR DEFENDANT
AMERICAN AIRLINES, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all counsel of record via the Court's electronic filing system on June 13, 2018, or by electronic mail.

*/s/ C. Scott Jones*
_____
C. Scott Jones