**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **CITY OF DALLAS,** § | | |
| § | | |
| *Plaintiff*, § | | |
| v. § | | |
| § | | |
| **DELTA AIR LINES, INC., SOUTHWEST** § | Civil Action No. 3:15-cv-02069-K | |
| **AIRLINES CO., VIRGIN AMERICA INC.,** § | | |
| **AMERICAN AIRLINES, INC., UNITED** § | | |
| **AIRLINES, INC.,** § | | |
| § | | |
| *Defendants*. § | | |

**DEFENDANT UNITED AIRLINES, INC.'S BRIEF IN SUPPORT OF ITS RESPONSE
TO PLAINTIFF CITY OF DALLAS'S MOTION FOR SUMMARY JUDGMENT OR
PARTIAL SUMMARY JUDGMENT, AND, IN ADDITION OR IN THE
ALTERNATIVE, MOTION FOR ENTRY OF PERMANENT INJUNCTION**

Eric Gambrell
Texas Bar No. 00790735
egambrell@akingump.com
Patrick G. O'Brien
Texas Bar No. 24046541
pobrien@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201-4675
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

**COUNSEL FOR DEFENDANT
UNITED AIRLINES, INC.**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

   I.     Standard of Review ............................................................................................................ 2

   II.    Consideration of the City's New Accommodation Policy Is Not Proper And Is Not Supported By The Pleadings. ............................................................................................. 3

       A.     The City's New Accommodation Policy should not apply. ......................................... 4

       B.     Summary judgment regarding application of the City's New Accommodation Policy is not supported by the pleadings in any event. ............................................... 4

   III.   Summary Judgment Should Be Denied as to Accommodating Delta for Five Flights and Granted as to Denying Delta Accommodation of Eight Flights. ....................................... 5

       A.     Summary judgment should be denied as to the accommodation of Delta's five flights. 5

       B.     Summary judgment should be granted as to precluding Delta being accommodated to fly eight flights. ........................................................................................................... 9

   IV.   Summary Judgment Should Be Granted On Delta's Counterclaim That The City's Consent To The Southwest-United Sublease Was Proper. .............................................. 10

CONCLUSION ........................................................................................................................... 12

CERTIFICATE OF SERVICE .................................................................................................... 13

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................................... 3

*Bellefonte Reinsurance Co. v. Aetna Cas. & Sur. Co.*,
    590 F. Supp. 187 (S.D.N.Y. 1984) .............................................................................. 3

*Bott v. J.F. Shea Co.*,
    299 F.3d 508 (5th Cir. 2002) ................................................................................ 11, 12

*Conkey v. Reno*,
    885 F. Supp. 1389 (D. Nev. 1995) ............................................................................... 3

*Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    961 F.2d 1148 (5th Cir. 1992) ..................................................................................... 4

*Fontenot v. Upjohn Co.*,
    780 F.2d 1190 (5th Cir. 1986) .................................................................................. 2, 3

*Int'l Shortstop, Inc. v. Rally's, Inc.*,
    939 F.2d 1257 (5th Cir. 1991) .................................................................................. 2, 3

*John v. State of La. (Bd. of Trs. for State Colls. & Univs.)*,
    757 F.2d 698 (5th Cir. 1985) ....................................................................................... 3

*Princeton Univ. v. Schmid*,
    455 U.S. 100 (1982) ..................................................................................................... 3

*Villas at Parkside Partners v. City of Farmers Branch*,
    577 F. Supp. 2d 880 (N.D. Tex. 2008) ........................................................................ 4

**State Cases**

*Tri-County Elec. Coop., Inc. v. GTE Sw. Inc.*,
    490 S.W.3d 530 (Tex. App.—Fort Worth 2016, no pet.) ........................................... 8

**Rules**

FED. R. CIV. P. 56 ............................................................................................................ 1, 2

United Airlines, Inc. ("United") submits this Brief in Response to the City of Dallas's ("City") Motion for Summary Judgment or Partial Summary Judgment, and, in addition or in the alternative, Motion for Entry of Permanent Injunction (the "Motion").

