**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CITY OF DALLAS,** | § | |
| | § | |
| *Plaintiff*, | § | |
| **v.** | § | |
| | § | |
| **DELTA AIR LINES, INC.,** | § | **Civil Action No. 3:15-cv-02069-K** |
| **SOUTHWEST AIRLINES CO.,** | § | |
| **VIRGIN AMERICA INC.,** | § | |
| **AMERICAN AIRLINES, INC., and** | § | |
| **UNITED AIRLINES, INC.,** | § | |
| | § | |
| *Defendants*. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

---

**SOUTHWEST'S BRIEF IN SUPPORT OF ITS MOTION FOR**
**PARTIAL SUMMARY JUDGMENT**

---

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................... 3

I.    Delta's claims based on Article 14 of the Lease are preempted by federal law (Claims I &
      IV). ..................................................................................................................3

      A.    Delta's claims are expressly preempted by the Airline Deregulation Act. ..............4

      B.    Delta's claims are impliedly preempted under the doctrine of conflict
            preemption. ........................................................................................................10

II.   Delta's claims based on Article 14 fail as a matter of basic contract principles (Claims I
      & IV). ...............................................................................................................16

      A.    There is no clear and unequivocal statement of intent that any provision of
            Article 14 benefits new entrants, let alone Delta. ..................................................16

      B.    To the extent the Lease incorporates federal law, it also incorporates
            federal law's enforcement scheme, which is exclusively administrative. .............17

III.  Delta's declaratory judgment claim attempting to void the Sublease fails as a matter of
      law (Claim II)..................................................................................................18

IV.   Delta's tortious interference with prospective business relations claim fails as a matter of
      law (Claim VII)................................................................................................19

      A.    Delta's tortious interference claim is expressly preempted by the ADA...............19

      B.    Delta's tortious interference claim is non-cognizable because Texas does
            not recognize a tortious interference claim for a delayed business
            relationship........................................................................................................19

V.    Delta cannot show a genuine issue of material fact for key elements of its tortious
      interference claim (Claim VII)........................................................................20

      A.    There is no evidence of a reasonable probability that Delta would have
            entered into a business relationship with a third party...........................................21

      B.    There is no evidence that Southwest committed an independently tortious
            or unlawful act. ..................................................................................................22

      C.    There is no evidence that Delta suffered any actual damage or loss. ....................23

CONCLUSION....................................................................................................... 23

**TABLE OF AUTHORITIES**

**Cases**

*A.C.L. Computs. & Software, Inc. v. Fed. Express Corp.*, No. 15-cv-04202-HSG, 2016 U.S. Dist. LEXIS 29001, at *12 (N.D. Cal. Mar. 4, 2016) ........................................................ 9

*Am. Airlines v. Wolens*, 513 U.S. 219 (1995) ................................................. 5, 6, 8, 19

*Am. Airlines, Inc. v. DOT*, 202 F.3d 788 (5th Cir. 2000) ............................................ 10

*Arizona v. United States*, 567 U.S. 387 (2012) ..................................................... 10, 11

*Astra USA v. Santa Clara County*, 563 U.S. 110 (2011) ............................................ 14, 18

*Barber Auto Sales, Inc. v. United Parcel Servs.*, 494 F. Supp. 2d 1290 (N.D. Ala. 2007) ........... 6

*Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005) ........................................ 14

*Brown v. United Airlines, Inc.*, 720 F.3d 60 (1st Cir. 2013) ....................................... 4, 10

*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) ................................... 10, 12, 13

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909 (Tex. 2013) .......................... 21

*Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp. 3d 606 (N.D. Tex. 2016) .............. 3, 19

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ..................................... 11, 15

*Davis v. United Air Lines, Inc.*, 575 F. Supp. 677 (E.D.N.Y. 1983) ................................. 13

*Deerskin Trading Post v. UPS of Am.*, 972 F. Supp. 665 (N.D. Ga. 1997) (Jan. 29, 1997) ........... 6

*Delta Airlines v. Black*, 116 S.W.3d 745 (Tex. 2003) ................................................ 6

*Farina v. Nokia, Inc.*, 625 F.3d 97 (3d Cir. 2010) ................................................ 11

*Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069 (5th Cir. 2002) ............................ 17

*Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400 (5th Cir. 2015) .............. 21

*Grochowski v. Phx. Constr.*, 318 F.3d 80 (2d Cir. 2003) ........................................ 13, 14

*Harris County Texas v. MERSCORP Inc.*, 791 F.3d 545 (5th Cir. 2015) ............................... 18

*Hodges v. Delta Airlines*, 44 F.3d 334 (5th Cir. 1995) ........................................... 4, 8

*In re Am. Airlines, Inc.*, Nos. 3:04-MD-1627-D, 3:04-CV-0750-D, 3:04-CV-1148-D, 3:04-CV-2564-D, 3:05-CV-1040-D, 2005 U.S. Dist. LEXIS 37739, at *10 (N.D. Tex. Dec. 7, 2005) ...................................................................................... 5, 9

*In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457 (3d Cir. 2015) .......................................... 10, 11, 12, 15

*McCasland v. City of Castroville*, 514 Fed. App'x 446 (5th Cir. 2013) ........................... 3, 17

*Morales v. TWA*, 504 U.S. 374, 384 (1992) ............................................................ 4

*Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472 (2013) ................................................... 16

*New Hampshire Motor Transport Ass'n v. Rowe*, 448 F.3d 66 (1st Cir. 2006) ........................... 6

*Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596 (5th Cir. 2010) .............................................. 4

*Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364 (2008) ............................................ 9

*Shrem v. Sw. Airlines Co.*, No. 15-cv-04567-HSG, 2017 U.S. Dist. LEXIS 62865, at *7
   (N.D. Cal. Apr. 25, 2017) ...................................................................................... 7, 8

*Smith v. Comair, Inc.*, 134 F.3d 254 (4th Cir. 1998) ................................................... 5

*Strange v. Flagstar Bank, FSB*, No. 3:11-CV-2642-B, 2012 U.S. Dist. LEXIS 39066, at
   *11 (N.D. Tex. Mar. 22, 2012) ........................................................................... 13, 14

*Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563 (Tex.
   App.—Austin 2007, pet. denied) ......................................................................... 19, 20

*Travel All Over the World v. Kingdom of Saudi Arabia*, 73 F.3d 1423 (7th Cir. 1996) ................ 6

*Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726 F.3d 524 (5th Cir. 2013) ....... 10

*Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001) .................................... 22

*Wis. Dep't of Indus., Labor & Human Rels. v. Gould, Inc.*, 475 U.S. 282 (1986) ................ 11

## **Other Authorities**

14 C.F.R. 16.1 ....................................................................................................... 12

49 U.S.C. § 41713(b)(1) ......................................................................................... 4

49 U.S.C. § 47101 .................................................................................................. 13

49 U.S.C. 47107(g)(1)(A) ...................................................................................... 12

Restatement (2d) of Contracts, § 311 (1981) ......................................................... 16

U.S. Const. art. VI, cl. 2 .......................................................................................... 4

Wright Amendment Reform Act of 2006 ("WARA"), Pub. L. No. 109-352 ....................... 15, 16

## <u>INTRODUCTION</u>

This case is a dispute over the meaning of a single section of the Lease, 4.06, which concerns the accommodation of new entrant airlines at Love Field. From the outset, however, Delta has discussed everything but the terms of Section 4.06—an asset transfer agreement between Southwest and United; withdrawn letters from the DOT; federal grant assurances; a competition plan submitted to the federal government; and even a slot transaction regarding two airports elsewhere in the country. Because the only cognizable dispute in this case concerns property rights under the Lease, Southwest moves for summary judgment in its favor on Delta's claims seeking permission to act as a private attorney general for the DOT and regulate the operation of Love Field.[1]

***First***, Delta's claims based on Article 14 of the Lease (Claims I & IV) are preempted by federal law. The Airline Deregulation Act (the "ADA") expressly preempts them, and federal aviation statutes impliedly preempt them. ***Second***, those same claims fail as a matter of basic contract principles. Delta has no standing to enforce provisions in Article 14 or to seek enforcement of obligations derived from federal law outside the context of an agency administrative proceeding. ***Third***, Delta's declaratory judgment claim attempting to void the sublease between Southwest and United (the "Sublease") (Claim II) fails as a matter of law. Delta has no substantive right of action to seek any declaration related to the Sublease. ***Fourth***, Delta's tortious interference with prospective business relations claim (Claim VII) fails as a matter of law and fact. The claim is expressly preempted by the ADA and based on a non-cognizable theory of an undue delay in

---

[1] For reasons argued in prior briefing, as well as various reasons offered below, even Delta's 4.06(F) claims fail. *See infra* Section I.A (discussing how *any* contract claim brought by a third-party beneficiary and related to routes and services would be expressly preempted under the ADA).

contracting. Further, Delta has no evidence showing a genuine issue of material fact on key elements of the claim.[2]

## <u>BACKGROUND</u>

Southwest has described the background of the case in prior briefing. Dkt. No. 364 (Mot. for Partial Judgment on the Pleadings); Dkt. No. 381 (Resp. to Delta's Mot. for Partial Summ. J.); Dkt. No. 461 (Resp. to City's Mot. for Partial Summ. J.). It fully incorporates those facts by reference here.

Southwest's primary arguments in this Motion concern Delta's attempts to enforce federal law through state-law causes of action, most obviously Delta's claim for breach of Article 14. In that claim, titled Counterclaim/Cross-Claim IV, Delta alleges that Southwest has violated two different provisions of Article 14:[3] Section 14.03, in which Southwest agreed that its use of the airport (and its activities and operations there) would "comply with and conform to" certain types of federal law;[4] and (2) Section 14.09, titled "Rights Reserved to the City," that subjects the Lease

---

[2] Southwest is aware that Delta's motion to convert Southwest's 12(c) motion to a summary judgment motion is still pending before the Court. As explained in Southwest's response to that motion (Dkt. No. 411), Southwest does not believe that conversion is necessary or appropriate. However, if the Court decides to convert Southwest's 12(c) motion, Southwest does not read Local Rule 56.2 as precluding the filing of this Motion because the Rule does not prohibit a party having two summary judgment motions considered by the Court if one is "converted" rather than filed. Should the Court disagree, Southwest respectfully requests leave to file this Motion, as the Local Rules allow. Northern District courts permit the filing of an additional summary judgment "when it will not burden the court or the parties, and such a motion may in fact save the time and expense of an unnecessary trial." *Bartolowits v. Wells Fargo Bank, N.A.*, Civil Action No. 3:13-CV-4666-D, 2016 U.S. Dist. LEXIS 156080, at *6 (N.D. Tex. Nov. 10, 2016). As to burden, two dispositive motions—a motion to dismiss or 12(c) motion and motion for summary judgment—is standard in federal cases. As to trial considerations, disposing of Delta's claims will certainly save time and expense. What's more, denying leave to Southwest would not serve the purposes behind Rule 56.2—"circumventing page limits" and "preventing a second bite at the apple" after the court has ruled on an initial motion. *Id.* The combined page count of Southwest's 12(c) motion and this Motion does not exceed 50 pages. Nor is there a "second bite at the apple." The Court has not ruled on the 12(c) motion, and this Motion addresses different legal issues, with a different procedural standard, than the 12(c) motion.

[3] Dkt. No. 346 ¶¶ 140, 142, and 149.

[4] App. 67–68 (Lease) § 14.03.

**SOUTHWEST'S BRIEF IN SUPPORT OF ITS MOTION FOR**                                    **PAGE 2**
**PARTIAL SUMMARY JUDGMENT**

to the federal grant assurances but only "insofar as they are applicable to the terms and provisions" of the Lease.[5] Neither Delta nor new entrants are mentioned in any part of Article 14.

Less clear is the legal basis for Delta's declaratory judgment claim related to accommodation, Counterclaim/Cross-Claim I. But it too rests on alleged violations of federal law or policy (and Delta's misconceptions of them).[6] Because Delta has no private right of action to enforce any federal law or policy related to aviation, that claim, if viable at all, rests on rights allegedly contained in Article 14 of the Lease.

Finally, Southwest addresses several other claims by Delta—to declare the sublease between Southwest and United void; and tortious interference with prospective business relations. Rather than summarizing those claims for the Court here, Southwest describes the relevant sections of Delta's pleading as necessary below.

