# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| CITY OF DALLAS,<br><br>*Plaintiff*,<br><br>v.<br><br>**DELTA AIR LINES, INC., SOUTHWEST AIRLINES CO., VIRGIN AMERICA INC., AMERICAN AIRLINES, INC., UNITED AIRLINES, INC., SEAPORT AIRLINES, INC., UNITED STATES DEPARTMENT OF TRANSPORTATION, AND THE FEDERAL AVIATION ADMINISTRATION**<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§   Civil Action No. 3:15-cv-02069-K |

---

### DELTA AIR LINES, INC.'S MEMORANDUM IN SUPPORT OF ITS RESPONSE TO SOUTHWEST AIRLINES CO.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

## TABLE OF CONTENTS

**Page**

Introduction.................................................................................................................1

Background...............................................................................................................2

Standard of Review..................................................................................................2

Argument ..................................................................................................................2

   I.   Southwest and United Waived the Affirmative Defense of Preemption by Failing To Plead it in Their Answers.........................................................................2

   II.  Delta's Contract Claims are Not Expressly Preempted.................................................3

      A.   Delta's Contract Claim Does Not Enlarge the Terms of the Lease...................5

          1.   Delta's Claim Does Not Enlarge the Terms of Contractual Remedies...................6

          2.   Delta's Claim Does Not Enlarge the Terms of the Contract by Incorporating Grant Assurances that Do Not Provide a Private Right of Action. .........................8

          3.   Delta's Claim Does Not Enlarge the Terms of the Lease by Requiring the Court to Look to External Laws or Policies.................................................10

      B.   Third-Party Beneficiary Claims Fall within the *Wolens* Exception ...................13

   III. Conflict Preemption Does Not Bar Delta's Claims ....................................................16

   IV. Impossibility Does not Preempt Delta's Claims........................................................22

   V.  Delta is a Third-Party Beneficiary of Article 14........................................................23

   VI. Delta Has a Viable Request for Declaratory Relief Seeking To Invalidate the Sublease.................................................................................................26

Conclusion ..............................................................................................................27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C.L. Computers & Software, Inc. v. Fed. Express Corp.*,
  2016 WL 946127 (N.D. Cal. Mar. 14, 2016 ..........................................................15

*In re Am. Airlines, Inc., Privacy Litig.*,
  2005 WL 3323028 (N.D. Tex. Dec. 7, 2005) ...................................................11, 15

*American Airlines v. Wolens*,
  513 U.S. 219 (1995)..................................................................................... *passim*

*Aretakis v. Fed. Exp. Corp.*,
  2011 WL 1226278 (S.D.N.Y. Feb. 28, 2011).........................................................16

*Astra USA, Inc. v. Santa Clara County*,
  563 U.S. 110 (2011)...............................................................................................20

*Barber Auto Sales, Inc. v. United Parcel Servs., Inc.*,
  494 F. Supp. 2d 1290 (N.D. Ala. 2007)...................................................................8

*Bible v. United Student Aid Funds, Inc.*,
  799 F.3d 633 (7th Cir. 2015) ................................................................................20

*Britt Green Trucking, Inc. v. FedEx Nat'l, LTL, Inc.*,
  Case No. 09–cv–445, 2014 WL 3417569 (M.D.Fla. July 14, 2014).......................3

*Buckman Co. v. Plaintiffs' Legal Committee*,
  531 U.S. 341 (2001)....................................................................................16, 17, 18

*Castellanos-Contreras v. Decatur Hotels, LLC*,
  622 F.3d 393 (5th Cir. 2010) (en banc) .................................................................24

*Cathedral of Hope v. FedEx Corp. Servs., Inc.*,
  2008 WL 2242546 (N.D. Tex. May 30, 2008) ........................................................8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..................................................................................................2

*City of Cleveland, Ohio v. City of Brook Park, Ohio*,
  893 F. Supp. 742 (N.D. Ohio 1995).......................................................................19

*City of Houston v. Williams*,
  353 S.W.3d 128 (Tex. 2011)............................................................................14, 15

*Coll. Loan Corp. v. SLM Corp.*,
  396 F.3d 588 (4th Cir. 2005) ..................................................................10, 11, 19, 20

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Crosby v. Nat'l Foreign Trade Council*,
　　530 U.S. 363 (2000)......................................................................................................22

*Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*,
　　972 F. Supp. 665 (N.D. Ga. 1997).............................................................................7, 8

*Delaware & Hudson Ry. Co.*,
　　781 F.3d 667 ...........................................................................................11, 15, 20, 21

*Delta Air Lines, Inc. v. Black*,
　　116 S.W.3d 745 (Tex. 2003)..........................................................................................9

*Dover v. British Airways, PLC (UK)*,
　　2013 WL 5970688 (E.D.N.Y. Nov. 8, 2013)................................................................12

*English v. Gen. Elec. Co.*,
　　496 U.S. 72 (1990)........................................................................................................17

*Epps v. JP Morgan Chase Bank, N.A.*,
　　675 F.3d 315 (4th Cir. 2012) .......................................................................................16

*Erie Boulevard Hydropower, LP v. Fed. Energy Regulatory Comm'n*,
　　878 F.3d 258 (D.C. Cir. 2017) .....................................................................................16

*Excel Willowbrook, L.L.C. v. JP Morgan Chase Bank, Nat. Ass'n*,
　　758 F.3d 592 (5th Cir. 2014) .......................................................................................25

*First Bank v. Brumitt*,
　　519 S.W.3d 95 (Tex. 2017)...........................................................................................25

*Fisher v. Halliburton*,
　　667 F.3d 602 (5th Cir. 2012) .........................................................................................2

*Fla. Lime & Avocado Growers, Inc. v. Paul*,
　　373 U.S. 132 (1963)......................................................................................................22

*Freightliner Corp. v. Myrick*,
　　514 U.S. 280 (1995)......................................................................................................16

*Geier v. Am. Honda Motor Co.*,
　　529 U.S. 861 (2000)......................................................................................................17

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.*,
   2011 WL 3166159 (N.D. Ill. July 27, 2011)..........................................................................12

*Grochowski v. Phoenix Const.*,
   318 F.3d 80 (2d Cir. 2003)..................................................................................................21

*Gulf Coast Shippers Ltd. P'ship v. DHL Exp. (USA), Inc.*,
   2011 WL 4443434 (D. Utah Sept. 23, 2011).......................................................................16

*Haub v. Axon Downhole Tools, Inc.*,
   2013 WL 6731937 (S.D. Tex. Dec. 19, 2013).....................................................................26

*Hickcox-Huffman v. US Airways, Inc.*,
   855 F.3d 1057 (9th Cir. 2017) ...................................................................................7, 12, 14

*Hillsborough Cty., Fla. v. Automated Med. Labs., Inc.*,
   471 U.S. 707 (1985).....................................................................................................16, 17

*Johnson v. World All. Fin. Corp.*,
   830 F.3d 192 (5th Cir. 2016) ..............................................................................................25

*Keybank Nat'l Ass'n v. Hamrick*,
   576 F. App'x 884 (11th Cir. 2014) .......................................................................................2

*Kleiner v. Sw. Airlines Co.*,
   2009 WL 10674260 (N.D. Tex. Aug. 17, 2009)...............................................................7, 13

*Kornman & Assocs., Inc. v. United States*,
   527 F.3d 443 (5th Cir. 2008) ................................................................................................2

*Lawrence v. CDB Servs., Inc.*,
   44 S.W.3d 544 (Tex. 2001).................................................................................................26

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*,
   283 F.3d 282 (5th Cir. 2002) ................................................................................................7

*MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*,
   995 S.W.2d 647 (Tex. 1999)...............................................................................................25

*Met. Life Ins. Co. v. Taylor*,
   481 U.S. 58 (1987)................................................................................................................2

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992).................................................................................................9

*Motion Med. Techs., L.L.C. v. Thermotek, Inc.*,
    875 F.3d 765 (5th Cir. 2017) ...............................................................................2

*N. Cypress Med. Ctr. Operating Co. Ltd v. Fedex Corp.*,
    892 F. Supp. 2d 861 (S.D. Tex. 2012) ..............................................................6, 8

