# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

| | | |
|---|---|---|
| CITY OF DALLAS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| DELTA AIR LINES, INC., SOUTHWEST AIRLINES CO., VIRGIN AMERICA INC., AMERICAN AIRLINES, INC., UNITED AIRLINES, INC., SEAPORT AIRLINES, INC., UNITED STATES DEPARTMENT OF TRANSPORTATION, AND THE FEDERAL AVIATION ADMINISTRATION | § § § § § § § § | CIVIL ACTION NO. 3:15-CV-02069-K |
| *Defendants.* | § § | |

**DELTA AIR LINES, INC.'S MOTION TO UNSEAL**
**RESPONSE TO UNITED'S MOTION FOR SUMMARY JUDGMENT**

Delta respectfully asks the Court to unseal Delta's Memorandum in Support of its Response to United's Motion for Summary Judgment concurrently filed herewith ("MSJ Response"). Delta filed its MSJ Response under seal pursuant to the terms of the Amended Confidentiality Agreement and Protective Order issued in this case on March 29, 2018 (the "Protective Order"). Dkt. No. 407 ¶ 9. The Protective Order prohibits any party from publicly filing documents a party has designated as Confidential or Highly Confidential, and permits a party to file such documents under seal without leave from the Court. *Id.* ¶¶ 6–7, 9. United designated many of the documents Delta cites in the MSJ Response as Confidential or Highly Confidential, and further filed its entire Motion for Summary Judgment and Appendix under seal. Accordingly, Delta was required to file the aspects of the MSJ Response that address documents designated Confidential or Highly Confidential under seal. Because United treated its entire brief as Confidential by filing it under seal, Delta likewise filed its MSJ Response under seal to ensure it did not inadvertently disclose material which United claimed a right to keep confidential.

There is a well-established presumption in this Circuit that the public has "presumptive access to judicial records." *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993); *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 2012 WL 12893404, at *3 (S.D. Tex. Sept. 27, 2012). United's motion and Delta's Response, as well as the supporting documents, are judicial records to which the public presumptively should have access. Delta accordingly asks this Court to unseal Delta's MSJ Response upon a finding that its contents need not be kept from the public.

Notably, judicial records like the MSJ Response are subject to very different treatment than material disclosed in discovery, much of which will never be considered or relied upon by the Court. Courts frequently issue protective orders, as this Court did here, that limit public disclosure of discovery materials while discovery is conducted and courts consider non-dispositive motions. But once the universe of produced documents is narrowed to the much smaller set that the parties submit to the

Court for use in deciding dispositive motions or trial, the public's right to access judicial records increases, and the standard a party must meet to keep records confidential becomes more strict.

Here, no good cause exists to maintain the sealed status of the MSJ Response and supporting appendix. Many of the documents designated as Confidential or Highly Confidential are materially similar to documents already made public through the public injunction hearing in this case, such that no substantial portion of those documents remains confidential.[1] Moreover, none of the documents reflect highly sensitive trade secrets or other proprietary information that would be harmful if disclosed. Instead, the documents generally consist of email communications from several years ago about United's normal business activities. United no doubt wishes to keep the documents confidential because they are highly relevant to the scheme that Southwest and United undertook to block Delta's accommodation. But the fact that documents revealing United's and Southwest's actions paint them in a negative light does not overcome the public right of access.

## RELEVANT BACKGROUND

In June of 2015, the City filed this lawsuit (Dkt. No. 1) after a protracted dispute between Southwest, Delta, United, Virgin, and American over gate space at Love Field. The City sought injunctive and declaratory relief. Delta and Southwest each filed counterclaims and crossclaims seeking declaratory and injunctive relief. In September 2015, the Court held a three-day public hearing on the parties requests for preliminary injunctive relief. *See* Dkt. Nos. 211–13. News media attended and reported extensively about the arguments and evidence presented at the hearing, including Southwest's disclosure for the first time that it paid a previously secret $120 million to United to sublease two gates

---

[1] App. 13–15 [Johnson Decl. Ex. C]. Exhibit C notes for the Court a few materials that may contain some non-responsive confidential material that may justify redacting. Delta seeks to publicly file only the materials contained in those documents relevant to its pending motion.

at Love Field in September 2014.[2] This Court's eventual order and all the post-hearing briefing, admitted exhibits, and transcripts submitted in connection with the hearing were discussed and presented in open Court, and many of these materials have subsequently been filed publicly via ECF. *See, e.g.*, Dkt. Nos. 211–13 (transcripts); 214–221 (post-hearing briefs); 257 (Order). Southwest then appealed the Court's Order. The entire round of briefing for the Fifth Circuit, and its Order affirming this Court's January 6, 2015 Order, are available to the public. *See City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279 (2017) (Dkt. No. 16-10051).

