IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CITY OF DALLAS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-02069-K |
| | § | |
| DELTA AIR LINES, INC., *et al.,* | § | |
| Defendants. | § | |

## **PLAINTIFF CITY OF DALLAS'S MOTION FOR LEAVE TO FILE A SUPPLEMENT TO ITS MOTION FOR SUMMARY JUDGMENT AND THE SUPPLEMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, the City of Dallas (the "City"), files this motion and supplement.

### I. MOTION FOR LEAVE TO FILE A SUPPLEMENT

**A. Background**

The principal dispute in this case is whether Delta can be accommodated at Love Field, and, if so, for how long. Delta currently has five daily flight operations from Love Field. Delta also has requested that an additional eight daily flights be accommodated. The City filed a motion for summary judgment urging that its proposed accommodation policy be implemented. (ECF Nos. 436, 437). The briefing on the City's summary judgment motion was complete by June 27, 2018. Since then, there have been additional developments regarding the relief sought by the City.

On June 28, 2018, Southwest filed a notice that it intended to add 15 more daily flight operations on January 7, 2019. (ECF No. 473). The total daily flight operations would then be 195. Southwest also stated that Delta's current five daily flight operations would continue to be accommodated at Gate 15 and that there would be no expansion of Southwest's flight operations on Gate 15.

On August 10, 2018, Southwest and United filed summary judgment motions against Delta's cross-claims. (*See* ECF Nos 494, 495, 497, 498). The briefing is complete. All of Delta's accommodation claims will be mooted by granting the City's summary judgment as supplemented.

On August 17, 2018, Virgin/Alaska filed a status report indicating its planned flight operations at Love Field starting in October 2018. Its flight operations were to be reduced to a total of 13 daily flights at its two subleased gates at Love Field. (City App'x at 26-34 [ECF Nos. 504, 504-1, 504-2]). Virgin/Alaska has not advised the Court of any planned future expansion. Its representative was deposed on September 28, 2018 and stated there was no planned future expansion "for the foreseeable future." (City App'x, at 21-25).

On September 11, 2018, the Court denied Delta's motion for partial summary judgment, Southwest's motion to dismiss declaratory judgment claims, and Southwest's motion for partial judgment on the pleadings. (ECF Nos. 517, 518, 519). Discovery has closed except for one more nonparty deposition.

## B. The City Requests Permission to File a Supplement to Its Motion for Summary Judgment.

Because of Virgin/Alaska's reduced operations and under the City's proposed accommodation policy, Virgin/Alaska is now able to accommodate at least eight flight operations without unduly interfering with Virgin/Alaska's current or future flight operations. In addition, Delta asserts in filings in this Court that it continues to seek accommodation of eight additional flights. Pursuant to Local Rule 56.7, the City request the Court's permission to file a supplement explaining the possible impact of Virgin/Alaska's reduced flight operations and the ability of Virgin/Alaska to accommodate eight flight operations on its gates. By the supplement, the City also seeks alternative relief, consistent with its proposed accommodation policy, that if Delta is not interested in operating at Virgin/Alaska's gates or at the times now available, then the City

may solicit other airlines to operate at those gates and available times. The City request the Court's permission to file a supplement to the City's summary judgment motion setting forth the matters above. The supplement appears below.

## II. THE CITY'S SUPPLEMENT

### A. Virgin/Alaska's Planned Flight Operations

In its filing with the Court, Virgin/Alaska stated that starting in October 2018, it would reduce flight operations at Love Field to 13 daily flight operations. It provided a so-called puck chart and its planned schedule. (City App'x, at 30-34) (*Also see* ECF Nos. 504-1, 504-2). Below is a summary of its schedule for the two subleased gates:

**Gate A[1]**

|  | Flight No. | Arrival | Departure | Turn Time |
|---|---|---|---|---|
| A-1 | 3383 | RON | 7:05 | n/a |
| A-2 | 3321 | RON | 8:00 | n/a |
| A-3 | 3497 | RON | 9:00 | n/a |
| A-4 | 3320/3323 | 12:18 | 13:50 | 92 |
| A-5 | 3360/3329 | 14:20 | 15:10 | 50 |
| A-6 | 3461/3379 | 15:23 | 16:05 | 42 |
| A-7 | 3322/3325 | 16:43 | 17:25 | 42 |
| A-8 | 3465/3361 | 17:45 | 18:25 | 40 |
| A-9 | 3306 | 20:55 | RON | n/a |
| A-10 | 3328 | 22:03 | RON | n/a |

