UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CITY OF DALLAS,** | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | |
| | § | |
| **DELTA AIR LINES, INC.,** | § | Civil Action No. 3:15-cv-02069-K |
| **SOUTHWEST AIRLINES CO.,** | § | |
| **VIRGIN AMERICA INC.,** | § | |
| **AMERICAN AIRLINES, INC., and** | § | |
| **UNITED AIRLINES, INC.,** | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

**SOUTHWEST'S MOTION FOR LEAVE TO FILE SURREPLY TO DELTA'S MOTION TO DEPOSE A FIFTH SOUTHWEST CORPORATE REPRESENTATIVE**

Southwest moves for leave to correct material inaccuracies in Delta's reply in support of its Motion for Leave to depose a fifth Southwest corporate representative (Dkt. No. 579). Southwest includes its proposed surreply below.

## SOUTHWEST'S SURREPLY

Delta's reply in support of its motion to depose (yet another) Southwest corporate representative exemplifies the fanciful, evidence-free nature of Delta's Love Field narrative. No one is conspiring against Delta, yet the list of parties allegedly doing so continues to grow. Now, the list includes not only Southwest and United but apparently, the City and Alaska too.

The reality is quite different: Delta alone is responsible for its lack of gate space at Love Field. It de-hubbed at DFW Airport in 2004, abandoning 24 gates there.[1] It made no request for

---

[1] *See* App. 04-05, *available at* http://dfwairport.mediaroom.com/DFW-INTERNATIONAL-AIRPORT-ANNOUNCES-MAJOR-INCENTIVE-PACKAGE-TO-ATTRACT-NEW-AIR-SERVICE-AND-EXPAND-TRAVEL-CHOICES-FOR-CUSTOMERS.

Love Field gates when various stakeholders negotiated the future of that airport in 2005. And it made no complaint to Congress before passage of a federal law capping the number of Love Field gates at 20 and adopting an allocation of gates that left all of them spoken for.

Only as the expiration of the Wright Amendment restrictions neared[2] in 2014 did Delta attempt to secure lease rights at Love Field. And even then, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ All of which belies Delta's claim that there is some bar on voluntary, market-rate transactions related to gates.) Regardless, Delta is not entitled to a permanent accommodation that gives it rights equal to or greater than the market-rate sublease it purposefully passed up. In short, no one is conspiring to keep Delta from Love Field: It made a business decision not to secure a lease there time and again.

Delta's false narrative that Southwest – and now apparently every other party in the case – is in cahoots to stifle competition – does not make further discovery about the 2014 Sublease and 2018's East Coast slot lease relevant. The federal government *approved* both transactions after several months of review. *See, e.g.*, Dkt. No. 590 (SWA Resp.) at 8. Delta has even stipulated to this fact (with respect to the Sublease). Delta has also stipulated that the DOT – the sole enforcer of the grant assurances – *was consulted* in this process. Dkt. No. ¶ 59. There is no cognizable claim that allows Delta to relitigate the federal government's approval of these transactions and their pro-competitive effect on consumers in North Texas.

Put simply, the triable fact issues here relate to the meaning and application of the Lease's accommodation provision: primarily, undue interference with Signatory operating

---

[2] Most, but not all, Wright Amendment restrictions ended by October 2014.

schedules and the length of any accommodation found not to interfere. Whatever motive, intent, or plan drove the Sublease and 2018's East Coast slot lease is irrelevant to the jury's determination of these issues (or even the meaning of the federal grant assurances, which Delta has no private right to litigate). The cases cited by Delta that allow such evidence concern fraud and other intentional torts not present here. Delta's only purpose is to improperly sway the jury.

Delta's renewed attempt to conjure up a cause of action that would allow it to "void the sublease," and thereby render further discovery about the transaction relevant, is also meritless. The additional case law cited by Delta—absent from the summary judgment record on which the Court will determine the viability of this claim—has nothing to say about the affirmative relief sought by Delta here. Those cases merely acknowledge two narrow exceptions to the general rule barring non-contracting parties (like Delta) from seeking to void a contract, one for parties *defending* against tortious interference with contract claims, and another for mortgagors *defending* against foreclosure after the mortgage had been assigned to someone else. There is no claim against Delta for tortious interference with the Sublease; nor is anyone attempting to foreclose on Delta's property. And Delta plainly seeks *affirmative* relief against the contracting parties, United and Southwest. No court has allowed a party to affirmatively void a contract to which it is not a party or third-party beneficiary. (And Delta does not purport to be either with respect to United's sublease with Southwest.)

