UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **CITY OF DALLAS,** § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | |
| § | |
| **DELTA AIR LINES, INC.,** § | Civil Action No. 3:15-cv-02069-K |
| **SOUTHWEST AIRLINES CO.,** § | |
| **VIRGIN AMERICA INC.,** § | |
| **AMERICAN AIRLINES, INC., and** § | |
| **UNITED AIRLINES, INC.,** § | |
| § | |
| *Defendants*. § | |
| § | |

**SOUTHWEST'S RESPONSE TO DELTA'S SUPPLEMENTAL DOCUMENTS IN SUPPORT OF ITS RESPONSE TO SOUTHWEST'S OBJECTIONS TO DELTA'S SUMMARY JUDGMENT EVIDENCE**

Under the guise of supplementing the record (and without seeking leave), Delta warps the words of a recent DOT submission solely to vilify Southwest. But there is no inconsistency between Southwest's previous filings with the Court and its DOT submission. And despite the implication of secrecy, Southwest filed its submission publicly.[1] Just as important, Delta fails to even remotely tie these new documents to Southwest's objections to Delta's use of the DOT letters.

---

[1] Southwest submitted its filing to the DOT at the agency's recent request for public comment on whether to retain previously issued guidance documents. *See* Notice of Review of Agency Guidance, Docket No. DOT-OST-2017-0069, 84 Fed. Reg. 24, 1820 (Feb. 5, 2019), *available at* https://www.govinfo.gov/content/pkg/FR-2019-02-05/pdf/2019-01065.pdf. As the DOT recognized, even non-binding guidance documents "may need to be rescinded or updated to reflect developments." *Id.* at 1820. Given (1) the DOT's statements in this litigation and elsewhere regarding the letters, (2) the FAA's unilateral termination of the Part 16 proceeding in which it had pledged to consider the lawfulness of the letters, and (3) Delta's improper reliance on the non-binding letters to try to support its legal positions in this case, the DOT letters are an ideal candidate for agency review. Notably, Delta filed comments on several other DOT documents as part of DOT's reconsideration of guidance documents.

# ARGUMENT

### A. The DOT disavowed the completeness and perceived effect of its letters, a point Southwest accurately presented to the agency in its recent submission.

Although Southwest's objections to Delta's summary judgment evidence – the filing Delta is purportedly responding to – did not expressly characterize the letters as "disavowed" or "withdrawn," Southwest's earlier characterization of the letters as "disavowed" is a perfectly reasonable reading of the DOT's new perspective on its letters to the City once the agency became embroiled in litigation. Specifically, the DOT's interrogatory responses and other filings disavowed Delta's attempt to use them as binding, or even persuasive, matters of contract interpretation. As the DOT confirmed, the scope and weight given to letters had been misunderstood and misused:[2]

> calculated to lead to the discovery of admissible evidence. DOT has made clear in its previous filings that the two DOT letters were not final agency actions, and merely provided "nonbinding agency guidance," which urged the City to make a timely decision on Delta's requests for accommodation, but did not require the City to reach a particular decision. *See* ECF No. 134 and DOT's Mem. in Supp. of Mot. to Dismiss, ECF No. 165-1. DOT is not asking the Court in this action to enforce the letters.

Indeed, despite Delta's arguments to the contrary, the DOT has now plainly acknowledged that its letters to the City "did not attempt to define Delta's status" under the Lease's accommodation provision and did not direct a particular decision by the City.[3] (Thus, the letters are irrelevant to this case's contract interpretation claims.) And as Southwest accurately described in its objections to Delta's summary judgment evidence, the DOT has emphasized that the letters

---

[2] Dkt. No. 463 at App. 161.

[3] Dkt. No. 463 (SWA App. to Resp. to City MSJ) at App. 161; *see also id.* ("DOT is not a signatory to that Lease and, once again, tells the City that it is 'the City's responsibility to decided how to act on Delta's requests.'").

incompletely analyzed the grant assurances and the accommodation process, stating that the "letter[s] leave[] open important issues – including whether [the Wright Amendment Reform Act] exempts Love Field from otherwise applicable grant assurances, whether gate capacity is to be determined according to Delta's definition or Southwest's, and whether it will be Southwest or another airline that would have to accommodate Delta on its gates."[4]

What's more, unlike Delta's routine practice, Southwest has consistently put any characterization of the DOT letters as "disavowed" in context, directly citing or quoting the interrogatory responses that support this characterization:[5]

> The pattern is unambiguously clear. Delta tried and failed to lobby the City to amend the Lease and convert the Love Field gates to "common use." It tried and failed to get the DOJ to award it the two American gates at Love Field. It then tried and failed to bid against Southwest to sublease the two United Gates at Love Field. Unsuccessful in each of its prior attempts, Delta hired Washington lobbyists and ex-government lawyers to pressure the DOT to require the City to force Southwest to accommodate Delta.[14] But even this has failed. Although Delta originally contended that the DOT had ordered Delta's accommodation through two letters to the City (the "DOT Letters"), the DOT recently disavowed those letters, explaining that "the two DOT letters were not final agency actions, and merely provided 'nonbinding agency guidance,' which urged the City to make a timely decision on Delta's requests for accommodation, but did not require the City to reach a particular decision."[15]

Southwest's recent DOT submission is no different. It expressly notes the "significant uncertainty" created by the DOT's issuance of the letters followed by later concessions that the letters "were only 'non-binding guidance'."[6] There is nothing contradictory about characterizing

---

[4] Final Br. of Respondent DOT, *Southwest Airlines Co. v. DOT*, Case No. 15-01036, Doc. No. 1578961, at 15 (D.C. Cir. Oct. 20, 2015).
[5] Dkt. No. 218 (SWA Closing Br.) at 4.
[6] Dkt. No. 630-1 (SWA DOT Submission, dated May 8, 2019) at App. 0006.

the letters as disavowed and also seeking the DOT's express withdrawal to resolve any remaining confusion.