## INTRODUCTION

The City seeks summary judgment on its declaratory judgment claims against all defendants, as well as the counterclaims alleged by Southwest Airlines Co. ("Southwest") and Delta Air Lines, Inc. ("Delta").[1] The aspect of the City's Motion that most directly applies to United is the part regarding the City's declaratory judgment claims and Delta's counterclaim regarding the City's consent to the Southwest-United Sublease (the "Sublease"). United opposes application of the City's newly proposed accommodation policies and procedures (the "New Accommodation Policy"). United disagrees with the City that summary judgment should be granted accommodating Delta for five flights at Love Field. But United is not opposed to and agrees that the City can be granted summary judgment on the City's declaratory judgment claim as to the denial of Delta's demand for eight flights, although not for the same reasons that the City puts forward. In addition, United agrees that the City should be granted summary judgment on Delta's counterclaim concerning the propriety of the City's approval of the Sublease.

The City relies on the New Accommodation Policy as providing all the supposed answers as to the City's declaratory judgment claims regarding Delta's purported requests for accommodation. The City asks this Court to grant summary judgment and declare that, under the New Accommodation Policy, Delta is entitled to accommodation of five flights for a three-year period. But the City's New Accommodation Policy, by its terms, applies only

---

[1] The City also seeks "additional" or "alternative" permanent injunctive relief "to the extent the Court determines it necessary" ECF #437 at 2; *see also id.* at 4 ("if necessary"). The City has not met its burden to support any grounds for the implementation of injunctive relief, including a failure to show irreparable harm, and it is not "necessary" for the Court to issue permanent injunctive relief when there is no basis to require accommodation in this case.

prospectively. And in any event, the City's summary judgment request is not supported by its pleadings. More specifically, the Complaint says nothing about the application of the City's New Accommodation Policy. Rule 56 permits summary judgment where the moving party is entitled to judgment as a matter of law on a claim in its operative pleading. A moving party cannot modify its pleading through its summary judgment motion; but that is what the City is attempting to do here.

Instead, summary judgment should be denied on the City's declaratory judgment claim as to accommodating Delta for five flights and granted as to refusing Delta accommodation of an additional eight flights. Delta is not a new entrant airline and therefore has no basis to seek accommodation under the leases between the City and the signatory airlines (the "Base Leases"). And even if it were a new entrant, Delta did not properly follow the steps for requesting accommodation.

Separately, the City's Motion can and should be granted as to a declaration on Delta's counterclaim that the City's consent to the Sublease was allowed, as it was properly within the City's discretion to approve the Sublease.

## ARGUMENT

I. **Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, a motion for summary judgment should be granted if the pleadings and affidavits "show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When a movant such as Delta files a motion for summary judgment based on summary judgment evidence, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991); *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)

(indicating movant who bears burden on an issue must establish entitlement to summary judgment "beyond peradventure"). "If the moving party fails to discharge this burden, summary judgment must be denied …." *John v. State of La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 708 (5th Cir. 1985). The nonmoving party may defeat a motion for summary judgment by "demonstrating the existence of a genuine dispute of material fact." *Int'l Shortstop*, 939 F.2d at 1265.

In addition, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If reasonable minds could differ as to the import of the evidence," summary judgment must be denied. *Id.* at 250-51.

## II. Consideration of the City's New Accommodation Policy Is Not Proper And Is Not Supported By The Pleadings.

The City's Motion seeks summary judgment on its own declaratory judgment claims regarding Delta's purported requests for accommodation (as well as purported requests for accommodation by American Airlines) based solely on the application of the City's recently proposed New Accommodation Policy. However, the application of the New Accommodation Policy is not a proper basis for summary judgment.[2]