## <u>ARGUMENT</u>

I.    **Delta's claims based on Article 14 of the Lease are preempted by federal law (Claims I & IV).**

It is undisputed that Delta has no private right of action to enforce any of the (misconstrued) federal law that underlies several of its claims.[7] Delta has never seriously disputed this,[8] and the case law unanimously supports Southwest's position. *See McCasland v. City of Castroville*, 514 Fed. App'x 446, 448-49 (5th Cir. 2013).[9] Despite lacking an enforcement right, Delta attempts an

---

[5] App. 73 § 14.09.

[6] *See, e.g.*, Dkt. No. 346 ¶ 104, 106.

[7] To be clear, Southwest also disputes that certain sources cited by Delta have the force of law at all, namely the DOT letters and cherry-picked statements from the City's Competition Plan.

[8] For example, at Delta's request, a Northern District court recently held that several federal airline regulations did not allow a private party to sue. *Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp. 3d 606, 618 (N.D. Tex. 2016), *aff'd*, 682 Fed. Appx. 310 (5th Cir. 2017).

[9] *See also Northwest Airlines, Inc. v. County of Kent, Mich.*, 955 F.2d 1054, 1058 (6th Cir. 1992), *aff'd*, 510 U.S. 355 (1994) ("[C]ongress intended that there would be no private right of action under" the AAIA; instead, "[C]ongress intended to establish an administrative enforcement scheme."); *Interface Group, Inc. v. Mass. Port Auth.*, 816 F.2d 9, 14-15 (1st Cir. 1987) ("We therefore agree with those courts that have held that [49 U.S.C. § 47107(a)(4)86] does not create a private right of action.").

end-run: Shoehorning a federal right of action into a state-law breach of contract claim. But that effort runs headlong into the Supremacy Clause of the U.S. Constitution, which provides that federal law "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. Preemption under the Supremacy Clause comes in two forms, express or implied. Here, both forms bar Delta's claims that seek to enforce obligations derived from federal law.

## A.     Delta's claims are expressly preempted by the Airline Deregulation Act.

Congress enacted the Airline Deregulation Act ("ADA") "to dismantle federal economic regulation" of airlines. *Hodges v. Delta Airlines*, 44 F.3d 334, 335 (5th Cir. 1995). "To prevent the states from frustrating the goals of deregulation by establishing or maintaining economic regulations of their own," Congress included an express preemption provision. *Id.* That provision provides that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ." 49 U.S.C. § 41713(b)(1).

ADA preemption applies not only to enactments of a state legislature but also state common-law claims. *See, e.g.*, *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 599 (5th Cir. 2010). "After all, courts adjudicating common-law claims can create just as much uncertainty and inconsistency in a carefully calibrated federal regulatory framework as can state legislatures enacting statutes or state agencies promulgating regulations." *Brown v. United Airlines, Inc.*, 720 F.3d 60, 66 (1st Cir. 2013). Further, "The Supreme Court has interpreted the preemptive effect of the ADA broadly. Any state law, including state common law, having a connection with or reference to airline prices, routes, or services is preempted unless the connection or reference is too tenuous, remote, or peripheral." *Onoh*, 613 F.3d at 599 (quoting *Morales v. TWA*, 504 U.S. 374, 384, 390 (1992)).

Thus, the first step of the inquiry here is whether Delta's state common-law claims based on Article 14 are "related to" an air carrier's "price, route, or service." Under the Supreme Court's expansive view, Delta's claims plainly fall within the scope of ADA preemption, as they relate to both Southwest's and Delta's routes and service. Delta repeatedly alleges that the federal grant assurance and Competition Plan obligations concern "service" at Love Field.[10] And more generally, the crux of *all* of Delta's claims have "a connection with" the routes and services offered by Southwest and Delta at Love Field; they cannot be adjudicated without looking at flight schedules.

That is not the end of the inquiry, however, because the Supreme Court has also carved out a narrow breach-of-contract exception to the ADA's broad preemptive effect for claims "seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Am. Airlines v. Wolens*, 513 U.S. 219, 221 (1995). But this so-called *Wolens* exception has no application to Delta's claims.

State contract claims "escape preemption only when courts are confined to the terms of the parties' agreement." *Smith v. Comair, Inc.*, 134 F.3d 254, 258 (4th Cir. 1998). Courts continue to find contract claims preempted under the ADA when the claim "could only be adjudicated by reference to law and policies external to the parties' bargain" or "when the plaintiff sought to enlarge the airline's obligations and seek additional remedies not available under the contract's terms." *In re Am. Airlines, Inc.*, Nos. 3:04-MD-1627-D, 3:04-CV-0750-D, 3:04-CV-1148-D, 3:04-CV-2564-D, 3:05-CV-1040-D, 2005 U.S. Dist. LEXIS 37739, at *10 (N.D. Tex. Dec. 7, 2005). In other words, the ADA permits only "routine breach of contract claims." *Wolens*, 513 U.S. at 233.

---

[10] *See, e.g.*, Dkt. No. 346 ¶¶ 6, 27, 31.

First, by seeking exclusively equitable relief for its breach of contract claims, Delta seeks to enlarge or enhance the terms of the Lease based on external laws or policies.[11] *See, e.g.*, *Deerskin Trading Post v. UPS of Am.*, 972 F. Supp. 665, 673 (N.D. Ga. 1997) (Jan. 29, 1997) ("[T]he extraordinary award of injunctive relief would remove a contract claim from the realm of routine breach of contract actions.'") (citing *Wolens*); *Barber Auto Sales, Inc. v. United Parcel Servs.*, 494 F. Supp. 2d 1290, 1294 (N.D. Ala. 2007) (holding that claim for injunctive relief and for equitable rescission of a contract is preempted "because it would constitute an enlargement or enhancement of the parties' bargain").[12] "[T]he force of a court order requiring the performance of terms of a contract provides an extra dimension that comes from a source external to the contract, especially . . . where Plaintiff seeks specific performance." *Deerskin Trading Post*, 972 F. Supp. at 675 (March 20, 1997).[13] Here, specific performance, and other equitable relief, is all Delta seeks;[14] it has no claims for the "routine" compensatory relief that *Wolens* conceivably allows.[15]

Delta seeks to enlarge or enhance the terms of the Lease in yet another way. Even if Delta's "incorporation by reference" argument had merit, the law incorporated ***provides no private right of action***. Thus, "[n]othing in the contract entitles [Delta] to the external remedy" of private enforcement of the federal grant assurances or other sources of federal aviation law. *Delta Airlines*

---

[11] This particularly argument is not limited to Delta's claims under Article 14. Delta's claims under Section 4.06(F) also seek only equitable relief.