*Northwest, Inc. v. Ginsberg*,
    572 U.S. 273 (2014)..................................................................................... *passim*

*Polinovsky v. Deutsche Lufthansa, AG*,
    2012 WL 1080415 (N.D. Ill. Mar. 30, 2012).....................................................13

*Seacor Holdings, Inc. v. Commonwealth Ins. Co.*,
    635 F.3d 675 (5th Cir. 2011) ...............................................................................2

*Seals v. Delta Air Lines, Inc.*,
    924 F. Supp. 854 (E.D. Tenn. 1996)..................................................................15

*Shrem v. Southwest Airlines Co.*,
    2017 WL 1478624 (N.D. Cal. Apr. 25, 2017) ..........................................9, 10, 12

*Strange v. Flagstar Bank, FSB*,
    2012 WL 987584 (N.D. Tex. Mar. 22, 2012)....................................................21

*Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*,
    73 F.3d 1432 (7th Cir. 1996) ......................................................................7, 8, 11

*United States v. Mwalumba*,
    688 F. Supp. 2d 565 (N.D. Tex. 2010) ..............................................................25

*Wyeth v. Levine*,
    555 U.S. 555 (2009).............................................................................................21

**Statutes**

49 U.S.C. § 40101(a)-(b) ..............................................................................................3

49 U.S.C. § 40103(e) ..................................................................................................26

49 U.S.C. § 47101.................................................................................................18, 26

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

49 U.S.C. § 47104(a) ....................................................................................................18

49 U.S.C. § 47106 ........................................................................................................18

49 U.S.C. § 47107........................................................................................................18, 24

49 U.S.C. § 47175(6) ...................................................................................................22

Airline Deregulation Act, ("ADA"), 49 U.S.C. § 1301 *et seq.*............................................. *passim*

The Wright Amendement Reform Act ("WARA:), PL 109-352 (Oct. 13, 2006) ..................21, 22

**Rules**

Fed. R. Civ. P. 8(c) .......................................................................................................2

Fed. R. Civ. P. 56(a) ....................................................................................................2

**Treatises**

Restatement (Second) of Contracts
    § 202.................................................................................................................25
    § 304.................................................................................................................15
    §§ 345, 357.......................................................................................................6

## INTRODUCTION

After years of attempting to twist the terms of its lease agreement with the City to render its accommodation obligation meaningless, Southwest's motion for summary judgment attempts to simply avoid the bulk of that contract altogether.  To be sure, Southwest does not challenge the viability of the City's declaratory judgment claim, and only barely addresses Delta's primary breach of contract claim under Section 4.06(F).  Instead, Southwest focuses its attention on insisting that it need not live up to the obligations it voluntarily undertook in the lease agreement because all of Article 14 is preempted.

Southwest's attempt to evade its bargain fails.  Its argument depends on narrowing the breach-of-contract exception to Airline Deregulation Act preemption so severely as to read it out of existence. Mot. at 4–16 (discussing 49 U.S.C. § 41713).  When the Supreme Court held in *American Airlines v. Wolens*, 513 U.S. 219 (1995), that an airline may be liable for its "breach of its own, self-imposed undertakings," it meant, Southwest argues, that an airline may be liable for its self-imposed undertakings if no equitable relief is sought; and it did not undertake to comply with federal or state law; and it is not sued by a third-party beneficiary.  But nothing in *Wolens* or subsequent authority on ADA preemption supports any of those limitations, which Southwest has wholly invented to escape the indisputable fact that it has not lived up to its contractual obligations.

The remainder of Southwest's brief is a patchwork of conclusory arguments, many of which have already been considered and rejected by this Court.  Nothing in Southwest's brief undermines the simple fact that Southwest—in order to obtain a dominant share of Love Field—entered into a contract that included numerous provisions intended to benefit airlines like Delta.  Now, having obtained the benefits of that dominance and taken the benefits of its lease with the City, Southwest wants to avoid the obligations it undertook in that contract.  Delta respectfully requests that the Court deny the motion.

BACKGROUND

Delta has described the background of the case in its own motion for summary judgment and other briefing.  ECF 362, 413 (Mot. for Partial Summary J. and Reply) ECF 388 (Resp. to Southwest's Mot. for Partial J. on the Pleadings); ECF 468 (Resp. to City's Mot. for Partial Summ. J.).  It fully incorporates those facts by reference here.

STANDARD OF REVIEW

A party may move for summary judgment on any claim or defense.  Fed. R. Civ. P. 56(a).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 675, 680 (5th Cir. 2011).  One circumstance in which "summary judgment is appropriate" is "where the only issue before the court is a pure question of law."  *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 450 (5th Cir. 2008) (quotation omitted).

ARGUMENT

## I.    Southwest Waived the Affirmative Defense of Preemption by Failing To Plead it in Its Answer

As a threshold matter, all of the preemption arguments in Southwest's motion fail because Southwest has waived its right to plead and argue preemption.

"Federal preemption is an affirmative defense that a defendant must plead and prove."  *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012); *see also Met. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit.").  Federal Rule of Civil Procedure 8(c) requires a defendant to state affirmative defenses in its responsive pleading. Fed. R. Civ. P. 8(c).  Southwest failed to do so, and as a result, waived its preemption argument because it has not raised its affirmative defense "at a pragmatically sufficient time"—three years after it was aware

of Delta's claims against it.[1]  *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 771–72 (5th Cir. 2017).

Delta's claims against Southwest have been on file with this Court from the outset.  See ECF 144.  Since then, this Court tried a preliminary injunction hearing, the parties argued an appeal and a request for *en banc* hearing, and the case was remanded for further proceedings, including substantial discovery.  This Court ordered a deadline for filing and amending pleadings, and within that deadline, Southwest filed its Answer to Delta's claims but did not assert a preemption defense.  *See* ECF 189, at 77; ECF 352, at 67–68.[2]  It would not be appropriate to grant Southwest summary judgment on an affirmative defense it has not asserted.  Delta had no opportunity to take discovery on this issue as Delta had no notice of Southwest's preemption affirmative defense until three years after Delta first asserted its claims against Southwest and United.  Southwest has thereby waived its preemption arguments by failing to plead preemption as an affirmative defense to Delta's claims.

## II.    Delta's Contract Claims are Not Expressly Preempted.

Southwest devotes the bulk of its Motion for Partial Summary Judgment to many variations on a single theme:  that Delta's claims under Article 14, and any claim that hinges on Delta's status as a third-party beneficiary, are expressly preempted by the Airline Deregulation Act ("ADA").[3]  *See* Mot. at 3–9.  The ADA preempts suits under state laws that would seek to have the force and effect of law

---

[1] *See also Keybank Nat'l Ass'n v. Hamrick*, 576 F. App'x 884, 888 (11th Cir. 2014) (concluding defendant waived preemption defense where he raised it for the first time in a summary judgment motion and failed to assert it in three prior answers); *Britt Green Trucking, Inc. v. FedEx Nat'l, LTL, Inc.*, 2014 WL 3417569, at *12–13 (M.D.Fla. July 14, 2014) (holding that defendant waived the affirmative defense of preemption when the defense was raised for the first time at summary judgment because defendant waited years to raise the defense in its motion for summary judgment).

[2] Although United Airlines, Inc. ("United") did not join Southwest's preemption argument, United also failed to assert the preemption defense in any of its three answers to Delta's Cross-Claims.  *See* ECF 283, at 25-26; ECF 289, at 25-26; ECF 353, at 61-63.

[3] Southwest summarily asserts that all of Delta's breach of contract claims fail (*see* Mot. at 1 n.1) but the strength of its argument is reflected in its decision to relegate to a one-sentence footnote an argument that would resolve one of the primary claims in the case.  Many of Southwest's arguments do not even apply to Delta's Section 4.06(F) claims, and those that do fail for the reasons set forth herein.  Southwest's recognition that Delta's Section 4.06(F) claims are not preempted reflects its acknowledgment of the unpersuasiveness of its broadest *Wolens* arguments.

related to an airline's prices, routes, and services in order to "to promote maximum reliance on competitive market forces." *Wolens*, 513 U.S. at 228; *see also* 49 U.S.C. § 40101(a)–(b).