The case was remanded to this Court in mid-2017. Since that time, the parties have filed amended complaints and counterclaims, answers, and substantive briefs including motions for summary judgment, all publicly. *See, e.g.*, Dkt. Nos. 231, 252, 345, 346, 362, 368, 379, 381, 384, 388, 413, 437, 438, 465, 466 468, 469, 498, 499. United's Motion for Summary Judgment, (Dkt. No. 494-96), challenges Delta's claims that attack the unlawful sublease United executed with Southwest, the theory and basis for which became public at the hearing, (Dkt. No. 211 (Delta Opening Statement)), and was briefed extensively afterwards. *See, e.g.*, Dkt. Nos. 231–33 (Delta Post-Hearing Brief and Appendix).

Over the past several months, the parties have conducted additional discovery on those same claims. Delta's MSJ Response, filed concurrently herewith, incorporates new discovery related to its claims, including documents just recently produced. None of the new material incorporated into the motion contains sensitive or proprietary information that could properly be sealed; however, newly produced documents provide compelling evidence supporting Delta's arguments in this case, as addressed in Delta's recent motion seeking the deposition of former United CEO Jeffrey Smisek.

---

[2] *See, e.g.*, NBC DFW, "Southwest Paid $120 Million for 2 Gates at Love Field," *available at* https://www.nbcdfw.com/news/local/Southwest-Paid-120-Million-For-2-Gates-at-Love-Field-329867431.html, dated September 28, 2015; Dallas Morning News, "Southwest explains $120 million paid to United for Love Field gates, other snippets from court," *available at* https://www.dallasnews.com/business/airlines/2015/09/30/southwest-explains-the-120-million-paid-to-united-for-two-love-field-gates-and-other-snippets-from-court, dated Sept. 30, 2015;

To that end, on September 18, 2018, Delta asked United to review a number of documents, listed below, to request they be designated "not confidential."[3] United agreed to de-designate some of these documents.[4] Because Delta's MSJ Response relies on some of the documents which United declined to withdraw its confidentiality designation, Delta was required to file those documents and the brief addressing them under seal.[5] Delta now files this motion asking the Court to unseal its MSJ Response and supporting appendices.

## ARGUMENT

### I. The Fifth Circuit Recognizes a Presumption of Public Access to Dispositive Motions and Orders

Courts in this Circuit have long recognized that there is "presumptive access to judicial records." *Van Waeyenberghe*, 990 F.2d 845; *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 2012 WL 12893404, at *3 (S.D. Tex. Sept. 27, 2012). The presumption of public access serves important interests, including "to promote trustworthiness of the judicial process" and "to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." *United States v. Holy Land Found. For Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010) (citation omitted). The public-access presumption applies not only to pleadings, documents, and other materials submitted to the court by the parties, but also to court decisions themselves. *See id.* at 690-91. Thus, the district court's discretion to seal the record of judicial proceedings "is to be exercised charily." *Federal Savings and Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987).

In exercising its discretion to seal judicial records, the court must balance the public's common

---

[3] App. 5–7 [Johnson Decl. Ex. A].

[4] App. 9–10 [Johnson Delc. Ex. B].

[5] Delta details the specific documents cited that do and do not remain subject to the Protective Order in Exhibit C. App. 13–15. Delta notes that it includes some documents Delta did not include in its correspondence with United, some deposition testimony designated through discovery, and a few items produced by other parties that are designated Confidential or Highly Confidential pursuant to the Protective Order.

law right of access against the interests favoring nondisclosure. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599, 602 (1978). The party seeking to overcome the presumption of access bears the burden of showing that the interest in secrecy outweighs the presumption. *Cigna Healthcare*, 2012 WL 12893404, at *3 (citing cases); *see also Blue Spike, LLC v. Audible Magic Corp.*, 2016 WL 9275966, at *2 (E.D. Tex. May 17, 2016). To meet that burden, the proponent must show that sealing serves an "overriding interest" that is "essential to preserve higher values … and is narrowly tailored to serve that interest." *Id.* (citation omitted) (emphasis added).