**Gate B**

|  | Flight No. | Arrival | Departure | Turn Time |
|---|---|---|---|---|
| B-1 | 3428 | RON | 7:00 | n/a |
| B-2 | 3437 | RON | 8:15 | n/a |
| B-3 | 3404/3423 | 12:32 | 13:15 | 43 |
| B-4 | 3308/3396 | 13:34 | 14:30 | 56 |
| B-5 | 3406/3481 | 17:22 | 18:10 | 48 |
| B-6 | 3324 | 21:33 | RON | n/a |
| B-7 | 3438 | 22:41 | RON | n/a |
| B-8 | 3408 | 22:57 | RON | n/a |

---

[1] The actual gate numbers were not reflected in Virgin/Alaska's filing. Also, there were some minor differences in the exhibits as to times and flight numbers. The summary is the City's best attempt to synthesize the information.

City of Dallas's Motion for Leave to File a Supplement to Its Motion for Summary Judgment and Supplement - Page 3

(*Also see* City App'x at 1-4, 9). "RON" means "Remain Over Night" and refers to aircraft that will or have remained overnight at the airport. "Turn Time" reflects the amount of time an aircraft is at the gate between landing and departure as reflected in the schedule. Virgin/Alaska's schedule reflects that it can "turn" an aircraft in as little as 40 minutes with an average of about 52 minutes.

### B. Delta's Accommodation Requests

Delta has two separate accommodation requests. First, it seeks accommodation to continue its current five daily flights. (*See* City App'x at 36-37). These flights have been and continue to be operated from one of Southwest's gates. (*See* ECF No. 473-2).

Delta also seeks accommodation for an additional eight flights based on letters sent on February 23, 2015. (City App'x, at 11-19 [Ex. 231]). Delta's request was based on identified gaps of time in Southwest's then-existing flight schedule. The letter stated the requested accommodation would require Southwest to shorten its separation time between flights to 25 minutes, instead of 30 minutes, in two instances and require sharing by Delta of up to three gates. (City App'x, at 12). Below is a summary of Delta's second accommodation request.

**Delta's Second Accommodation Request (8 flights)[2]**

| Flight No. | Arrival | Departure | Turn Time |
|---|---|---|---|
| Request No. 1 | RON | 6:00 | n/a |
| Request No. 2 | RON | 6:15 | n/a |
| Request No. 3 | RON | 7:45 | n/a |
| Request No. 4 | 9:25 | 10:00 | 35 |
| Request No. 5 | 13:25 | 14:00 | 35 |
| Request No. 6 | 13:27 | 14:05 | 43 |
| Request No. 7 | 14:05 | 15:00 | 55 |
| Request No. 8 | 17:35 | 18:10 | 35 |
| Request No. 9 | 20:30 | RON | n/a |
| Request No. 10 | 21:30 | RON | n/a |
| Request No. 11 | 23:35 | RON | n/a |

---

[2] Based on Exhibit 231. (City App'x, at 11-19). The summary is the City's best attempt to synthesize the information.

City of Dallas's Motion for Leave to File a Supplement to Its Motion for Summary Judgment and Supplement - Page 4

(*See also* City App'x at 1-4, 8).  Delta's requests and schedule reflect a plan to generally turn an aircraft between 35 to 55 minutes.  Delta's accommodation request for additional flights involves a total of eleven requests because three proposed flights will arrive late in the day and not depart until the following morning, the RON flights.  For simplicity's sake, Request No. 1 can be paired with Request No. 9; Request No. 2 can be paired with Request No. 10; and Request No. 3 can be paired with Request No. 11 and those pairings establish three complete flight operations.