Indeed, a Texas appellate court has already rejected a similar attempt to void a contract through a declaratory judgment.[3] In *Cassidy v. TeamHealth, Inc.*, two doctors brought a declaratory judgment claim to void a contract between a hospital and a medical staffing company. 01-08-00324-CV, 2009 WL 2231217, at *3 (Tex. App.—Houston [1st Dist.] July 23,

---

[3] Delta seeks to apply Texas law, as it must, because a federal declaratory judgment is procedural and there is no federal right of action to void a sublease.

2009, pet. denied). They claimed that the required "direct interest" in the contract arose from their concern that the hospital's contract "violate[d] the Medical Practice Act." However, the doctors did not allege that they were a party to the contract or that the contract intended to confer a direct benefit on them. Because concerns about the legality of the contract did not present a cognizable "direct interest," the Court concluded that the doctors lacked standing to seek a declaratory judgment voiding the hospital's contract. *Id.*

Like the doctors in *Cassidy*, Delta alleges that its direct interest in the case arises from a concern that the Sublease violates the federal grant assurances. Likewise, Delta does not purport to be a party or third-party beneficiary of the Sublease. Thus, under *Cassidy*, Delta has no standing to bring its declaratory judgment action to void the contract.

Without a viable claim for which the additional deposition testimony would be relevant, Delta beats the competition drum yet again. But Delta is wrong about competition's role in this case and Delta's purported role in promoting it. Simply put, ***the Lease does not allow a permanent forfeiture of preferential use rights to further some ill-defined notion of competition***. The word cannot be found in the accommodation provision of the Lease. (And Delta could not possibly be a third-party beneficiary of the boilerplate references to federal law found in later sections of the Lease.) Delta continues to argue over competition despite the absence of any competition-based claims in its pleading.

But even if Delta's claims allowed consideration of the concept, there could not be a worse candidate than Delta. Along with American and United, it is a "Big Three" legacy airline with a long history of high fares and anti-competitive behavior.[4] Its only nonstop service at Love Field would be to a small number of Delta hubs already well-served by Delta down the road at

---

[4] *See, e.g.*, App. 46-50 (Ex. 412 to Inj. Hr'g, at 41–45).

DFW Airport. And even on those limited, duplicative routes, Delta's fares would be *higher* than Southwest's. There should be no dispute about this. Unlike the data manipulated by Delta's expert, published DOT fare data shows that ***on the route currently served by Delta from Love Field (to and from Atlanta) Delta's fares are substantially higher than Southwest's***.[5] The DOT even designates Southwest as the low-fare carrier on this route.[6]

Finally, despite Delta's casual assertion otherwise, Southwest did not intentionally conceal any documents. Like many of Delta's assertions, Delta cites no evidence. Southwest conducted a reasonable, diligent search for documents at various points in time, produced tens of thousands of documents spanning more than a decade, and only recently became aware of the handwritten notes at issue. The price Southwest paid for the Sublease is irrelevant to the accommodation process. Nonetheless, both Southwest corporate representatives have already been questioned by Delta extensively about it. More importantly, Delta has *already* elicited corporate representative testimony about Mr. Kelly's phone call with Mr. Smisek. *See, e.g.*, Dkt. No. 590 at 13. Other than burdening Southwest with a *fifth* Rule 30(b)(6) deposition, Delta gains nothing by placing Mr. Kelly's personal notes (from four plus years ago) in front of a Southwest corporate representative.

## CONCLUSION

For the foregoing reasons, Southwest requests that the Court grant Southwest's Motion for Leave and consider the surreply included here in denying Delta's Motion for Leave to depose a fifth Southwest corporate representative (Dkt. 579).

---

[5] App. 71 (DOT Q3 2018 Domestic Airline Fares Consumer Report (Feb. 2019), *available at* https://www.transportation.gov/sites/dot.gov/files/docs/mission/office-policy/aviation-policy/331576/domestic-airline-fares-consumer-report-2018-q3.pdf) (listing average fares from Atlanta to "Dallas/Fort Worth, TX" and showing Delta's "each way" fare to Atlanta as $39 more than Southwest's).

[6] *See id.* WN is the airline code for Southwest.

DATED:  March 4, 2019    Respectfully submitted

*/s/ Eric W. Pinker*
Eric W. Pinker (epinker@lynnllp.com)
Texas Bar No. 16016550
Kent D. Krabill (kkrabill@lynnllp.com)
Texas Bar No. 24060115
Russell Herman (rherman@lynnllp.com)
Texas Bar No. 24083169
Jervonne Newsome (jnewsome@lynnllp.com)
Texas Bar No. 24094869
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
Telephone:  214.981.3830
Facsimile:  214.981.3839

**ATTORNEYS FOR DEFENDANT
SOUTHWEST AIRLINES CO.**

4824-8430-4521, v. 5