It is Delta that has taken inconsistent positions. In this Court, Delta continues to improperly rely on the DOT letters as though they were the fully considered and final views of the agency. Yet Delta took the opposite position before the D.C. Circuit in its effort to avoid judicial review, asserting that the letters "***never purported to establish binding legal requirements or constitute a final resolution*** of the dispute in question."[7] Strikingly, Delta also admitted that the "DOT has ***'made no determination' as to whether the City of Dallas violated its accommodation obligation under federal law***."[8]

As Delta acknowledged, the FAA initiated a Part 16 administrative proceeding – the proper vehicle for complaints about violations of the grant assurances – that was intended to provide "an opportunity" for the FAA to consider the lawfulness of the DOT letters.[9] But the FAA unilaterally terminated the Part 16 proceeding in 2018 before any decision issued, which foreclosed administrative review of the two letters (and judicial review of any administrative decision). Thus, it is entirely proper to ask the DOT to reconsider and rescind the non-binding guidance in its letters.

**B.   Delta's "supplemental" documents do not address the fatal evidentiary issues that afflict the DOT letters.**

Delta's filing serves no other purpose than to unfairly malign Southwest. The documents Delta introduces have no bearing on the relevance and hearsay objections that Southwest raised. Regardless of whether the letters are properly characterized as "disavowed," the DOT has undisputedly admitted that the letters conveyed an incomplete, non-binding characterization of the

---

[7] Delta Mot. to Govern Future Proceedings, *Southwest Airlines Co. v. DOT*, Case No. 15-01276, Doc. No. 1634692, at 3 (D.C. Cir. Sept. 8, 2016).
[8] *Id.*
[9] *Id.* at 2.

*grant assurances*. That understanding is irrelevant to interpreting the Lease, a point on which the DOT expressly agrees with Southwest.[10] Further, because the DOT issued the letters well after execution of the Lease, they could not possibly bear on the contracting parties' intent.

Finally, the letters are undoubtedly hearsay. The DOT is not a party-opponent whose statements may come in against it, and no hearsay exception applies. Southwest's recent DOT submission, no matter how frustrating to Delta, cannot cure the letters of these deficiencies.

### C. Delta has no right to enforce the DOT letters against the City and Southwest, even if they were binding.

The DOT letters are irrelevant under the Rules of Evidence for yet another reason. The City, Southwest, and United all have rightly argued in their pending summary judgment motions that Delta has no third-party right to enforce federal law (or even contractual obligations purportedly incorporating federal law).

First, Delta has no freestanding right to enforce the federal law discussed in the DOT letters: the grant assurances. The grant assurances allow no private right of enforcement, and therefore Delta has no cause of action for alleged violations that it can assert against the City or Southwest. Delta's sole remedy is an administrative one with the FAA.[11] Asserting its claim through the declaratory judgment procedure does not make Delta's claim any more cognizable. Second, Delta has no right to enforce the grant assurances through a breach of contract theory. Even if Article 14 allowed enforcement of the grant assurances by the *contracting* parties, Delta is not a third-party beneficiary of those alleged promises. *See* Restatement (2d) of Contracts § 305 (1981) ("A *promise* in a contract creates a duty in the promisor to any intended beneficiary to perform the *promise*, and the intended beneficiary may enforce the duty.") (emphasis added). The

---

[10] See Docket No. 463 at 161, in which the DOT notes that its letters to the City "did not attempt to define Delta's status in relation to" the Lease's accommodation provision and did not direct a particular decision by the City.

[11] *See* Dkt. 498 (SWA Mot. for Summ. J. Br.) at 18.

Court must undertake a separate analysis of the promises allegedly present in Article 14, and Delta has never offered any basis for overcoming Texas's presumption against third-party beneficiaries for those promises.[12]

DATED: June 20, 2019

Respectfully submitted

*/s/ Eric W. Pinker*
Eric W. Pinker (epinker@lynnllp.com)
Texas Bar No. 16016550
Kent D. Krabill (kkrabill@lynnllp.com)
Texas Bar No. 24060115
Russell Herman (rherman@lynnllp.com)
Texas Bar No. 24083169
Jervonne Newsome (jnewsome@lynnllp.com)
Texas Bar No. 24094869
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
Telephone: 214.981.3830
Facsimile: 214.981.3839

**ATTORNEYS FOR DEFENDANT SOUTHWEST AIRLINES CO.**

4839-9172-5722, v. 6

---

[12] *See* Dkt. No. 498 at 16–17 (noting that Article 14 does not mention new entrants or otherwise include any clear indication to benefit third parties or allow third-party enforcement).