---

[2] As has been shown previously, because the City took no affirmative position in the Complaint regarding its declaratory judgment claims, it failed to bring an initially justiciable claim that could be decided by this Court, or alternatively failed to state a valid claim for relief. *See* Southwest Motion to Dismiss (ECF #394). The Complaint seeks only an advisory opinion from the Court asking for direction on what to do in response to Delta's purported requests for accommodation. The Supreme Court has made clear that this is improper. *Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982) (finding that "simply ask[ing] for review and declin[ing] to take a position on the merits" is insufficient to confer jurisdiction); *see also Conkey v. Reno*, 885 F. Supp. 1389, 1392 (D. Nev. 1995) (dismissing claim for declaratory relief because the complaint failed to indicate "what in particular [the plaintiff] wish[ed] to have the Court declare," reasoning that "[t]he failure to indicate what in particular plaintiffs seek by way of a declaratory judgment is in itself a failure to state a claim"); *Bellefonte Reinsurance Co. v. Aetna Cas. & Sur. Co.*, 590 F. Supp. 187, 193 (S.D.N.Y. 1984) ("[T]he requirements of justiciability are not met if the complainant merely alleges that he is at a loss to know what course to pursue.").

### A. The City's New Accommodation Policy should not apply.

Initially, because the City's proposed New Accommodation Policy is, by its terms, currently ineffective and forward-looking and applicable only to possible, but completely unknown and potentially never occurring, future accommodation requests, the City should not be able to rely on it to decide the decision as to Delta's purported requests for accommodation. Paragraph 9 of the General Terms states that the New Accommodation Policy purports to go into effect upon the Court modifying the preliminary injunction or, alternatively, after the judgment and/or mandate in the case has issued. CITY'S APPX. 334. Any review of the New Accommodation Policy by the Court now is not ripe and would merely result in an advisory opinion. *See Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 880, 883 (N.D. Tex. 2008). The Court simply does not have jurisdiction to provide the City with pre-clearance of its New Accommodation Policy by applying it to Delta's previous, purported accommodation requests and ruling on the propriety of those requests under the new policy.[3]

### B. Summary judgment regarding application of the City's New Accommodation Policy is not supported by the pleadings in any event.

Further, the City's Motion regarding the application of the New Accommodation Policy to its declaratory judgment claims is not supported by the pleadings, precluding summary judgment. "In order to obtain a permanent injunction *or a declaratory judgment*, a party must make his request for such relief in his pleadings." *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1155 (5th Cir. 1992) (emphasis added).

---

[3] As United previously identified, the City's proposed New Accommodation Policy also suffers from other issues that preclude relying on it to provide clarity as to all of the City's accommodation issues. For example, the New Accommodation Policy does not address the provision of the Southwest-United Sublease that restricts any accommodation forced on Southwest to be on gates other than Gates 15 and 17. See United App. 83 (Ex. 80). The City and Delta specifically agreed to this provision. See United Brief in Support of its Response to Delta Air Lines, Inc.'s Motion for Partial Summary Judgment at 27 (ECF #384). As another example of the issues with the City's policies, the adoption of the snapshot theory is contrary to the terms of the Base Leases. Section 4.06(F) requires the City to review monthly tracking reports of gate assignments and usage data "in order to facilitate [the] City's role in the accommodation procedure." United App. 146. There is no discussion of a "snapshot date" in the Base Leases.

The City pleads for declarations regarding the rights and obligations of the City and the airlines, among others. ECF #1. The City does not seek a declaration in the Complaint that Delta be affirmatively entitled to accommodation of five flights for three years. Nor does the City plead anything about the recently proposed New Accommodation Policy. In fact, all that the City pleads, over and over, is that it does not know how to apply the applicable accommodation provisions. That is not the claim for which the City now moves for summary judgment.

The City cannot base summary judgment on the application of the New Accommodation Policy because it has not pled such a claim.

### III. Summary Judgment Should Be Denied as to Accommodating Delta for Five Flights and Granted as to Denying Delta Accommodation of Eight Flights.

However, while United believes that it would not be proper to rule on the City's Motion as to its declaratory judgment claim based on the application of the City's New Accommodation Policy, United submits that, even if it could, summary judgment must still be denied as to the accommodation of Delta's five flights but granted in favor of the denial of accommodation as to Delta's additional eight flights. As a separate matter, as discussed below, United is not opposed to a consideration or finding in favor of the City's consent to the Southwest-United Sublease, regarding Delta's counterclaim.

#### A. Summary judgment should be denied as to the accommodation of Delta's five flights.

The City's Motion should be denied to the extent it requests a declaration that Delta must be accommodated to fly five flights because Delta has no right to such accommodation, for multiple reasons.