[12] Although both of these cases apply the preemption provision related to trucking under the Federal Aviation Administration Authorization Act of 1994, "[b]ecause the preemption provisions of the ADA and the FAAAA contain similar language, courts that have interpreted the preemptive scope of the FAAAA have relied on cases that address the preemptive scope of the ADA." *Barber Auto Sales, Inc. v. United Parcel Servs.*, 494 F. Supp. 2d 1290, 1293 (N.D. Ala. 2007) (citing *New Hampshire Motor Transport Ass'n v. Rowe*, 448 F.3d 66, 80 (1st Cir. 2006)).

[13] Although this opinion has the same reporter number and pagination, it is separate from the prior *Deerskin Trading* citation.

[14] *See, e.g.*, Dkt. No. 346 ¶¶ 135–36 (Claim III); 151–52 (Claim IV).

[15] *See also Travel All Over the World v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 n.8 (7th Cir. 1996) (holding that punitive damages represents an "enlargement or enhancement of the bargain" and thus "*Wolens* suggests that the claim for punitive damages is preempted by the ADA, provided that it relates to airline rates, routes or services.").

*v. Black*, 116 S.W.3d 745, 755 (Tex. 2003). As the Texas Supreme Court emphasized—and Delta itself argued in 2003—the federal laws allegedly "incorporated as part of the contract, provide the procedure and remedy . . . and therefore preclude the additional remedies" that a plaintiff might seek through a state law claim. *Id.*; *see also Shrem v. Sw. Airlines Co.*, No. 15-cv-04567-HSG, 2017 U.S. Dist. LEXIS 62865, at *7 (N.D. Cal. Apr. 25, 2017) (currently on appeal to the Ninth Circuit) (finding that "Plaintiffs' breach of contract claim would thus create an end run around the implied right of action doctrine" and "declin[ing] to apply the *Wolens* exception to permit private enforcement" of the federal regulations at issue).

Delta's breach of contract claim under Article 14 (and related declaratory judgment claim)[16] fall outside the *Wolens* exception in one final way: Delta's claims seek to enlarge the terms of the Lease because to determine the meaning of the grant assurances and Competition Plan, the Court will necessarily have to look to external laws or policies.

Delta alleges that Southwest has violated two different provisions of Article 14:[17] Section 14.03, in which Southwest agreed that its use of the airport would "comply with and conform to" certain types of federal law;[18] and (2) Section 14.09, titled "Rights Reserved to the City," which subjects the Lease to the federal grant assurances but only "insofar as they are applicable to the terms and provisions" of the Lease.[19]

With respect to Section 14.03, the Court cannot adjudicate that claim without looking outside the contract to determine the existence and scope of the legal obligations to which

---

[16] To the extent Delta's declaratory judgment claims are based on Article 14, the same analysis holds true. A declaratory judgment is a procedural vehicle. In other words, Delta cannot obtain declaratory relief unless it has a private right of action under federal law or rights under the Lease. Federal law provides no private right of action, and it has no rights under the Lease for all the reasons given here and in Southwest's prior briefing.

[17] Dkt. No. 346 ¶¶ 140, 142, and 149.

[18] App. 67–68 § 14.03.

[19] App. 73 § 14.09.

**SOUTHWEST'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**          **PAGE 7**

Southwest has allegedly agreed to comply. The same is true of Section 14.09. At the outset, Delta has not argued or shown why the grant assurances it references are "applicable to the terms and provisions of the Lease" absent a directive from the federal government.[20]

But setting that aside—and assuming (for the sake of argument) that Delta is actually an intended beneficiary of promises that make no mention of new entrants or Delta—the meaning and scope of the grant assurances can only be adjudicated by reference to agency decisions and policy guidance that exist outside the terms of the contract. *See Shrem*, 2017 U.S. Dist. LEXIS at *6 ("Relying on *Wolens*, Plaintiffs argue that Defendant explicitly agreed that the contract was subject to federal law and it failed to abide by the federal notice requirements. Under this interpretation, the Court must look to law 'external to' the Contract of Carriage and determine whether Defendant violated federal law."). Indeed, Delta relies entirely on those sources in pressing its claim: the DOT letters, a 1999 agency report, FAA orders, and a series of FAA decisions.[21] Put differently, whether incorporated by reference or not, any contract claim that requires a court to look to agency regulations and policy goes far outside the "privately ordered obligations" contemplated by *Wolens*. 513 U.S. at 228.

In short, Delta has disguised a "breach of federal law" claim as a breach of contract claim. Even couched as a breach of contract, however, the claim is a far cry from the "routine" contract claims that fall within the narrow *Wolens* exception. 513 U.S. at 233. As Delta argued in *Hodges v. Delta Airlines*, 44 F.3d 334 (5th Cir. 1995), enforcement of this kind of state law claim "would result in significant *de facto* regulation" of airlines by judicial fiat. *Id.* at 339.

---

[20] In fact, federal law, namely the Wright Amendment Reform Act of 2006 ("WARA"), Pub. L. No. 109-352, deems the leases at Love Field to comply with the grant assurances (found in Title 49). *See* WARA § 5(d)(2). The amended leases are "reasonably necessary" to implement the provisions of the Five-Party Agreement referenced in WARA. *Id.*

[21] *See, e.g.*, Dkt. No. 346 Dkt. No. 346 ¶ 104, 106.

*All* of Delta's breach of contract claims are expressly preempted for a similar reason. Judge Fitzwater has found that any breach of contract claim *premised on a third-party beneficiary theory* requires a court to look to state law and policy external to the terms of a contract. *See In re Am. Airlines, Inc.*, Nos. 3:04-MD-1627-D, 3:04-CV-0750-D, 3:04-CV-1148-D, 3:04-CV-2564-D, 3:05-CV-1040-D, 2005 U.S. Dist. LEXIS 37739, at *11 (N.D. Tex. Dec. 7, 2005) ("Plaintiffs can recover from AAI for breach of contract only if they are third party beneficiaries of the American-AAI contract. To determine whether plaintiffs are entitled to such status, the court must refer to law external to that agreement*,* since it is state law that would allow plaintiffs to recover as third-party beneficiaries.")