This case turns on the scope of an exception to ADA preemption adopted by the Supreme Court in *Wolens*. In that case, the Supreme Court held that while "the ADA's preemption prescription bars state-imposed regulation of air carriers," it "allows room for court enforcement of contract terms set by the parties themselves." *Wolens*, 513 U.S. at 222. The ADA does not preempt contract disputes because reliance on "[m]arket efficiency requires effective means to enforce private agreements." *Id.*. at 230. Accordingly, while states may not "impos[e] their own substantive standards with respect to rates, routes, or services," they may "afford[] relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated." *Id.* at 232–33; *see also Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 281 (2014) (ADA preemption clause "did not pre-empt breach of contract claims"). In other words, the ADA does not "shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, *self-imposed undertakings*." *Wolens*, 513 U.S. at 228 (emphasis added). Essentially, the express terms of a contract are not considered "a State's 'enactment or enforcement of any law." *Ginsberg*, 572 U.S. at 273 (quoting *Wolens*, 513 U.S. at 228–29).

Delta's claims for breach of contract fall squarely within this exception. Southwest is a sophisticated air carrier that fully and freely negotiated its Lease with the City.[4] Each Signatory Carrier agreed to certain obligations in exchange for preferential leases for a number of Love Field's 20 gates. Southwest agreed—explicitly and voluntarily—to accommodate new entrant carriers and impose upon itself the *City's* obligations under federal law of complying with the federal grant assurances.[5] Exh. 25. These "self-imposed undertakings" remain binding on Southwest today and can be enforced

---

[4] *See, e.g.*, Southwest App. 004–150 [Exhibit 25].
[5] *See id.* at 028–30, 067, 073, 075 [Exhibit 25 §§ 4.06F, 14.03, 14.09, 14.19].

under *Wolens* through a breach-of-contract suit.

Southwest's argument to escape the direct impact of *Wolens* on this case is that Delta has somehow "enlarged" the scope of what Southwest agreed to. Southwest also seeks to tightly cabin *Wolens* by reading a *single word* in that case to override the Court's analysis and holding. After holding squarely that enforcement of self-imposed obligations is not preempted, the Court observed that "[t]he conclusion that the ADA permits state-law-based court adjudication of routine breach-of-contract claims also makes sense of Congress' retention of the FAA's saving clause." *Wolens*, 513 U.S. at 232. Southwest focuses on the word "routine," urging this Court to find that the Supreme Court, through addition of that adjective in a descriptive statement, narrowed the rest of its opinion by limiting the *Wolens* exception only to breach-of-contract claims that are "routine."

Southwest's attempts to escape *Wolens* fail. None of Southwest's arguments displaces the fundamental principle under *Wolens* that a court may "afford[] relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated" without running afoul of the ADA. *Id.* at 232–33. Delta's breach of contract claims, based on violations of terms Southwest itself stipulated, are not preempted.[6]

## A. Delta's Contract Claim Does Not Enlarge the Terms of the Lease.

Southwest argues that Delta's contract claim seeks to "enlarge or enhance the terms of the Lease" in two ways: by seeking equitable relief, and by suing on a contract provision that incorporates an external source of law (i.e., the federal grant assurances and other federal aviation law). Mot. at 6. Southwest is incorrect.

---

[6] Southwest purports to "join in United's Motion for Summary Judgment" and incorporates it by reference. To the extent the Court treats this as proper, Delta incorporates by reference its entire Response to United's Motion for Summary Judgment, filed concurrently herewith.

1.    **Delta's Claim Does Not Enlarge the Terms of Contractual Remedies.**

Southwest argues that Delta's contract claim is not a "routine" breach-of-contract claim because Delta seeks equitable relief.  *Id.*  Because the modifier "routine" was not a limiter of the Supreme Court's holding in *Wolens*, whether a breach-of-contract claim is "routine" is irrelevant to whether it is preempted by the ADA.  *See Ginsberg*, 572 U.S. at 284 (scope of *Wolens* exception is "a subcategory of common-law claims, *i.e.*, those based on the parties' voluntary undertaking").  Instead, the proper question is whether the action seeks to enforce the defendant's "self-imposed undertakings."  Southwest does not dispute that the action does just that.

Southwest nonetheless contends that seeking equitable relief would "enlarge or enhance the terms of the Lease."  Mot. at 6.  As a factual and legal matter, this is simply untrue.  The Lease specifies that any remedies provided for by the Lease are not "exclusive of each other or of any other remedy available . . . at law or in equity."[7]  Any remedy available "at law or in equity" encompasses the relief sought by Delta.[8]  When the parties to a contract specify a remedy, that remedy is enforceable under *Wolens* because the court granting the requested remedy simply "holds [the] parties to their agreements."  513 U.S. at 229; *see, e.g.*, *N. Cypress Med. Ctr. Operating Co. Ltd v. Fedex Corp.*, 892 F. Supp. 2d 861, 870 (S.D. Tex. 2012) (damages remedy limited to "the contractually determined amount").  That is all that Delta asks this Court to do.

Even if *Wolens* only permitted breach-of-contract claims to proceed if they were "routine" (a concept undefined by *Wolens*), there is no basis to treat a request for declaratory and injunctive relief and specific performance as not routine for these purposes.  To make the term "routine" consistent with the rest of the opinion, a "routine" breach-of-contract claim would be one that seeks to enforce only the parties' obligations, rather than supplementing those obligations with additional duties

---

[7] Southwest App. 075 [Exhibit 25 § 14.15].
[8] Delta App. 7–9 [Delta's Second Amended Cross and Counter Claim, ECF 346 at 41–43]; Delta App. 139–42 [Restatement (Second) of Contracts §§ 345, 357 (1981)].

implied as a matter of state public policy, such as an obligation of good faith.  *See Ginsberg*, 572 U.S. at 286 (claim for breach of the implied covenant of good faith and fair dealing is preempted because it is "a state-imposed obligation" that parties "cannot contract out of").  The parties here could have reached an agreement that equitable relief would not be necessary for any breach of contract, but instead reached the opposite agreement, expressly contracting for all available remedies.[9]  Enforcing the agreement the parties *actually made* is the opposite of enlarging or enhancing the agreement.  Indeed, Southwest makes no attempt to explain *why* allowing for relief that the parties contracted to allow would enlarge the agreement.  Whether equitable relief is recoverable for a breach of contract is a "core concept[]" of contract law, and therefore not preempted.  *See Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 289 (5th Cir. 2002) (fraudulent inducement defense not preempted under ADA because it "relates to the validity of mutual assent" and does not "seek[] to expand or enlarge the parties' agreement"); *see also Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1064–65 (9th Cir. 2017) (restitution remedy for breach of contract claim not preempted under ADA, even though contract did not specify restitution remedy, because restitution "traditionally recognized" as a remedy available "as justice requires"); *Kleiner v. Sw. Airlines Co.*, 2009 WL 10674260, at *3 (N.D. Tex. Aug. 17, 2009) (rejecting preemption claim where relief not specified in contract because "to give any meaning to the Supreme Court's holding that the ADA does not preempt states from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated, courts must consider common law contract remedies") (internal quotations omitted).

Southwest picks a handful of district court cases from around the country that have found requests for relief other than compensatory damages not "routine" in the context of particular statutes. Mot. at 5-6.  But none of those cases addresses a contract that affirmatively provides for such relief;

---

[9] Southwest App. 075 [Exhibit 25 § 14.15].

instead, the request for relief which the contract does not provide is an "enlargement or enhancement" of the parties' agreement with state law remedies. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1432, 1435 n. 8 (7th Cir. 1996); *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*, 972 F. Supp. 665, 673 (N.D. Ga. 1997).  In any event, if a *remedy* is preempted that does not mean that the *claim* is preempted, merely that the particularly remedy sought is preempted. *See Travel All Over the World*, 73 F.3d at 1435 n.13 (finding particular remedy preempted); *Deerskin Trading Post,* 972 F. Supp. at 673 (same); *Barber Auto Sales, Inc. v. United Parcel Servs., Inc.*, 494 F. Supp. 2d 1290, 1294 (N.D. Ala. 2007); *N. Cypress Med. Ctr. Operating Co. Ltd.*, 892 F. Supp. 2d at 870.