Even with respect to documents implicating extreme security concerns, "[i]t is difficult to conceive any circumstance under which permanent sealing of the entire file, including the order itself, could ever be justified." *In re Sealing*, 562 F. Supp. 2d at 894-95. Thus, even if a party has a legitimate confidentiality interest in some information contained in a judicial document, that interest ordinarily does not justify withholding it from the public. *See Blue Spike*, 2016 WL 9275966, at *3. If the party in favor of sealing cannot articulate a rationale for sealing that is sufficiently weighty to justify depriving the public of access, the Court should deny the request to seal court documents. *See Van Waeyenberghe*, 990 F.2d at 849-50; *see also In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 230 (5th Cir. 2008) (sealing is improper if it "protects no legitimate privacy interest that would overcome the public's right to be informed").

## II. United Cannot Overcome the Presumption of Public Access as to Delta's MSJ Response

United must show good cause to overcome this presumption. To preserve the confidentiality of documents that were designated Confidential or Highly Confidential once those documents are used in a dispositive motion, United cannot simply rely on the Protective Order. Courts generally recognize that protective orders ease discovery by affording broad protections over a large volume of sensitive information exchanged in litigation. But once documents are relevant to dispositive issues and filed with the court, they are part of a judicial record. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20,

33 (1984); *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944–45 (7th Cir. 1999) (explaining the distinction between discovery and judicial records noting "the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding"); *Cigna Healthcare*, 2012 WL 12893404, at *4. "In exercising its discretion to seal judicial records, the court must balance the public's common law right of access against the interests favoring nondisclosure." *Van Waeyenberghe*, 990 F.2d at 848. There is a "strong public interest in full access to judicial records . . . [and] a more stringent standard must be met to seal documents that are filed in court than to restrict dissemination of documents in discovery." *Cigna Healthcare*, 2012 WL 12893404, at *4 (citing *Interspan Distribution Corp. v. Liberty Ins. Underwriters, Inc.*, 2009 WL 2588733 (S.D. Tex. Aug. 21, 2009)).

Here, the public would benefit from access to the MSJ Response as it relates directly to legal issues significant to the public, including the merits of Delta's breach of contract and declaratory relief claims. *Cigna Healthcare,* 2012 WL 12893404, at *4 (unsealing court records because they explain legal issues relevant to the public including the merits of a "breach of contract claim under Texas law" which "could be useful to litigants in a similar situation"). As a general matter, the presumption of public access to judicial records encompasses dispositive motions as well as orders issued by the courts. *See In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 890-91 (S.D. Tex. 2008) (explaining the presumption of public access increases with the nature of filing or order at issue). Courts routinely find that when the Protective Order contemplates disclosure of confidential information at trial, as it does in this case, (Dkt. No. 407 ¶¶ 6(h), 7(g)), the public has a similar right of access at the summary judgment stage. *See Hall v. United Air Lines, Inc.*, 296 F. Supp. 2d 652 (E.D.N.C. 2003), *aff'd*, 118 Fed. App'x. 680 (4th Cir. 2004) (unsealing all documents associated with summary judgment absent "demonstrated necessity and propriety of such continued sealing"); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252 (4th Cir. 1988) ("Because summary judgment adjudicates substantive rights and serves as a substitute for trial, we fail to see the difference between a

trial and the situation before us now."); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986) (explaining that documents submitted as part of motions for summary judgment are subject to a public right of access); *Matter of Continental Ill. Secs. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) (finding presumption of public access applies to motion to terminate derivative claims.).

In fact, some Circuits have gone so far as to hold that "documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling circumstances." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982). Here, given the fact that substantially similar documents and discovery material are no longer confidential given the public nature of this litigation, there is no basis to keep Delta's MSJ Reponses sealed.