**C. Delta's Request for Eight Additional Flight Operations Can Now Be Accommodated on Virgin/Alaska's Gates**

The City's proposed accommodation policy was intended to identify 102-minute gaps on a particular gate in which a flight operation could occur and encourage at least ten flight operations per gate per day.  The 102-minute time gap was labeled a "gate slot" and created a 30-minute buffer of time before arrival and after departure and assumed a maximum 42-minute turn time.  Virgin/Alaska's flight operations have several 102 minutes or more gaps of time with no flight operations.  The gaps or gate slots in Virgin/Alaska's operations starting in October 2018 for Gate A are at 9:00 to 12:18 (198 minutes) and 18:25 to 20:55 (150 minutes).  For Gate B, the gaps are at 8:15 to 12:32 (257 minutes); 14:30 to 17:22 (172 minutes); and 18:10 to 21:33 (203 minutes).

A comparison of Virgin/Alaska's operations starting in October 2018 with Delta's second accommodation request reflects that a total of eight flight operations can be accommodated on Virgin/Alaska's gates with no changes to Virgin/Alaska's schedule.  Such accommodation would require a shortening of the gate slot time period by three minutes for two new flight operations and by less than a minute for two new other flight operations.  Delta's proposed flight times would have to be adjusted to take advantage of the existing time gaps.

Delta's second accommodation request reflects a desire to expand operations with less regard to actual times since its request was based on the identified gaps in Southwest's then-

existing schedule. (*See* City App'x, at 12 [Ex. 231]) ("accommodation of Delta's eight flights can be accomplished on the 18 gates leased by Southwest based on an analysis of Southwest's published schedule as of the date of Delta's request"). Delta's second request also reflects a willingness to be accommodated on three gates. (*Id*.) ("While schedules … would require sharing of up to three gates, the proposed schedule would not require any adjustment to Southwest's published arrival or departure times."). Delta's original accommodation request of five flights can continue to be accommodated on Southwest's gate and eight additional flights operations can be accommodated on Virgin/Alaska's two gates. The proposed accommodation is explained below and graphically displayed as Tabs 1, 2, and 3. (City App'x, at 5-7, 10).

In chronological order based on the departure times for Delta's requested flights, the following requests may be accommodated:

1. Request No. 1. RON, 6:00 a.m. departure. There is no capacity for additional aircraft to remain overnight. Thus, there is no availability on Virgin/Alaska's gates for this flight to be accommodated. However, on Gate A, there will be a time gap from 9:00 to 12:18, or 198 minutes. The City's policy will allow one flight to be accommodated in this time gap. It is possible to operate two flights with average gate slot times of 99 minutes, rather than 102 minutes, and would require shortening buffer times by three minutes. With adjustment of its schedule, Delta could accommodate two flight operations in this time gap. For the purposes of this model, the City proposes this flight can be accommodated on Gate A of Virgin/Alaska during that time gap.

2. Request No. 2. RON, 6:15 a.m. departure. There is no capacity for additional aircraft to remain overnight and, thus, there is no availability on Virgin/Alaska's gates for this flight to be accommodated. However, on Gate A, there is a time gap from 9:00 to 12:18, or 198 minutes. It is possible to operate two flights with average gate slot times of 99 minutes, rather than 102 minutes. With this adjustment, Delta could accommodate two flight operations. For the purposes of this model, the City proposes this flight can be accommodated on Gate A of Virgin/Alaska during that time gap.

3. Request No. 3, RON, 7:45 a.m. departure. There is no capacity for additional aircraft to remain overnight. Also, this operation would directly conflict with Virgin/Alaska's operation. Thus, there is no availability on Virgin/Alaska's gates for this flight to be accommodated. However, on Gate B, there will be a gap from 8:15 to 12:32 or 257 minutes. The City's policy will allow two flights be accommodated in this time gap. With adjustment of its schedule, Delta could accommodate two flight operations in

this time gap. For the purposes of this model, the City proposes this flight can be accommodated on Gate B of Virgin/Alaska during that time gap.

4. Request No. 4. Arrive 9:25 a.m., 10:00 a.m. departure. The flight can be accommodated on Gate B of Virgin/Alaska. As discussed with the preceding request, there is a time gap from 8:15 to 12:32 or 257 minutes on Gate B. This flight can be accommodated in this time gap.