First, the City greatly confuses issues by arguing in its Motion that Delta should be accommodated for the five flights that it is currently flying when it is not clear that Delta is a

"new entrant" carrier that can be accommodated. If Delta is not a new entrant carrier, then it is impossible to declare that Delta must be accommodated for *any* flights (beyond the myriad other reasons it cannot be accommodated). As Delta has been an operating carrier from Love Field since 2009, it is necessarily *not* a "new entrant" carrier. United App. 3, 27 (Duebner Dep. at 41:21-25; Shannon Dep. at 114:4-6).

Second, even if it were possible that Delta qualified as a new entrant that could possibly be accommodated, there is no basis to declare that Delta must be accommodated for flights based on a purported June 2014 request for accommodation that Delta abandoned and/or was already accommodated for. Delta entered into voluntary contracts with United and Southwest precluding any argument for accommodation based on the June 2014 request.

More specifically, after Delta's purported June 13, 2014 accommodation request, on September 19, 2014 the City initially stated United would need to accommodate five Delta flights per day. United App. 61-62 (Ex. 56).[4] However, **ten days later**, the City exercised its clear right to rescind that demand. United App. 117-18 (Ex. 327). According to the City's letter, this decision was based on "the revised schedule of gate usage for United's two gates at DAL submitted as part of the response," and "[g]iven the gate usage, the City acknowledges United cannot accommodate Delta Airlines." *Id.*; *see also* United App. 6 (Duebner Dep. at 113:22-25). According to Section 4.06(F) of the Base Leases, that decision should have been the end of the accommodation procedure for this purported accommodation request, as the demand was rescinded by the City within thirty days:

> *Unless the Director rescinds such selection* [requiring an airline to accommodate] *within said thirty (30) day period*, the Signatory Airline will accommodate the Requesting Airline by sharing a portion of its Leased Premises ….

---

[4] Unless otherwise noted, references to Exhibits are to the Parties' running Exhibit numbers, including as they were used at the preliminary injunction hearing.

United App. 147 (Ex. 638 at § 4.06(F)(4)) (emphases added).

Following the news that the City had rescinded its accommodation decision, Delta continued to operate flights out of Love Field, just as it had since 2009. It did so not by virtue of a City-mandated accommodation, but by its own contracting decision. Less than two weeks after the City rescinded its accommodation decision, on October 10, 2014 Delta entered into a gate use license agreement and facilities use license agreement with Southwest that permitted Delta to fly five flights per day through January 6, 2015. United App. 24, 40-41, 198 (Shannon Dep. at 76:3-11; ECF #212 at 65:7-66:7; United Appendix Ex. 14 (SWA_00057429)). Again on January 6, 2015, Delta entered into a gate use license agreement, this time with United. United App. 35, 236-51 (ECF #211 at 216:9-12; Ex. 770). And Delta also entered into another gate use license agreement with Southwest on July 2, 2015. United App. 36, 212-26 (ECF #211 at 263:20-25; DELTA0039562). These gate use license agreements allowed Delta to continue flying five flights per day at Love Field. Delta has previously acknowledged to this Court that it "signed these agreements—even though the economic terms [*allegedly*] did not comply with DOT requirements." United App. 229 (ECF #23 at 18). Also, Delta entered into these agreements *after* it sent a letter to the City stating that the City's rescission of the accommodation decision was improper and demanding that the City require accommodation indefinitely. United App. 5, 89-97 (Duebner Dep. at 108:17-24; Ex. 84). Eight days after sending that letter, Delta *chose* to enter into the first gate use license agreement with Southwest. Delta made the voluntary commercial decision to enter into and become a party to private business contracts with United and Southwest as its chosen means to "allow" it to operate those very five flights, rather than any purported rights under Section 4.06 of the Base Leases. *See* United App. 233 (ECF #346 at ¶ 70).