That reasoning encompasses all of Delta's breach of contract claims, even those falling under Section 4.06(F). *See id.* ("Because the court, in a breach of contract action, is confined to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement, the [third-party beneficiary] claim does not fall within the contractual exception to ADA preemption.") (cleaned up). District courts elsewhere have agreed with Judge Fitzwater's reasoning. *See A.C.L. Computs. & Software, Inc. v. Fed. Express Corp.*, No. 15-cv-04202-HSG, 2016 U.S. Dist. LEXIS 29001, at *12 (N.D. Cal. Mar. 4, 2016) ("[A]pplying various state agency or third-party beneficiary laws to airline contracts risks creating a state regulatory patchwork in direct contravention of Congress's intent when it enacted the ADA. Whether an airline could be held liable for breach of contract by a . . . third-party beneficiary would depend entirely upon the applicable state law. As such, Plaintiff's breach of contract claim that arises under a . . . third-party beneficiary theory derives from the application of state law.") (citing *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 373 (2008)).

**B.      Delta's claims are impliedly preempted under the doctrine of conflict preemption.**

Delta's "breach of federal law" claims under Article 14 conflict with the regulatory and enforcement authority Congress vested exclusively with the DOT, and thus those claims are preempted for that reason too.

Even in the absence of an express preemption provision, "a state or local law may be required to give way to federal law under at least two circumstances: field and conflict preemption." *Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726 F.3d 524, 528 (5th Cir. 2013) (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)). Although there is normally a presumption against the implied preemption of state law causes of action, the presumption "does not apply . . . when Congress legislates in an area of uniquely federal concern." *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 476 (3d Cir. 2015) (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001).)

Here, no presumption against preemption applies because of the uniquely federal nature of airport regulation. In this arena, "federal concerns are preeminent" and the "DOT is charged with representing those concerns." *Am. Airlines, Inc. v. DOT*, 202 F.3d 788, 800 (5th Cir. 2000); *see also Brown v. United Airlines, Inc.*, 720 F.3d 60, 68 (1st Cir. 2013). ("In matters of air transportation, the federal presence is both longstanding and pervasive; that field is simply not one traditionally reserved to the states."). Further, "[t]he Supreme Court has not suggested that the presumption against preemption should be interposed" in the field of air transportation. *Brown*, 720 F.3d at 68.

Delta's Article 14 claims implicate this second form of implied preemption: conflict preemption. Conflict preemption includes "those instances where the challenged state law stands

as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," as well as "cases where compliance with both federal and state regulations is a physical impossibility." *Arizona*, 567 U.S. at 399. This first kind of conflict preemption is often referred to as "obstacle" preemption; the second type is referred to as "impossibility" preemption. Southwest addresses each in turn.

*1.*  *Delta's claims based on state common law present an obstacle to Congressional purposes and objectives regarding the regulation of airports.*

"[C]onflict is imminent whenever two separate remedies are brought to bear on the same activity." *Wis. Dep't of Indus., Labor & Human Rels. v. Gould, Inc.*, 475 U.S. 282, 286 (1986). "The Supreme Court's preemption case law indicates that regulatory situations in which an agency is required to strike a balance between competing statutory objectives lend themselves to a finding of conflict preemption." *Farina v. Nokia, Inc.*, 625 F.3d 97, 123 (3d Cir. 2010).

Here, Congress has delegated regulatory and enforcement authority over the federal grant assurances to the DOT. If a private party "could sanction noncompliance" under a state-law contract theory, the DOT "could be hindered in its ability to craft an appropriate [agency] response." *In re Commonwealth's Motion to Appoint Counsel*, 790 F.3d at 477. Indeed, in dropping the Part 16 proceeding, the DOT's considered judgment ***is to take no action*** under the grant assurances or the Competition Plan. Delta's effort to revisit the DOT's judgment through a state-law claim disrupts the balance struck by the DOT between competing statutory objectives. Allowing Delta to "attach consequences" to the City's and the airline's relationship with the DOT would "exert an extraneous pull on the scheme established by Congress in a manner that conflicts with federal objectives." *Id.* at 477 (citing *Buckman*, 531 U.S. at 353).

The grant assurances "are drawn not only to bar what they prohibit but to allow what they permit." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 380 (2000). The potential

"inconsistency of sanctions here"—the DOT deciding against further action but a court or jury finding differently—"undermines the congressional calibration of force." *Id.* "This is especially so when a federal agency," like the DOT here, "is afforded the discretion to apply those sanctions or stay its hand." *In re Commonwealth's Motion to Appoint Counsel*, 790 F.3d at 477.

The Supreme Court's analysis of conflict preemption in *Buckman* is instructive. There, the plaintiff brought state-law fraud claims against a medical device manufacturer. The plaintiff alleged that the manufacturer made fraudulent statements to the FDA. The manufacturer argued conflict preemption. *Buckman*, 531 U.S. at 343. Reversing the appellate court, the Supreme Court held that such claims are preempted by the FDA's enabling statute. "The conflict stems from the fact that the federal statutory scheme amply empowers the FDA to punish and deter fraud against the Agency, and that this authority is used by the Agency to achieve a somewhat delicate balance of statutory objectives." *Id.* at 348.

The same conflict—between federal authority and state common law—exists here. The statutory scheme governing airports "amply empowers" the DOT to enforce compliance with the grant assurances. *See* 49 U.S.C. 47107(g)(1)(A) ("To ensure compliance" with grant assurances, "the Secretary of Transportation . . . shall prescribe requirements for [airport] sponsors that the Secretary considers necessary."); 14 C.F.R. 16.1 (authorizing FAA administrative enforcement proceedings for violations of grant assurances).[22] Like the FDA, the DOT "thus has at its disposal a variety of enforcement options that allow it to make a measured response" to suspected violations of the grant assurances. *Id.* at 349. "This flexibility is a critical component of the statutory and

---

[22] Likewise, the competition plan statute grants DOT ample power to carry out its limited objectives: review competition plans and their implementation. Indeed, 49 U.S.C. 40117(k) states that the DOT "shall review any plan . . . to ensure it meets the requirements" and "shall review its implementation from time-to-time to ensure that each covered airport successfully implements its plan." This language does not indicate any room for private enforcement via state common-law claims.

regulatory framework under which the [DOT] pursues difficult (and often competing) objectives." *Id.*; *see also* 49 U.S.C. § 47101 (listing numerous and competing federal objectives for the regulation of airports, including "safe operation," minimizing noise, and self-sustaining financial operations). "The balance sought by the Agency [will] be skewed" by allowing "breach of the grant assurances" claims under state law. *Buckman*, 531 U.S. at 348.