Delta also seeks attorneys' fees on its breach-of-contract claim, which are plainly not preempted. *See Cathedral of Hope v. FedEx Corp. Servs., Inc.*, 2008 WL 2242546, at *8 (N.D. Tex. May 30, 2008) ("[a] state statute permitting recovery of attorney's fees is 'too tenuous, remote, or peripheral' to be subject to preemption.  Such a statute neither references nor imposes any substantive obligations on airline practices.") (quoting *Samtech Corp. v. Federal Express Corp.*, 2004 U.S. Dist. LEXIS 27130, at *1 (S.D. Tex. Mar. 14, 2004)).  Accordingly, Southwest's argument misreads *Wolens,* overstates the cases on which it relies, and ignores Delta's request for attorneys' fees.  It does not provide a basis for preemption.

### 2.    Delta's Claim Does Not Enlarge the Terms of the Contract by Incorporating Grant Assurances that Do Not Provide a Private Right of Action.

Southwest next contends that Delta's breach-of-contract claims enlarge the terms of the lease because Article 14 incorporates federal law and grant assurances that have no private right of action. Mot. at 6.  But that makes no sense.  Southwest's theory is that "nothing in the contract entitles [Delta] to the external remedy" of private enforcement of the grant assurances, but the contract is *precisely* what entitles Delta to privately enforce obligations that are also in the grant assurances. *Id.*  In other words, Delta is not looking to state law to expand its rights under the contract; Delta is looking *to the*

*contract* to enforce the promises underlying the grant assurances, which were undertaken by Southwest in the Lease. Nothing about that seeks to "enlarge or enhance" Delta's rights "based on state laws or policies external to the agreement." *Wolens*, 513 U.S. at 233.

Southwest claims that Delta made an argument similar to Southwest's argument in *Delta Air Lines, Inc. v. Black*, 116 S.W.3d 745 (Tex. 2003). But that argument depends on Southwest's mischaracterization of what Delta argues here. In *Black*, the plaintiff sued the airline for breach of the parties' contract that incorporated DOT anti-bumping regulations, contending that he was "denied boarding compensation" in the form of reimbursement for the cost of a private jet rental because he was denied a first class seat. *Id.* at 755. The *Black* court considered the relevant regulation and found that "a passenger is not eligible for denied boarding compensation if the airline offers the passenger accommodations in another section of the aircraft at no charge"—which is precisely what the airline did. *Id.* Accordingly, neither the DOT regulation—nor the parties' contract that incorporated them— supported plaintiff's claim. *Id.* Plaintiff sought to "enlarge Delta's obligations to him" by modifying the contract terms to allow him to forego his contractually specified "regulatory remedies." *Id.* The *Black* plaintiff's claim failed because the Court is confined "in breach-of-contract actions, to the parties' bargain," *id.* (quoting *Wolens*, 513 U.S. at 233), not because of any lack of a private right of action. Nor does *Shrem v. Southwest Airlines Co.*, 2017 WL 1478624, at *2 (N.D. Cal. Apr. 25, 2017), lend support to Southwest's argument: in *Shrem*, "the Contract of Carriage [did] not incorporate federal laws, regulations, and rules," including the one that plaintiff contended gave rise to his action for breach. Thus, Southwest's reliance on the case is wholly misplaced.

Notably, Southwest omits from its characterization of *Black* the court's observation that it "cannot enlarge or enhance that bargain *based on state law or policies* external to the agreement." *Black*, 116 S.W.3d at 755 (emphasis added). Of course, the limitation on enlarging a bargain via *state* law makes sense in a preemption analysis; where, as with a claim for breach of the implied covenant, a

state-imposed duty that cannot be contracted around gives rise to the cause of action, the plaintiff

sues to enforce that state-imposed duty, not its self-imposed undertakings. *See Ginsberg*, 572 U.S. at

286. And such *state-imposed* duties may not interfere with the federal policy of deregulation. *See Morales*

*v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992) (preemption attempted to "ensure that the States

would not undo federal deregulation with regulation of their own"). A claim that Southwest breached

a contract that incorporated provisions of *federal* law does not present any similar concern.

### 3.   Delta's Claim Does Not Enlarge the Terms of the Lease by Requiring the Court to Look to External Laws or Policies.

Finally, Southwest alleges that Delta's claims under Article 14 (as well as its declaratory

judgment claim) enlarge the term of the lease because they require the Court to look to external laws

or policies. Mot. at 7. In particular, Southwest observes that Section 14.03 requires Southwest's use

of the airport to "comply with and conform to" federal law, and Section 14.09 makes the lease subject

to federal grant assurances. *Id.* But here again, Southwest offers no explanation or theory of how it

would exceed the *Wolens* exception for the Court to "hold[] [the] parties to their agreements"—which

is *exactly* what *Wolens* says is permitted. *Wolens*, 513 U.S. at 229. Instead, it invokes *Shrem* again, in

which the Court specifically held that the "Contract of Carriage does *not* incorporate federal laws,

regulations, and rules." *Shrem*, 2017 WL 1478624, at *2. It thus has no bearing on the enforcement

of a contract that *does* incorporate certain federal laws and grant assurances.

Southwest's claim has been rejected repeatedly by the courts. The Fourth Circuit addressed a

very similar argument in considering whether a contractual provision was preempted by the Higher

Education Act ("HEA"). *Coll. Loan Corp. v. SLM Corp.*, 396 F.3d 588, 589 (4th Cir. 2005). The parties

entered a loan agreement under which "the obligations of the parties included compliance with the

HEA." *Id.* at 592. When one party sued Sallie Mae, asserting a breach of the contract via a violation

of the HEA, Sallie Mae argued the plaintiff had no such cause of action because there is no private

right of action under the HEA. *Id.* at 593. The district court acknowledged this argument, but instead held that the breach-of-contract claim was preempted by the HEA. *Id.*

The Court of Appeals rejected both arguments. First, it noted that "the Supreme Court (and this Court as well) has recognized that the availability of a state law claim is even *more* important in an area where no federal private right of action exists." *Id.* at 598 (emphasis in original). It further observed that *both* parties "voluntarily included federal standards" in their agreement, and "[b]oth *expressly agreed* to comply with the HEA." *Id.* As such, the Court held that Sallie Mae's argument was effectively that "it was free to enter into a contract that invoked a federal standard as the indicator of compliance, then to proceed to breach its duties thereunder and to shield its breach by pleading preemption." *Id.* Here, as there, "federal supremacy does not mandate such a result." *Coll. Loan Corp. v. SLM Corp.*, 396 F.3d 588, 598 (4th Cir. 2005); *see also Delaware & Hudson Ry. Co.*, 781 F.3d 656, 667–68 (3d Cir. 2015) (quoting *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 326 (4th Cir. 2012) ("when a party to a contract voluntarily assumes an obligation to proceed under certain state laws, traditional preemption doctrine does not apply to shield a party from liability for breach of that agreement"). These decisions are compelled by *Wolens* and *Ginsberg*, which do not shield parties from breach-of-contract liability for "the breach of [their] own, self-imposed undertakings." *Id.* (quoting *Wolens*, 513 U.S. at 228).