United does not have good cause to overcome this presumption. Even during discovery, a party seeking to preclude disclosure establishes good cause only upon "a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks omitted). In particular, "[b]road allegations of harm, unsubstantiated by specific examples of articulated reasoning, do not support a good cause showing. The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order." *Id.* at 786-787 (internal citations omitted). Courts "determine whether there is good cause by balancing the interests of the public and the parties," which includes examining numerous factors including the privacy interests involved, potential embarrassment, harm to public safety, and the public's interest in the information. *Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005).

None of the material at issue in this motion could in any way "harm [United's] competitive standing" because those materials do not contain sensitive business or trade secret information. *Cigna Healthcare*, 2012 WL 12893404, at *5 (S.D. Tex. Sept. 27, 2012). Moreover, the majority of documents these are from 2014—they are *years* old. Staleness, or the age of evidence, is one factor that courts

consider when determining whether evidence should be kept confidential, subject to a protective order. *See, e.g.*, *Zenith Radio Corp. v. Matsushita Electric Indust.*, 529 F. Supp. 866, 891 (E.D. Pa. 1981) ("An attempt to show that disclosure will indeed work a competitive disadvantage might be undermined if the information sought to be protected were stale."). As courts have noted, "The rationale for protecting materials from disclosure is undermined when those materials contain information that is stale." *Faulman v. Sec. Mut. Fin. Life Ins. Co.*, 2006 U.S. Dist. LEXIS 35875 (D.N.J. May 31, 2006) (citing *Zenith*, 529 F. Supp. at 891); *see also Nestle Foods Corp. v. Aetna Casualty & Surety Co.*, 129 F.R.D. 483, 485 (D.N.J. 1990) ("The purported need for protection is substantially diminished where the passage of time has made such documents stale."), *Avtel Servs. v. United States*, 70 Fed. Cl. 173, 191 (Fed. Cl. 2005) ("A claim that disclosure might result in a competitive advantage or disadvantage also is contingent upon whether the information or material sought to be protected is stale. In general, although largely a fact- and case-specific inquiry, information loses its confidential nature once it becomes stale").

Finally, United cannot overcome the presumption of public access simply because Delta's MSJ response is unfavorable to it. Delta seeks to publicly file its MSJ Response because of the importance of the issues being litigated, including the nature and legality of the United-Southwest sublease at Love Field. Numerous public news reports and public filings, since 2015, including every other dispositive motion filed in this case following the preliminary injunction hearing—and that hearing itself—have revealed to the public the nature and basis for Delta's claims, and the public is entitled to visibility into the parties' positions and the court's decisions. *See Holy Land Found.*, 624 F.3d at 690 (one objective of the public-access presumption is "to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness") (citation omitted).

## CONCLUSION

For the forgoing reasons, the Court should grant Delta's Motion to Unseal the MSJ Response and supporting Appendix. In the alternative, Delta requests that the Court permit it to publicly file a copy of the MSJ Response with any material deemed confidential by the Court redacted.

DATED:  October 13, 2018

Respectfully submitted,

*/s/ Ashley E. Johnson*
William B. Dawson
SBN 05606300
Ashley E. Johnson
SBN 24067689
Russell H. Falconer
SBN 24069695
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas  75201-6911
Telephone:  (214) 698-3100
Facsimile:  (214) 698-3400
wdawson@gibsondunn.com
ajohnson@gibsondunn.com
rfalconer@gibsondunn.com

**ATTORNEYS FOR DELTA AIR LINES, INC.**

**CERTIFICATE OF CONFERENCE**

I hereby certify that on October 11, 2018 and October 12, 2018, I and my colleagues emailed all the parties to find out their positions on Delta's motion.  On October 12, 2018, we circulated a draft of Exhibit C to this motion, identifying the discovery material Delta seeks to file publicly.  Southwest's counsel changed the designation of one document from Highly Confidential to Confidential, but otherwise indicated it would need to review the Response and Appendix before taking a position.  United's counsel indicated that it opposes the motion.  No other party has taken a position on the motion.

/s/ *Russell H. Falconer*
Russell H. Falconer

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of October, 2018, a true and correct copy of the foregoing brief was served via the Court's CM/ECF System upon all counsel of record.

s/ *Ashley E. Johnson*
Ashley E. Johnson