5. Request No. 5. Arrive 13:25, 14:00 departure. There is no availability on Virgin/Alaska's gates for this flight operation to be accommodated. However, on Gate B, there will be a time gap from 14:30 to 17:22, or 172 minutes. The City's policy will allow one flight to be accommodated in this time gap. With adjustment of its schedule, Delta could accommodate one flight operation in this time gap. For the purposes of this model, the City proposes this flight operation can be accommodated on Gate B of Virgin/Alaska during that time gap.

6. Request No. 6. Arrive 13:27, 14:05 departure. There is no availability on Virgin/Alaska's gates for this flight operation to be accommodated. However, on Gate A, there will be a time gap from 18:25 to 20:55, or 150 minutes. The City's policy will allow one flight to be accommodated in this time gap. With adjustment of its schedule, Delta could accommodate one flight operation in this time gap. For the purposes of this model, the City proposes this flight operation can be accommodated on Gate A of Virgin/Alaska during that time gap.

7. Request No. 7. Arrive 14:05, 15:00 departure. There is no availability on Virgin/Alaska's gates for this flight operation to be accommodated. However, on Gate B, there will be a time gap from 18:10 to 21:33, or 203 minutes. The City's policy will allow one flight to be accommodated in this time gap. It is possible to operate two flights with average gate slot times of 101.5 minutes, rather than 102 minutes, and would require shortening buffer times by less than a minute. With adjustment of its schedule, Delta could accommodate two flight operations in this time gap. For the purposes of this model, the City proposes this flight operation can be accommodated on Gate A of Virgin/Alaska during that time gap.

8. Request No. 8. Arrive 17:35, 18:10 departure. There is no availability on Virgin/Alaska's gates for this flight operation to be accommodated. However, on Gate B, there will be a time gap from 18:10 to 21:33, or 203 minutes. It is possible to operate two flights with average gate slot times of 101.5 minutes, rather than 102 minutes. With this adjustment, Delta could accommodate two flight operations in this time gap. For the purposes of this model, the City proposes this flight operation can be accommodated on Gate A of Virgin/Alaska during that time gap.

9. Request No. 9. 20:30 arrive, RON. There is no capacity for additional aircraft to remain overnight. Additionally, the proposed flight would conflict with Virgin/Alaska's operations. Thus, there is no availability on Virgin/Alaska's gates for this flight to be accommodated. However, as discussed above regarding Requests Nos.

      1, 2, and 3, there is capacity for additional complete flight operation and a total of eight flight operations can be accommodated.

10. Request No. 10.  21:30 arrive, RON.  There is no capacity for additional aircraft to remain overnight and the proposed flight would conflict with Virgin/Alaska's operations.  However, as discussed above regarding Requests Nos. 1, 2, and 3, there is capacity for additional complete flight operation and a total of eight flight operations can be accommodated.

11. Request No. 11.  22:35 arrive, RON.   There is no capacity for additional aircraft to remain overnight and the proposed flight would conflict with Virgin/Alaska's operations.  However, as discussed above regarding Requests Nos. 1, 2, and 3, there is capacity for additional complete flight operation and a total of eight flight operations can be accommodated.

Of course, Delta would have flexibility to set its schedule for the eight flight operations within the identified time gaps.  The City has provided three summary charts.  The first is a separate listing of Virgin/Alaska's November operations and Delta's second accommodation request.  (City App'x, at 1-4 [Tab 1]).  The second is the inclusion of eight Delta flights into Virgin/Alaska's November 2018 schedule consistent with the City's proposed accommodation policy with the slight modification of four of the gate slot time periods.  (City App'x, at 5-7 [Tab 2]).  The third is a quasi-puck chart displaying the information in the preceding charts.  (City App'x, at 8-10 [Tab 3]).

    Under this approach there will be a total of 10.5 flight operations per day per gate on Virgin/Alaska's two gates.  Gate A will host 7.5 Virgin/Alaska flight operations without any changes to its announced operations.  Three of Delta's flight operations will be accommodated on the gate.  Gate B will host the 5.5 remaining Virgin/Alaska flight operations without any changes to its announced operations.  Five of Delta's flight operations will be accommodated on the gate.  Furthermore, cooperation and agreements between the two airlines could create greater periods of separation of flights to minimize the impacts of any delays.