Each time Delta signed the documents that allowed it to operate its schedule at Love Field, it chose a *voluntary* accommodation through a contractual agreement. United App. 40-41 (ECF #212 at 65-66). Delta therefore waived any right (if any) to proceed with a forced accommodation under any then-existing 2014 request for accommodation. United App. 8, 9 (Duebner Dep. at 128:10-12 ("In our opinion, Delta was accommodated voluntarily ever since the first request had come in to us."); Duebner Dep. at 131:4-5 ("Delta has not interrupted their five daily flights to Atlanta throughout this entire process.")). Accordingly, when Delta entered into the voluntary contracts, any purported pending request for accommodation was rendered moot and unenforceable.

At minimum, fact issues persist as to whether Delta's decisions constituted abandonment, waiver, and/or estoppel of Delta's 2014 purported accommodation request for five flights. *See Tri-County Elec. Coop., Inc. v. GTE Sw. Inc.*, 490 S.W.3d 530, 555 (Tex. App.—Fort Worth 2016, no pet.) ("Waiver is ordinarily a fact issue…. [W]e conclude that the record shows at least a fact issue as to whether Tri-County abandoned its request …."). Therefore, whether or not the City's New Accommodation Policy applies and controls the decision, there is no basis to grant summary judgment to the City that Delta be accommodated for five flights.

Third, the City's requested summary judgment permitting accommodation of Delta's five flights for three years is also improper because the minimum three-year accommodation period under the New Accommodation Policy is at odds with the language of the Base Leases. The Base Leases guarantee twenty years of preferential use to the signatory airlines. United App. 141. There is nothing in the Base Leases that permit such a long accommodation, or that speak to any minimum accommodation period, and the City does not provide any justification for that

length beyond conjecture. At a minimum, there are fact issues regarding the length of any accommodation period, if any, that must preclude summary judgment on this point.

### B. Summary judgment should be granted as to precluding Delta being accommodated to fly eight flights.

As to Delta's purported additional request for accommodation of eight flights, on which the City requests summary judgment on its own declaratory judgment claim denying such accommodation, United agrees with the City's requested result, but not for the reasons stated in the City's Motion.

The simple fact is that Delta did not request accommodation of the additional eight flights as alleged, which fact supports summary judgment in favor of the City denying Delta accommodation. The accommodation process set forth in the Base Leases requires a Requesting Airline to "demonstrate[] to the DOA that it has contacted *all* airlines and has exhausted all reasonable efforts to secure accommodations." United App. 146 (Ex. 638 at § 4.06(F)(2) (emphasis added)). As just an example of why Delta should not be accommodated for eight flights, Delta did not contact *all* carriers operating at Love Field seeking accommodation—specifically, there is no evidence that has ever been presented that Delta ever contacted United under the February 2015 purported request for accommodation. United App. 112-15 (Ex. 160) (letter to Southwest, Virgin America, and SeaPort Airlines, but *not* United); United App. 34 (ECF #211 at 183:4-6) ("According to the lease, we are supposed to ask the signatory carriers, but normally, you would also ask the sublessees."). Mark Duebner, the City's Director of Aviation, testified that the February 2015 request must be "consider[ed] … a new accommodation request with a new snapshot date." United App. 11 (Duebner Dep. at 142:18-22); *see also* United App. 7 (Duebner Dep. at 117:20-24). Therefore, Delta could not rely on the earlier, June 2014 purported (and waived) request for accommodation to support this new

9

purported request. It is not possible for Delta to be accommodated for eight flights under this purported February 2015 request because Delta did not make a proper request for accommodation. Summary judgment for the City is therefore proper to the extent the City requests a declaration that Delta cannot be accommodated for eight additional flights.

Further, the City sufficiently shows that both the current schedule at Love Field and the February 2015 schedule, including the planned or announced expansions of service by Southwest, would not support Delta flying an additional eight flights. Summary judgment should therefore be granted that Delta not be accommodated under the February 2015 purported request for accommodation.

## IV. Summary Judgment Should Be Granted On Delta's Counterclaim That The City's Consent To The Southwest-United Sublease Was Proper.

In addition to arguing about Delta's request for accommodation, the City also requests summary judgment regarding *Delta's* declaratory judgment claim contending that the City's consent to the Southwest-United Sublease of Gates 15 and 17 was proper. United supports summary judgment as to that issue, as it directly affects United's rights.