State-law contract claims are treated no differently than state tort claims in this regard. Courts have repeatedly held that contract claims brought by an alleged third-party beneficiary are preempted. *See, e.g.*, *Grochowski v. Phx. Constr.*, 318 F.3d 80, 86 (2d Cir. 2003); *Strange v. Flagstar Bank, FSB*, No. 3:11-CV-2642-B, 2012 U.S. Dist. LEXIS 39066, at *11 (N.D. Tex. Mar. 22, 2012) . In addition to the considerations in *Buckman*, the lack of a private right of action under federal law has proven decisive. In *Grochowski*, the plaintiffs sued to recover unpaid wages under a breach of contract theory. Like Delta, they contended that they were third-party beneficiaries of contracts that incorporated federal law. Specifically, they contended that because the general conditions of a construction contract incorporated wage schedules from a federal statute, they could sue for violations of those schedules. *Id.* 83-85.

The Second Circuit disagreed. "At bottom, the plaintiffs' state-law claims are indirect attempts at privately enforcing" the federal statute. *Id.* at 86. "To allow a third-party private contract action aimed at enforcing those wage schedules would be inconsistent with the underlying purpose of the legislative scheme and would interfere with the implementation of that scheme to the same extent as would a cause of action directly under the statute." *Id.* (quoting *Davis v. United Air Lines, Inc.*, 575 F. Supp. 677, 680 (E.D.N.Y. 1983)).

The Northern District of Texas is no different. In fact, a recent opinion held that even a contracting party's claim to enforce federal obligations incorporated into a contract is preempted

unless those obligations are privately enforceable standing alone. *See Flagstar Bank*, 2012 U.S. Dist. LEXIS 39066. Calling the plaintiff-homeowners' theory "novel," the court described a contract that echoes Delta's view of the Lease: an agreement "which contains a provision obligating the Defendant to 'comply with federal, state and local laws.'" *Id.* at *4. But despite this alleged obligation, the court held that plaintiffs "could not allege a viable breach of contract claim based on Defendant's alleged noncompliance" with federal law. *Id.* at *11. "When a government contract confirms a statutory obligation, a third-party private contract action to enforce that obligation would be inconsistent with the legislative scheme to the same extent as would a cause of action directly under the statute." *Id.* at *10 (relying on *Astra USA v. Santa Clara* County, 563 U.S. 110, 118 (2011), and *Grochowski*). "Permitting a third-party suit to enforce the contractual obligations—whether as a third-party beneficiary to the government contract ***or under a separate contract between a party and a third party***—would circumvent Congress's decision not to permit private enforcement of the statute." *Id.*

In *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005), the Second Circuit reached a similar result with respect to a cable television subscriber agreement. According to the plaintiff, the agreement had been made "subject to applicable law" in much the same way that Delta argues the Lease has been here. *Id.* at 198. Like the *Flagstar Bank* court, the *Broder* court concluded that "the lack of a private right of action under [the federal statute] could not be avoided via a breach of contract claim." *Id.* Affirming dismissal of the claim, it stressed that *Grochowski* "stands at least for the proposition that a federal court should not strain to find in a contract a state-

law right of action for violation of a federal law under which no private right of action exists." *Id.*

Likewise, the Court should not strain to find one here.[23]

>    2.   *It is impossible to comply with both WARA and the result of a successful state-law claim that Southwest breached the grant assurances or the City's Competition Plan*

Delta's Article 14 claim is also preempted under the doctrine of "impossibility" preemption. Impossibility preemption embraces the situation in which "it is impossible for a private party to comply with both state and federal law." *In re Commonwealth's Motion to Appoint Counsel*, 790 F.3d at 476.

Here, the Wright Amendment Reform Act of 2006 ("WARA"), Pub. L. No. 109-352, expressly precludes any interpretation of the grant assurances that modifies the terms of the Lease. WARA § 5(e)(2)(B)(ii). But to find for Delta on its Article 14 claim would require modifying the terms of Section 4.06(F), which is prohibited under WARA because such modification—to impose a "use it or lose it forever" standard on preferential gate leases—is not done on a nationwide basis. The result of Delta's Article 14 claim thus creates an impossibility: comply with the result of Delta's state-law claim under Article 14 (which, according to Delta, means that Southwest must forfeit its preferential lease rights to accommodate Delta permanently) or comply with WARA's prohibition on modifications to the Lease. It is just such an impossibility that the Supreme Court warns preempts a state common- law claim. *See Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 480

---

[23] Delta's state-law claims also present an obstacle to the federal objectives set forth in the Wright Amendment Reform Act of 2006 ("WARA"). Pub. L. No. 109-352. Like the federal aviation statutes, WARA provides no private right of action. Further, WARA enshrines a 20-gate limit at Love Field, ensuring that access will be limited, and evidences an intent that the grant assurances cannot be used to increase that number or modify leases to "allocate gate capacity to new entrants." § 5(a) & (e)(2)(B)(ii). State-law claims that seek to implement the grant assurances or the Competition Plan in contravention of these purposes surely "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). Delta's Article 14 claims should be preempted on this basis alone.

(2013) (preempting a design defect claim under state common law where it would be impossible to comply with both FDA regulations and the duties required under plaintiff's claim).

Delta's Article 14 claim creates a further impossibility under WARA as well. WARA specifically states that accommodation must occur, if at all, pursuant to the specific terms of Section 4.06(F) of the Lease. WARA § 5(a) ("To accommodate new entrant air carriers, the city of Dallas shall honor the scarce resource provision of the existing Love Field leases."). A state-law claim based on Article 14 that results in permanent accommodation thus creates an impossibility. One cannot honor the language of Section 4.06(F)—that accommodations give way to the preferential leaseholder's scheduling priority—but also find that accommodation is required to be permanent (or even indefinite) under the federal laws set forth in Article 14.[24]

## II.   Delta's claims based on Article 14 fail as a matter of basic contract principles (Claims I & IV).

### A.   There is no clear and unequivocal statement of intent that any provision of Article 14 benefits new entrants, let alone Delta.