Accordingly, where compliance with outside law is expressly required by the parties' agreements, courts routinely find breach-of-contract claims based on these agreements are not preempted, even if the courts would be required to reference external sources to interpret the parties' contractual obligations. For example, in *American Airlines*, the court explained that "*Wolens* differentiates between holding an airline to the bargain it struck and to one enlarged or enhanced by state laws or policies external to the agreement … American agreed to be bound to its privacy policy, ***except as required by law***. In other words, the laws that American maintains are external to the

contract are expressly incorporated into it." 370 F. Supp. 2d at 566. Accordingly, the court rejected American's preemption argument, finding that whether plaintiffs' data had been shared "as required by law" did not require the court to "resort to outside sources of law." *Id.* at 565; *see also, e.g., Travel All Over the World,* 73 F.3d at 1435; *Dover v. British Airways, PLC (UK),* 2013 WL 5970688, at *4 (E.D.N.Y. Nov. 8, 2013); *Giannopoulos v. Iberia Lineas Aereas de Espana, S.A.,* 2011 WL 3166159, at *3 (N.D. Ill. July 27, 2011) (breach-of-contract claim not preempted because the defendant airline "specifically refers to complying with EU 261 in its conditions of contract," voluntarily authorizing the court to examine international judicial interpretations of EU 261).[10]

At bottom, the ADA only preempts common law contract claims that seek to "enlarge[] the contractual obligations that the parties voluntarily adopt." *Ginsberg,* 572 U.S. at 276; *see also Hickcox-Huffman,* 855 F.3d at 1062 (the "central issue" is whether the obligation is one "the parties voluntarily undertook") (citation omitted). Thus, ADA preemption precludes suits that seek to enforce mandatory external state law claims *related to* the contract—like mandatory state regulations designed to afford broad protections to consumers—and simply does not logically apply to analysis of laws that the parties expressly incorporated by the contract at issue. Even if the outside law were state law, rather than federal, Southwest's argument would have no force. In *Wolens* itself, the petitioner contended that the breach-of-contract claims against it should be preempted because those claims "inescapably depend on state policies that are independent of the intent of the parties," such as whether petitioner's express contractual reservation of the right to modify the terms of the program at issue was valid. *Wolens,* 513 U.S. at 233. The Court rejected that argument because it is one of "contract interpretation"—in other words, interpreting the terms of the parties' agreement, even if

---

[10] In support of its argument, Southwest relies only on *Shrem v. Southwest Airlines Co.,* 2017 WL 1478624, at *2 (N.D. Cal. Apr. 25, 2017), where the court found preempted a breach-of-contract claim alleging that Southwest did not clearly disclose the terms of its refund promise, as plaintiff alleged Southwest was required to do by federal regulation. However, in *Shrem,* unlike the cases cited above, the contract at issue "[did] not incorporate federal laws, regulations, and rules," including the one plaintiff alleged Southwest had breached. *Id.* Accordingly, *Shrem* lends no support to Southwest's argument.

that interpretative task requires reference to an outside source of law, is within the scope of the *Wolens* exception to preemption.  513 U.S. at 234; *see also Ginsberg*, 572 U.S. at 288 (noting that although a state-imposed covenant of good faith and fair dealing was preempted, the parties may still contract for it: "an airline can decide whether the benefits of such a provision are worth the potential costs"); *Polinovsky v. Deutsche Lufthansa, AG*, 2012 WL 1080415, at *2–3 (N.D. Ill. Mar. 30, 2012) (where international law incorporated in agreement, compliance was a "self imposed undertaking" and contract claim based on violation of the law not preempted); *Kleiner*, 2009 WL 10674260 at *3 (where FAA regulations incorporated in Contract of Carriage, breach-of-contract claim based on failure to comply with regulation not preempted).

## B.      Third-Party Beneficiary Claims Fall within the *Wolens* Exception

Finally, Southwest contends that *all* contract claims in which the plaintiff is a third-party beneficiary are preempted because determining whether Delta is a third-party beneficiary of the Lease Agreements would require this court to look to "state law . . . external to the agreement."  Mot. at 9 (quoting *In re Am. Airlines, Inc., Privacy Litig.*, 2005 WL 3323028, at *3 (N.D. Tex. Dec. 7, 2005)). Southwest's position is directly contradicted by the law of the Supreme Court and the Fifth Circuit because the ADA does not preempt, or prohibit courts from applying, ordinary state law rules of contract interpretation.

As a general rule, "the ADA permits state-law-based court adjudication of routine breach-of-contract claims" and by doing so, does not preempt "the contract laws of the states." *Wolens*, 513 U.S. at 230, 232.  Since *Wolens,* the Supreme Court has further explained that the ADA does not expressly preempt all state common law claims. *See Ginsberg*, 572 U.S. at 273.  In *Ginsberg*, the Court determined that a common law mandatory *implied* covenant of good faith and fair dealing was preempted under the ADA because it imposed a mandatory "state-imposed obligation," that provided no right for the

parties to opt out.  *Ginsberg*, 572 U.S. at 276, 286, 288 ("A State's implied covenant rules will escape preemption only if … the airline can specify that the agreement does not incorporate the covenant.").

Importantly, *Ginsberg* focused upon the rights of the parties to freely contract around any state imposed obligations in deciding whether or not the ADA's preemption provision barred a particular suit.  The Court determined that enforcement of the common law covenant did not "effectuate the intentions of parties or . . . protect their reasonable expectations" because it applied generally to "every contract" and was specifically intended to enforce the state's public policies "of decency, fairness, or reasonableness."  *Id.* at 286.  The common law covenant expressly prohibited the parties from contracting out of the state-imposed obligation, and thus, the Court concluded that it cannot be one that the parties "voluntarily undertook," and so it was preempted.  *Id.* at 287, 284–85.  In finding the specific state law preempted by the ADA, *Ginsberg* also reaffirmed *Wolens*, explaining that the ADA *does not* preempt claims for the breach of "privately ordered obligations" or rules that the parties can "contract around."  *Id.* at 281, 288; *see also id.* at 286 (noting that if plaintiff had pled a breach-of-contract claim, his suit may not have been preempted); *Hickcox-Huffman*, 855 F.3d at 1061–62.  Thus, the Court's opinion turned expressly upon whether the contract could disclaim any obligations under the common law covenant in determining whether it was preempted.  *Ginsberg*, 572 U.S. at 288.

Here, Southwest and the City could have, but did not, disclaim any obligations to third parties.  Instead, Southwest and the City affirmatively *agreed* that Southwest would accommodate third parties seeking entry to the airport, and that it would comply with the grant assurances.[11]  Whether Delta can sue to enforce that promise is determined by evaluation of the contract.  That is, under Texas law, courts determine whether a party is a third-party beneficiary to a contract by assessing whether the contracting parties demonstrated the "intent to benefit a third party" as determined by analysis of "the

---

[11] *See* Southwest App. at 067 [Exhibit 25 § 14.03(B)(1)].

entire agreement, giving effect to all its provisions." *City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011). It is the intention of the contracting parties that governs the third-party beneficiary analysis. *See id.* ("We do not create a third-party benefit by implication; the presumption is the parties contracted only for themselves, absent a clear showing of intent otherwise."); Delta App. 137–38 [Restatement (Second) of Contracts § 304 ("the parties to a contract have the power, if they so intend, to create a right in a third person.")].

Because Texas' rules relating to third-party beneficiaries effectuate only "the intentions of parties," *Ginsberg*, 572 U.S. at 286, they are not preempted by the ADA. In its argument to the contrary, Southwest relies almost exclusively on an unpublished pre-*Ginsberg* opinion, *In re American Airlines, Inc., Privacy Litig.*, 2005 WL 3323028, at *3 (N.D. Tex. Dec. 7, 2005). In *American Airlines*, the district court reasoned that the ADA preempted breach of contract claims by third-party beneficiaries because the court would be required to analyze state law—Texas law on third-party beneficiaries—to adjudicate the claim. *Id.* at *3. However, this case does not survive the Supreme Court's later decision in *Ginsberg*, which clarified that state rules of contract interpretation are *not* preempted if those rules effectuate the parties' intentions, 572 U.S. at 286, which is precisely what Texas' law of third-party beneficiaries does. *Williams*, 353 S.W.3d at 145.

Southwest's reliance on *A.C.L. Computers & Software, Inc. v. Fed. Express Corp.*, is equally unconvincing. Mot. at 9 (citing *A.C.L.*, 2016 WL 946127, at *4 (N.D. Cal. Mar. 14, 2016)). *A.C.L.*, which does not cite *Ginsberg*, addresses California law, where the plaintiffs argued that, in stark contrast to Texas law, "the law of third party beneficiaries" does not require "an intent to benefit a third-party be manifested by the promisor." *Id.* Thus, *A.C.L.* does not examine the issue of third-party beneficiaries in the context of a circumstance where the parties' assent is key—which is precisely the circumstance where *Ginsberg* indicates a claim is not preempted.