### D. Length of Forced Accommodation

The City's proposed policy provides that a forced accommodation will last for a minimum of three years. If Virgin/Alaska is directed to accommodate Delta, the length of the accommodation will be for three years. This would also be true for any forced accommodation imposed on Southwest. If ordered today, Delta would be effectively accommodated until 2022. Only if Virgin/Alaska and/or Southwest expanded operations by that time would Delta be required to alter its operations at Love Field. The leases will all expire by September 30, 2028.

### E. Anticipated Responses

The City anticipates that Virgin/Alaska, Delta, and Southwest will all oppose a forced accommodation of Delta's second accommodation request on Virgin/Alaska's gates.

Southwest will argue that the current five Delta accommodated flights should be the flights accommodated on Virgin/Alaska's gates. However, Southwest's past operations and announced planned expanded operations to 195 total daily flight operations while also accommodating Delta's five flights demonstrate that it can continue to accommodate Delta while still being able to expand.

Virgin/Alaska will argue that no accommodation should occur on its gates based on the judgments in the American and US Airways merger and the Virgin and Alaska merger. As previously explained, nothing in those judgments preclude an airport from forcing an accommodation on underutilized gates. (*See* ECF Nos. 455 at 8; 472 at 17-18). Virgin/Alaska will also repeat its argument that the Commitment Agreement with the City prevents or limits any forced accommodation. However, as previously explained, the Commitment Agreement did not alter the terms of the lease or otherwise exempt Virgin from its obligation to accommodate under the lease. (*See* ECF No. 455 at 8-9). Finally, the City has the right to terminate the agreement at

any time and will agree to do so if the Court determines it is necessary for an effective forced accommodation on the Virgin/Alaska gates.

Finally, Delta has urged that any forced accommodations should only occur on Southwest's gates. (*See* ECF No. 468, at 14-15). Delta has no right to accommodation on any particular gate. Any forced accommodation is based on the underutilization by an operating airline and a requesting airline's willingness to operate at times that do not unduly interfere with the operating airlines existing flight operations. Delta's contention suggests that its second accommodation request has less to do with expanding operations at Love Field and more to do with other goals.

### F. In the Alternative, the City's Request to Seek Other Airlines to Operate at Love Field

If for any reason, Delta opposes the opportunity to be accommodated on Virgin/Alaska's gates, the City requests that it be allowed to solicit interest from other airlines, excluding the signatory airlines, who would be willing to operate at Love Field on Virgin/Alaska's gates during the periods of time of underutilization. Such action is consistent with the City's proposed accommodation policy and its goals. It would promote the full utilization of a valuable City asset, introduce more competition by adding another airline, provide a greater variety of consumer products for the Dallas area traveling public, and not negatively impact Virgin/Alaska's current operations or immediate future plans.

### CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the City requests the Court grant the City leave to file the supplement, consider this supplement, and grant the City such other relief as the Court finds just.

        Respectfully submitted,

        OFFICE OF THE CITY ATTORNEY
        CITY OF DALLAS, TEXAS

        CHRISTOPHER J. CASO
        INTERIM CITY ATTORNEY
        Texas Bar No. 03969230
        Email: chris.caso@dallascityhall.com

        By: *s/ Charles S. Estee*
        Charles S. Estee
        Senior Assistant City Attorney
        Texas Bar No. 06673600
        Email: charles.estee@dallascityhall.com

        Stacy Jordan Rodriguez
        Executive Assistant City Attorney
        Texas Bar No. 11016750
        Email: stacy.rodriguez@dallascityhall.com

        7BN Dallas City Hall
        1500 Marilla Street
        Dallas, Texas 75201
        Telephone – 214/670-3519
        Telecopier – 214/670-0622

        ATTORNEYS FOR THE CITY OF DALLAS

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2018, I electronically filed the foregoing document with the Clerk of Court for the United States District Court for the Northern District of Texas using the electronic case filing system of the Court.  Service on all attorneys of record who are Filing Users will be automatically accomplished through Notice of Electronic Filing.

        *s/ Charles S. Estee*
        Charles S. Estee