Nothing in the Base Leases prohibits profiting or sets a cap on the aggregate monetary terms of a sublease. While Delta has previously pointed to a 2005 Love Field Competition Plan Update and argued that it limits the amount for which a party can sublease gates, there is nothing to indicate United and Southwest were parties to or even knew about such a restriction, if it even could apply or be enforced against either of them. United App. 17-19 (Gebo Depo. 316:13-318:15). And even if the 2005 Update purports to limit subleasing transaction fees (which it does not), the language of the City's 2009 Competition Plan Update applies only to forced, rather than voluntary, accommodation, and not to subleases to signatory airlines. Specifically, the 2009 Update states that subleasing "carriers are limited to charging a reasonable allowance for

administration, as set forth [in Section 4.06(F)]." United App. 106 (Ex. 98). But Section 4.06(F) deals with accommodation of new entrant airlines, not subleasing to other existing carriers like Southwest. *See* United App. 46-49 (ECF #213 at 88-91). Further, both the City and the United States Department of Justice approved the Sublease knowing that it necessarily involved a transaction of more than $75 million, as it had to be approved under the Hart-Scott-Rodino Act. United App. 4, 25-26, 28, 42, 50-54, 55-56, 57, 58 (Duebner Dep. at 80:3-10; Shannon Dep. at 106:15-107:5, 270:3-16; ECF #212 at 280:4-13; ECF #213 at 97:1-101:16, 145:22-146:5, 162:12-22, 255:1-13). They did so with the 2009 Update in place. In fact, even Delta knew that Southwest was paying more than 15% of its administrative costs, as it knew that the transaction required Hart-Scott-Rodino review. United App. 28 (Shannon Dep. at 270:3-16). And as the City makes clear in its Motion, the City had discretion to consent to the Sublease, and Delta has no basis to challenge it. ECF #437 at 14-19.

Moreover, Delta expressly acknowledged the validity of the Sublease in the July 2, 2015 Gate Use License Agreement and therefore summary judgment is proper as to the City's consent for this reason as well. Delta contractually agreed that any rights it had under the Gate Use License Agreement were "subject to" the Sublease and expressly promised to "comply with the Sublease." United App. 219. Delta operated under, and benefited from, that gate use license agreement until the Court entered its preliminary injunction. Delta therefore has no standing to challenge, and has waived and is estopped to argue, an independent contract between separate parties, especially one that Delta has separately contractually *agreed* to comply with, and accordingly there is no basis for Delta to argue about the City's consent. *See Bott v. J.F. Shea Co.*, 299 F.3d 508, 512 (5th Cir. 2002) ("The doctrine of quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position [it has] previously taken

[and] applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit."). Summary judgment is therefore proper in favor of the City as to its consent to the Sublease.

## CONCLUSION

United requests that the Court deny the City's Motion as to the City's declaratory judgment claims regarding accommodating Delta for five flights, and grant the City's Motion requesting declaratory judgment that Delta is not entitled to accommodation for an additional eight flights, but for the reason that Delta should not be accommodated, not due to application of the City's proposed New Accommodation Policy. United also does not oppose that the City's Motion be granted as to Delta's declaratory judgment counterclaim such that the Court declares that the City's consent to the Southwest-United Sublease was proper. United opposes the granting of any injunctive relief. The remainder of the City's Motion applies to Southwest's and Delta's counterclaims and therefore United does not directly address these arguments in this Response.

Respectfully submitted,

*/s/ Eric Gambrell*
Eric Gambrell
Texas Bar No. 00790735
egambrell@akingump.com
Patrick G. O'Brien
Texas Bar No. 24046541
pobrien@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201-4675
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

**COUNSEL FOR DEFENDANT**
**UNITED AIRLINES, INC.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2018, I electronically filed the foregoing document with the Clerk of Court for the United States District Court for the Northern District of Texas using the electronic case filing system of the Court. Service on all attorneys of record who are Filing Users will be automatically accomplished through Notice of Electronic Filing.

*/s/ Patrick G. O'Brien*