Like Judge Jones at the Fifth Circuit, Southwest strongly disputes Delta's claim to third-party beneficiary status with respect to enforcing the promises in the Lease's accommodation provision. *See* Dkt. No. 364. Delta's lack of third-party beneficiary status is even clearer, however, with respect to the alleged "promises" that Delta seeks to enforce in Article 14.[25]

That is so because a beneficiary only has the right to enforce **promises** made for its benefit, not entire contracts. *See, e.g.*, Restatement (2d) of Contracts, § 311 (1981) ("Where a promise

---

[24] There is one final impossibility. WARA's Section 5(d)(1) says that the grant assurances cannot be used by the DOT or FAA (either on their own behalf or on behalf of third parties) to take actions that are inconsistent with the Five Party Agreement or to challenge the legality of that Agreement. Rewriting the Lease to reallocate gate space to new entrants is inconsistent with the Five Party Agreement and this an impossibility.

[25] Further, most of Article 14's provisions do not impose obligations on the parties to the Lease at all. They are simply agreed statements of fact or policy regarding the federal government's oversight over certain aspects of operations at Love Field, such as flight safety. Delta cannot state a claim for breach of contract (or a declaratory judgment based on the same substantive right) based on those provisions.

creates rights in a beneficiary, the promisee may retain power to discharge or modify the promisor's duty."); *id.* at § 305 ("A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the *promise*, and the intended beneficiary may enforce the duty.") (emphasis added). In short, there is no free-floating right as a third-party beneficiary to enforce whatever provisions of the contract it pleases.

Regardless of the analysis for 4.06(F), any promises contained in Article 14 are plainly not for the benefit of new entrants or Delta, which under Texas law "must be clearly and fully spelled out or enforcement by the third party must be denied." *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1075 (5th Cir. 2002).  Neither new entrants nor Delta are mentioned in the provisions cited by Delta. And Section 14.09, the alleged "incorporation" provision, expressly states that it describes rights "expressly reserved to the City."[26] By their terms, Article 14's provisions are intended to benefit a contracting party, the City, in navigating its relationship with the DOT.

### B.   To the extent the Lease incorporates federal law, it also incorporates federal law's enforcement scheme, which is exclusively administrative.

Congress placed authority for enforcement of the federal aviation statutes exclusively with the DOT. *See McCasland v. City of Castroville*, 514 Fed. App'x 446, 448-49 (5th Cir. 2013). This lack of a private right of action is just as much a part of federal law as the grant assurances themselves. If the Lease incorporates the grant assurances and Competition Plan, it also incorporates the lack of a private right of action enshrined in federal law. Delta cannot pick and choose the federal law it contends has been incorporated. Accordingly, Delta has no contractual remedy to privately enforce the grant assurances, whether federal law has been incorporated under provisions of Article 14 or not.

---

[26] App. 73 § 14.09.

Southwest also joins in United's Motion for Summary Judgment as to Delta's Cross-Claims (Dkt. Nos. 494 & 495) as to Delta's claims based on Article 14 (Section II of United's brief and any related sections of the Background and accompanying Appendix) and incorporates those arguments by reference.

### III.    Delta's declaratory judgment claim attempting to void the Sublease fails as a matter of law (Claim II).

A declaratory judgment is a remedy not a cause of action. *See Harris County Texas v. MERSCORP Inc.*, 791 F.3d 545, 552–53 (5th Cir. 2015) ("[T]he Declaratory Judgment Act alone does not create a federal cause of action."). Thus, Delta must show a substantive right of action that would allow it to void the Sublease. But the only source of law that it cites is the City's Competition Plan, a document it has no right to enforce. Delta has not pled it is a third-party beneficiary of the Competition Plan (and *Astra USA v. Santa Clara County*, 563 U.S. 110 (2011), precludes the argument).  And the federal statutes requiring Competition Plans include no private right of action.[27] In short, Delta has failed to state a cognizable declaratory judgment claim related to the Sublease.

Southwest also joins in United's Motion for Summary Judgment as to Delta's Cross-Claims (Dkt. Nos. 494 & 495) as to Delta's claims related to the Sublease (Section V of United's brief and any related sections of the Background and accompanying Appendix) and incorporates those arguments by reference.

---

[27] Delta also appears to argue that the Competition Plan has been incorporated into the Lease. Section 14.09, however, does not mention the competition plan statute. Further, a competition plan is a submission by an airport operator to the federal government, not a source of federal law itself. The only federal obligation is to submit the plan for government approval and allow DOT review. *See* 49 U.S.C. 40117(k).

IV.     **Delta's tortious interference with prospective business relations claim fails as a matter of law (Claim VII).**

   A.     **Delta's tortious interference claim is expressly preempted by the ADA.**

Southwest has already walked through the express preemption analysis above. Delta's tortious interference claim relates to the routes and services of an air carrier. Thus, the claim is preempted by the ADA. *See supra* Section I.A. Further, as a tort claim, the *Wolens* exception does not apply. *See, e.g., Brown.*, 720 F.3d at 71 ("Tort law is not a privately ordered obligation, and tortious interference claims therefore cannot trigger the *Wolens* exception."). Both Delta and its current counsel vigorously (and successfully) argued to another judge of this Court that claims for tortious interference with contract are preempted by the ADA. *See Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp. 3d 606, 613–14 (N.D. Tex. 2016), *aff'd*, 682 Fed. Appx. 310 (5th Cir. 2017) (holding that an "effort to impose liability . . . under the guise of a tortious  interference claim[] runs afoul of the Airline Deregulation Act's preemption clause."). Southwest sees no reason for the Court to disagree with Delta's prior arguments.

   B.     **Delta's tortious interference claim is non-cognizable because Texas does not recognize a tortious interference claim for a delayed business relationship.**

A key element of a tortious interference with prospective business relations claim is that the allegedly tortious conduct "prevented the contracts from forming." *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 590-91 (Tex. App.—Austin 2007, pet. denied). Delta's claim centers on conduct in September 2014. But the only business relation that there was even arguably a "reasonable probability" Delta could have entered into with a third party was the one it ultimately entered into in October 2014.[28] Although Southwest disputes that a forced

---

[28] Delta's pleading alleges that the business relation was Delta's request for accommodation of five flights. *See* Dkt. No. 346 ¶ 168. To the extent Delta now argues that United would have entered into a voluntary, market transaction with United, there was no reasonable probability of that happening. *See infra* Section V.A.

accommodation is a "business relation" in the sense contemplated by this common law claim, the City's rescinded accommodation letter—only one step in the multi-step accommodation process— only required accommodation *through January 2015*.[29] That is exactly the length of the gate use license—a form of voluntary accommodation—that Delta obtained in October 2014.[30]

It is true that Delta would have preferred to have entered into an accommodation arrangement in September 2014 (even though it did not want the space until the Wright Amendment restrictions expired in October). But "[d]elays caused by competitor conduct are inherent in the course of doing business, and enlarging the scope of tortious inference for prospective relationships to include delays would run afoul of the policy encouraging competition in the market." *Tex. Disposal Sys. Landfill*, 219 S.W.3d at 590.