In the wake of *Ginsberg*, courts have routinely found that third-party beneficiary claims are *not* preempted by the ADA or analogous statutes. Instead, because duties to third-party beneficiaries are voluntarily undertaken by the contracting parties, *see Williams*, 353 S.W.3d at 145, and "duties voluntarily undertaken cannot be considered as 'state imposed,'" *Delaware & Hudson Ry. Co.*, 781 F.3d at 668; *see also, e.g.*, *Seals v. Delta Air Lines, Inc.*, 924 F. Supp. 854, 857 (E.D. Tenn. 1996) (breach-of-contract claim by potential third-party-beneficiary not preempted); *Aretakis v. Fed. Exp. Corp.*, 2011 WL 1226278, at *6 (S.D.N.Y. Feb. 28, 2011), *report and recommendation adopted*, 2011 WL 1197596 (S.D.N.Y. Mar. 25, 2011); *Gulf Coast Shippers Ltd. P'ship v. DHL Exp. (USA), Inc.*, 2011 WL 4443434, at *2 (D. Utah Sept. 23, 2011); *cf. Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 327 (4th Cir. 2012) (breach of contract claim against successor-in-interest not preempted).

## III. Conflict Preemption Does Not Bar Delta's Claims

Southwest next contends that Delta's breach-of-contract claims are subject to conflict preemption. Mot. at 11–14. Specifically, it argues that allowing a breach-of-contract claim based on the grant assurances will conflict with the FAA's enforcement scheme. *Id.* However, "[a] federal court's preemption decision ordinarily does not undo independent contractual obligations." *Erie Boulevard Hydropower, LP v. Fed. Energy Regulatory Comm'n*, 878 F.3d 258, 267 (D.C. Cir. 2017) (citing *Wolens*, 513 U.S. 222). Southwest gives no reason that principle should not apply here.

Under the doctrine of conflict preemption, state laws may be preempted by implication "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995). Though in some cases conflict preemption occurs when allowing state law claims would interfere with a federal agency's enforcement prerogatives, *see Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001), conflict preemption is not required every time a federal enforcement scheme exists. "Ordinarily, the mere existence of a federal regulatory or enforcement scheme, even [a] detailed [one], does not by itself imply pre-emption

of state remedies. . . .  Undoubtedly, every subject that merits congressional legislation is, by definition, a subject of national concern.  That cannot mean, however, that every federal statute ousts all related state law."  *Hillsborough Cty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 719 (1985).  Indeed, "agencies normally deal with problems in far more detail than does Congress.  To infer pre-emption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive."  *Id.* at 717.  But that is not the case.  *See id.*  Instead, courts "look for special features warranting pre-emption."  *English v. Gen. Elec. Co.*, 496 U.S. 72, at 87 (1990).  Specifically, conflict preemption "turns on the identification of 'actual conflict.'"  *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 884 (2000) (internal citation omitted).

Southwest contends that permitting this suit could hinder the DOT's ability to have an appropriate agency response because "a private party 'could sanction noncompliance.'"  Mot. at 11.  But that makes no sense.  Delta's argument is that Southwest, the City, and United have breached the Lease by violating the grant assurances that are incorporated into that contract.  *Id.*  If this Court agrees, it is mandating compliance with contractual obligations, not "sanction[ing] noncompliance" with the grant assurances.  And if this Court disagrees and holds that the contract does not require accommodation of Delta, that does not prevent the DOT from exercising its authority to withhold grant money from the City for its violation of the grant assurances.  That the DOT is waiting for the outcome of this Court suit before pursuing a Part 16 proceeding decidedly does not counsel in favor of this Court refusing to decide this case.[12]  This Court's authority to resolve Southwest's compliance with the contractual obligations it voluntarily undertook is independent of, and does not interfere

---

[12] Delta App. 138 [Exhibit 1483 (DOT informs City on June 19, 2018 that its decision to decline to comment "should not be construed as either an endorsement or rejection of your proposed accommodation policy, and is not a final agency action.  DOT reserves the right to take any and all actions it determines to be appropriate with respect to Love Field.")]

with, the DOT's determination of whether to withhold funds from the City as a result of the City's violation of the assurances it made to obtain those funds.

Southwest next contends that conflict preemption applies here pursuant to *Buckman* because, as in that case, allowing private enforcement of claims ordinarily delegated to the agency's prerogative would skew the "delicate balance of statutory objectives" evidenced by the agency's enforcement mechanism. 531 U.S. at 348. But *Buckman* bears no resemblance to this case. In *Buckman*, the Court found that plaintiffs' state-law fraud-on-the-FDA claims were preempted because those claims would conflict with the agency's own enforcement procedures designed to punish and deter fraud while advancing other statutory objectives. *Id.* There, the difficult balance struck by the FDA was clear: for example, the FDA maintained dual approval mechanisms that might apply to the same device— one exhaustive, and one quick to ensure devices are reasonably safe and effective and on the market within a short period of time; the FDA also regulated use of "off-label" devices as "an accepted and necessary corollary of the FDA's mission to regulate in this area without directly interfering with the practice of medicine." *Id.* at 349–50. The conflict that would follow from permitting a fifty-state tort regime to police potentially fraudulent statements made to the agency would also be "dramatic," as cautious manufacturers might submit extra documentation to avoid state tort liability, thereby slowing a process designed by the FDA to be quick, and "deter[ring] off-label use despite the fact that the FDCA expressly disclaims any intent to directly regulate the practice of medicine." *Id.* at 350–51.

The concerns present in *Buckman* are absent here. The policies animating the program do not evidence the "delicate balance" between competing priorities seen in *Buckman*; instead, the statutory purposes highlight the importance of developing "a national intermodal transportation system that transports passengers and property" safely and "in an efficient manner" while "foster[ing] competition." 49 U.S.C. § 47101(b), (d); *see also id.* §§ 47101(a), (d), (e), (f). Nor do the DOT's regulations evidence the complexity of those in *Buckman*: the DOT has grantmaking authority "[t]o

maintain a safe and efficient nationwide system of public-use airports that meets the present and future needs of civil aeronautics." 49 U.S.C. § 47104(a). It may issue a grant where, for instance, "the interests of the community in or near which the project may be located have been given fair consideration" by the applicant, the applicant has submitted a competition plan, and the applicant gives written assurances that "the airport will be available for public use on reasonable conditions and without unjust discrimination." 49 U.S.C.A. §§ 47106–47107.

These regulations do not evidence a "delicate balance" of complex competing priorities. And unlike the obvious interference present with the delicate balance in *Buckman*, Southwest points to no reason why permitting private enforcement, through a breach-of-contract claim, of grant assurances that require competition and are incorporated into the contract, would interfere with any balance struck by the Department of Transportation here. *See* Mot. at 12–13. In fact, as one court found, "in light of the mechanism Congress chose to implement its goals" through the grant program, local enforcement that is consistent with those goals "does not collide with Congress' purpose of encouraging airport development in conformity with certain policy goals through providing federal funding for such projects" and so is not preempted. *City of Cleveland, Ohio v. City of Brook Park, Ohio*, 893 F. Supp. 742, 749 (N.D. Ohio 1995) (upholding local ordinance requiring conditional use permits also addressed by DOT regulations). In addition, a fraud-on-the-FDA claim attempts to regulate what is given to the FDA and its evaluation of that information; in contrast, Delta's breach-of-contract claim simply seeks to enforce an obligation to which Southwest voluntarily agreed.