Implicit in Delta's claim "is an invitation to expand the doctrine of tortious interference with prospective business relationships to make actionable conduct that results in *delaying the execution* of a contract, even though the formation of a contract was not prevented." *Id.* (emphasis in original). However, "there is no supreme court authority holding that a cause of action for tortious interference with prospective business relationships includes conduct that results only in a delay of the execution of a contract." *Id.* at 591. Here, there was not even a disruption in Delta service at Love Field.

## V.     Delta cannot show a genuine issue of material fact for key elements of its tortious interference claim (Claim VII).

The elements of a claim for tortious interference with prospective business relations are as follows:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the

---

[29] App. 151 (Letter from the City to United, dated September 19, 2014).
[30] App. 155, 157 (Gate Use License, dated October 10 2014).

> defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 417 (5th Cir. 2015) (quoting

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)). Delta cannot

show a genuine issue of material fact for certain of these elements.

> ### A.   There is no evidence of a reasonable probability that Delta would have entered into a business relationship with a third party.

Delta has not shown a genuine issue of material fact on this element. The City had no gates

to lease at Love Field, and any accommodation arrangement would occur between the airlines.

Moreover, it was not reasonably probable that Delta would enter into a long-term sublease with

United in September 2014 (or even before then). Southwest was wrapping up a revised deal for

United's gates after the inclusion of Newark slots delayed the first deal reached before Delta's

June 2014 accommodation request. Finally, to the extent a forced accommodation can ever be the

kind of business relationship in the sense encompassed by this tort, there was no reasonable

probability in September 2014—the timeframe alleged in Delta's pleading—that the City was

going to order a long-term accommodation. The City's accommodation letter, rescinded upon

receipt of better scheduling information from United, only ever contemplated a short-term

arrangement, one that Delta ultimately received.[31]

Southwest also joins in United's Motion for Summary Judgment as to Delta's Cross-

Claims (Dkt. Nos. 495 & 495) as to this element (Section VI.A. of United's brief and any related

---

[31] App. 151.

sections of the Background and accompanying Appendix) and incorporates those arguments by reference.

### B. There is no evidence that Southwest committed an independently tortious or unlawful act.

Delta has not shown a genuine issue of material fact as to this element either. The Texas Supreme Court has defined "independently tortious" acts as "conduct that would violate some other recognized tort duty." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001). "Conduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations . . . " *Id.* at 726.

As to Southwest, Delta has only alleged violations of the grant assurances and the Competition Plan.[32] But these could only ever be a non-tortious breach of contract.[33] By their terms, the Competition Plan and grant assurances do not apply to Southwest. The only way they *could* apply is through incorporation in the Lease. Although Southwest disputes Delta's incorporation arguments, at most, Delta has alleged breaches of the Lease rather than unlawful or independently tortious conduct.

To the extent Delta has properly alleged that Southwest "defrauded" the City—despite failing to plead the elements of fraud with particularity—it has no evidence that Southwest's conduct would be actionable as fraud. Additionally, there is no evidence that Southwest intended to deceive the City or had a duty to disclose the exact amount of its payment to United to the City. Finally, the City knew that the payment required Hart Scott Rodino review (meaning it exceeded $75 million), and the City has repeatedly denied that it was deceived.[34]

---

[32] *See, e.g.*, Dkt. No. 346 ¶ 170.

[33] To be clear, those alleged violations are, in reality, *not* independently actionable, even under a breach of contract theory. But even if they were, the violations are not tortious or unlawful.

[34] App. 172–76 (Tr. at 97:1-101:16); App. 177–78 (Tr. at 145:22-146:5); App. 179 (Tr. at 162:12-22); App. 180 (Tr. at 255:1-13); App. 169 (Tr. at 280:4-13).

Southwest also joins in United's Motion for Summary Judgment as to Delta's Cross-Claims (Dkt. Nos. 494 & 495) as to this element (Section VI.B. of United's brief and any related sections of the Background and accompanying Appendix) and incorporates those arguments by reference.

### C.      There is no evidence that Delta suffered any actual damage or loss.

 Southwest joins in United's Motion for Summary Judgment as to Delta's Cross-Claims (Dkt. Nos. 494 & 495) as to this element (Section VI.C. of United's brief and any related sections of the Background and accompanying Appendix) and incorporates those arguments by reference. Delta has designated no damages expert or offered any damages testimony in deposition. Further, Delta *was* accommodated after September 2014. Any allegedly tortious conduct that occurred then is therefore not actionable due to the lack of harm.

In addition, Southwest notes that Delta has not alleged tortious interference with respect to its request for eight additional flights in February 2015. It cannot now argue that any actual damages or losses arise from that request.

## <u>CONCLUSION</u>

For the foregoing reasons, Southwest requests the Court grant Southwest's Motion for Partial Summary Judgment.

DATED:  August 10, 2018                    Respectfully submitted

*/s/ Eric W. Pinker*_____
Eric W. Pinker (epinker@lynnllp.com)
Texas Bar No. 16016550
Kent D. Krabill (kkrabill@lynnllp.com)
Texas Bar No. 24060115
Britta Erin Stanton (bstanton@lynnllp.com)
Texas Bar No. 24036976
Russell Herman (rherman@lynnllp.com)
Texas Bar No. 24083169
Jervonne Newsome (jnewsome@lynnllp.com)
Texas Bar No. 24094869
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
Telephone:  214.981.3830
Facsimile:  214.981.3839

**ATTORNEYS FOR DEFENDANT
SOUTHWEST AIRLINES CO.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 10, 2018, the foregoing document was served on all counsel of record through the Court's ECF system.

*/s/ Russell Herman*_____
 Russell Herman