Absent the potential of destruction of a delicate balance, conflict preemption is concerned with actual conflict—conflict that is not found where a private party attempts to enforce a statutory purpose through tort or contract. *E.g.*, *Coll. Loan Corp. v. SLM Corp.*, 396 F.3d 588, 597 (4th Cir. 2005) ("neither the district court nor the parties have explained how [the agency's] statutory purposes would be compromised by a lender . . . pursuing breach of contract or tort claims against other lenders or

servicers"). That is because "a state cause of action that seeks to enforce a federal requirement 'does not impose a requirement that is different from, or in addition to, requirements under federal law.'" *Wigod*, 673 F.3d at 579–80 (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 448 (2005)). Indeed, in this case Delta's breach of contract claims complement the statute's purposes by encouraging competition at Love Field. There is no conflict here.

Southwest also contends that the grant assurances' lack of a private right of action is further evidence of conflict preemption. Mot. at 13–14. However, as explained at greater length above, Southwest's theory that "the lack of a private right of action under a regulatory statute necessarily preempts or otherwise displaces a state law cause of action [here, breach of contract] that makes the violation of that regulatory statute an element of the claim" is "mistaken at its core." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 654 (7th Cir. 2015). As other circuits have recognized, "[t]he absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law. To find otherwise would require adopting the novel presumption that where Congress provides no remedy under federal law, state law may not afford one in its stead." *Id.* (quoting *Wigod*, 673 F.3d at 581); *see also Delaware & Hudson Ry. Co.*, 781 F.3d at 671; *Coll. Loan Corp. v. SLM Corp.*, 396 F.3d 588, 597 (4th Cir. 2005).

Neither *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), nor the other cases relied on by Southwest, counsel a different result. As the *Delaware & Hudson Railway Co.* court explained in distinguishing *Astra*'s preemption analysis, *Astra* did not create a no-private-right-of-action-means-preemption rule; indeed, in other cases the Court has permitted "enforcement of [federal laws] through state-law claims even when there was no private right of action." 781 F.3d at 668 n.17. Southwest has previously sought to dismiss Delta's claims on the theory that they would effectively provide a private right of action in violation of *Astra*, and this Court has denied that motion. Delta incorporates by reference its previous briefing on this point. *See* ECF 388, at 12–14. At bottom, *Astra*

dealt with creation of a federal common law remedy, not with state law, and addressed "'form agreements' that 'simply incorporate[d] statutory obligations and record[ed] the manufacturers' agreement to abide by them' but 'contain[ed] no negotiable terms.'" *Id.* (quoting *Astra USA, Inc.*, 563 U.S. at 118). In *Astra*, the "statutory and contractual obligations, in short, [we]re one and the same." *Astra USA, Inc.*, 563 U.S. at 118. Here, in contrast, Southwest did not become bound to comply with the specific accommodation provision of Section 4.06(F) and the grant assurances until it undertook to do so in its contract. As the Third Circuit cautioned in *Delaware & Hudson Railway Co.*, Southwest's type of theory would "allow, and perhaps encourage, manufacturers to make grand contractual promises to obtain a deal and then breach their duties with impunity." 781 F.3d at 668. That conflicts with the Supreme Court's "salutary 'you've made your own bed, now lie in it' quality," reflected in *Wolens* and *Ginsberg*, that "emphasize[s] the importance of voluntarily assumed contractual obligations." *Id.* Contracts that "involve[] negotiated duties voluntarily assumed by the parties" are not covered by *Astra*'s treatment of form agreements with "no negotiable terms." *Id.* at 668 n.17.[13]

Because Delta's breach-of-contract claims do not conflict with the grant assurances' purposes or enforcement mechanisms; conflict preemption does not apply.[14]

---

[13] Nor does *Grochowski v. Phoenix Const.*, 318 F.3d 80 (2d Cir. 2003), lend support to Southwest's claim. That court relied on the lack of a private right of action in a federal labor standards statute, combined with a federal enforcement mechanism, to find a breach-of-contract claim incorporating that statute was preempted. *Id.* at 86. But as the dissent in that case, and panels in other circuits, have pointed out, the *Grochowski* court's conclusion was based on the idea of obstacle preemption— the *Grochowski* majority did not engage in preemption analysis, and indeed "there is no evidence that Congressional intent . . . was to preempt state law." *Wigod*, 673 F.3d at 584 (citing *Grochowski*, 318 F.3d at 90 (Lynch, J., dissenting)). *Strange v. Flagstar Bank, FSB*, 2012 WL 987584 at *4 (N.D. Tex. Mar. 22, 2012), is even less apposite, as it is not a preemption case at all, but a case that holds that a party may not sue in certain circumstances where "a government contract confirms a statutory obligation." Unlike *Flagstar Bank*, this case involves a lease agreement with the City, not a federal government contract.

[14] Southwest also contends that Delta's claims conflict with WARA. Mot. at 15 n.23. WARA expressly provides that "[t]o accommodate new entrant air carriers, the city of Dallas shall honor the scarce resource provision of the existing Love Field leases." Delta App. 20 [Exhibit 77, WARA § 5(a)]. Delta's breach of contract claims—which all demand accommodation as a new entrant air carrier to Love Field—do not conflict with the purposes of WARA.

### IV.   Impossibility Does not Preempt Delta's Claims

Finally, Southwest contends that Delta's claims under Article 14 are preempted by impossibility: according to Southwest, it would be impossible to both accommodate Delta—the result Delta seeks through its breach-of-contract claims—and to comply with WARA., PL 109-352 (Oct. 13, 2006)  Mot. at 15.  Southwest is wrong.  "Impossibility pre-emption is a demanding defense," *Wyeth v. Levine*, 555 U.S. 555, 573 (2009); it succeeds only "where compliance with both federal and state regulations is a physical impossibility," *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963).

Southwest points to no such "physical impossibility" here.  Southwest's claims of impossibility stems from a provision of WARA that it says "expressly precludes any interpretation of the grant assurances that modifies the terms of the lease."  Mot. at 15 (citing WARA § 5(e)(2)(B)(ii)).  But Delta seeks to *enforce* the lease, not modify it.  As this Court and the Fifth Circuit have already concluded for purposes of a preliminary injunction, requiring Southwest to accommodate Delta is compelled by the lease, which means it is, by definition, not a modification of it.  The City and the Signatory Carriers are plainly and clearly obligated to accommodate requesting airlines seeking to compete at a federally funded but gate constrained airport under Section 4.06(F) of the Lease, Section 5(a) of WARA, and the Five Party Agreement.  Nothing in the DOT's guidance suggests that the "use it or lose it" policy explained in the DOT letters is in any way a *change* to the DOT's interpretation of accommodation or the City's and Southwest's obligations pursuant to the Lease.[15]  Second, WARA's terms are expressly limited to the action of any "federal agency" to "require the City of Dallas" to make any lease modification, unless it is "implemented on a nationwide basis."[16]  Federal agencies are creations of the executive branch, *see, e.g.*, 49 U.S.C.A. § 47175(6); the provision places no limitation on what may be

---

[15] *See generally*, Delta App. 12–18 [Exhibits 71, 73].

[16] Delta. App. 20–21 [Exhibit 77, WARA §§ 5(e)(1)(E), 5(e)(2)(B)(ii)].

accomplished by court order.[17]   Southwest has long contended that the DOT letters "modify" the terms of the Lease, but that is simply false.[18]   Southwest holds a preferential lease subject to accommodation; its preferential right gives it the "primary, but not sole" use of that space.[19]

Southwest also contends that WARA's requirement that the City of Dallas honor the Lease Agreements' "scarce resource provision," § 5(a), creates another source of impossibility preemption: according to Southwest, Section 4.06(F) requires that "accommodations give way to the preferential leaseholder's scheduling priority," but Delta contends that Article 14 requires an accommodation on a "use it or lose it basis."   As briefed at great length in Delta's motion for summary judgment and other briefing in this case, Delta contends that all provisions of the lease point the same way:  that a signatory airline is required to accommodate an airline seeking to fly from Love Field on a non-discriminatory, use-it-or-lose-it basis so long as the signatory airline has space available when the other airline requests it.   *See generally, e.g.,* ECF 362 (Delta Summary Judgment Brief); ECF 413 (Delta Summary Judgment Reply Brief).   Southwest has manufactured a supposed impossibility by misconstruing the unambiguous terms of the Lease and mischaracterizing Delta's claims.

## V.      Delta is a Third-Party Beneficiary of Article 14

Southwest next claims that Delta is not a third-party beneficiary of the lease.  Mot. at 16.  Delta has repeatedly set forth the reasons it is a third-party beneficiary, and this Court has rejected Southwest's argument.   Delta incorporates its prior briefing by reference here, which remains fully

---

[17] For the same reasons, WARA's Section 5(d)(1) poses no impossibility because that section expressly limits only the actions of the "the Secretary of Transportation and the Administrator of the Federal Aviation Administration." Furthermore, the WARA provisions at issue here limit only what a "federal agency" may require of the "City of Dallas"— not what an agency may require of Southwest.  Delta. App. 20–21 [WARA §§ 5(e)(1)(E), 5(e)(2)(B)(ii)].  Impossibility preemption occurs "where it is impossible for a *private party* to comply with both state and federal law," *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 363 (2000) (emphasis added), so this is yet another reason to reject Southwest's preemption argument.

[18] *See generally*, Delta App. 12–18 [Exhibits 71, 73].

[19] Southwest App. 028–30 [Exhibit 25 § 4.06F].

applicable to Southwest's slight variation on its argument.  *See, e.g.,* ECF 388.  In particular, Southwest seeks a different result by asserting that Delta is at least not a third-party beneficiary of Article 14. Mot. at 16.  But Southwest is wrong.  It offers no support for its assertion that Article 14's provisions are only "intended to benefit a contracting party, the City, in navigating its relationship with the DOT." Mot. at 17.  In fact, grant assurances 22 and 23, no less than Section 4.06(F), plainly benefit airlines that seek to compete at Love Field.

Grant assurances 22 and 23 require the City to make Love Field available to "for public use on reasonable conditions without unjust discrimination" and forbid the grant of "an exclusive right to use the airport" to any airline.  49 U.S.C. §§ 47107(a)(1), (a)(4).  Long before Southwest entered into its Lease Agreement with the City, the FAA "ha[d] interpreted the reasonable access provision as requiring access for new entrants . . . some arrangements for accommodation must be made if reasonably possible."[20]  Indeed, "all federally assisted airports are bound by federal grant assurances that require the airport operator to accommodate reasonable requests for access by a new entrant carrier . . . an airport may not deny access to its facilities based solely on existing lease arrangements."[21] Delta is entitled to reasonable accommodation under the Grant Assurances.  The City, as the operator of a federally assisted airport, is obligated to accommodate Delta's requests under those same Grant Assurances.

Moreover, the FAA has interpreted the grant assurance prohibition on exclusive rights as "enjoin[ing] the airport operator from granting any special privilege or monopoly in the use of public use airport facilities" in order to "promote and encourage competition in the provision of air

---

[20] Delta App. 60 [Exhibit 304 at 304.0039 (citing FAA Order 5190.6A (1989)]; Exhibit 304, the FAA/OST Task Force Study entitled Airport Business Practices and Their Impact on Airline Competition (Oct. 1999), is the FAA's authoritative guidance document on airport competition.

[21] *Id.* at 34 [Exhibit 304 at 304.0013].

services."[22]  Though these statements were not made in the context of Delta's particular request, it clearly benefits competition, and Delta is the only competition currently seeking to challenge Southwest's de facto control of Love Field.  The agency's reasoned interpretations of its own regulations and the statutes they implement are entitled to deference, *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 407–08 (5th Cir. 2010) (en banc), and are proper for the Court's consideration in assessing the intentions of the parties to the contract, *see, e.g.*, *United States v. Mwalumba*, 688 F. Supp. 2d 565, 573 (N.D. Tex. 2010); Delta App. 144–45 [Restatement (Second) of Contracts § 202 ("interpretation [of a written agreement] is directed to the meaning of that writing in the light of the circumstances . . . includ[ing] the entire situation, as it appeared to the parties)].

The grant assurances imposed upon the City a legal obligation to accommodate Delta as a new entrant at Love Field.  Southwest agreed to satisfy that obligation by promising to perform pursuant to those grant assurances in the Lease Agreement.  A third-party is a creditor beneficiary with rights to enforce a contractual promise where "performance will come to [the third party] in satisfaction of a legal duty owed to him by the promisee." *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999).  "[A] promisor who agrees to satisfy an obligation that the promisee owes to a third party thereby confers enforcement rights to the third party, who qualifies as a creditor beneficiary to the contract." *Excel Willowbrook, L.L.C. v. JP Morgan Chase Bank, Nat. Ass'n*, 758 F.3d 592, 597 (5th Cir. 2014).  Because the City owed Delta a duty to provide it non-discriminatory access to Love Field, and Southwest agreed to satisfy that obligation by promising to comply with the grant assurances itself, Delta is a third-party creditor beneficiary with the right to enforce Southwest's promise.[23]  In addition, Delta is an intended beneficiary because, at a minimum, there is a fact question

---

[22] *Id.* at 65 [Exhibit 304 at 304.0044].

[23] Southwest also contends that because the grant assurances lack a private right of action, Delta has no right to enforce the grant assurances even if they are incorporated under Article 14.  Mot. at 17.  As explained above, regulations for which

of whether "the contracting parties 'intended to secure a benefit to [a] third party' and 'entered into the contract directly for the third party's benefit.'" *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017).[24]

## VI.   Delta Has a Viable Request for Declaratory Relief Seeking To Invalidate the Sublease.

Southwest summarily asserts that Delta has not properly asserted a substantive right of action to support a declaration that the sublease is void.  Mot. at 18.  Count II of Delta's Fourth Amended Counterclaims asks this Court to declare that United's sublease violates grant assurances 22 and 23, 49 U.S.C. § 47107(a), 49 U.S.C. § 40103(e), the City's competition plan, and the strong federal policy of promoting competition at Love Field that is embodied in those authorities.[25]  "[I]f a contract violates public policy, it is void, not merely voidable." *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 555 (Tex. 2001).  "The purpose of this rule is to benefit and protect the public[.]" *Haub v. Axon Downhole Tools, Inc.*, 2013 WL 6731937, at *5 (S.D. Tex. Dec. 19, 2013) (citation and internal quotation marks omitted).

Southwest simply ignores this law; it does not confront Delta's argument that the sublease is void *at all*.  Instead, it asserts that Delta cannot sue to enforce the competition plan.  That is a non sequitur.  Count II does not seek to enforce the competition plan, but to void the unlawful sublease.  Accordingly, Delta's claim is proper.

---

there is no private right of action become privately enforceable when they "are expressly incorporated into" an "agreement." *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 196 (5th Cir. 2016).  Southwest's argument is meritless.

[24] Southwest also asserts that Delta lacks proof of the elements of its tortious interference claim.  Delta incorporates by reference its response to United's motion for summary judgment on this point.

[25] Delta App. 5–6 [Counterclaims, ECF 346 ¶¶ 110–22].

## CONCLUSION

For the reasons set forth above, Southwest's motion for summary judgment should be denied.


DATED:  October 12, 2018                    Respectfully submitted,


                                            */s/ William B. Dawson*
                                            William B. Dawson
                                              Texas Bar No. 05606300
                                              wdawson@gibsondunn.com
                                            Karl G. Nelson
                                              Texas Bar No. 14900425
                                              knelson@gibsondunn.com
                                            Ashley E. Johnson
                                              Texas Bar No. 24067689
                                              ajohnson@gibsondunn.com
                                            Russell H. Falconer
                                              Texas Bar No. 24069695
                                              rfalconer@gibsondunn.com
                                            GIBSON, DUNN & CRUTCHER LLP
                                            2100 McKinney Avenue, Suite 1100
                                            Dallas, Texas 75201-6911
                                            Telephone: (214) 698-3100
                                            Facsimile: (214) 698-3400

                                            **COUNSEL FOR DELTA AIR LINES, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2018, I electronically filed the foregoing document with the Clerk of Court for the United States District Court for the Northern District of Texas using the electronic case filing system of the Court.  Service on all attorneys of record who are Filing Users will be automatically accomplished through Notice of Electronic Filing.

*/s/ William B. Dawson*
William B. Dawson